# MEMORANDUM OF SETTLEMENT

# BETWEEN

# ACCURIDE ERIE

# AND

# INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, LOCAL NO. 1186

# AT THE

# CONCLUSION

# OF

# 2003 ANNIVERSARY NEGOTIATIONS

487202
9/9/2003

Answer & Counterclaim Exh. B

MEMORANDUM OF SETTLEMENT

This Memorandum of Settlement sets forth the agreement between Accuride Erie ("Company") and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local No. 1186 ("Union") at the conclusion of the 2003 anniversary negotiations.

## Collective Bargaining Agreement

1.    The new collective bargaining agreement ("Agreement") which resulted from the 2003 anniversary negotiations is attached as Exhibit 1 to this Memorandum of Settlement.

## Timely Ratification Payments

2.    If the Union notifies the Company of ratification of the Agreement by 5:00 p.m. on August 31, 2003, then the Company will pay each eligible employee the following ratification payments:

(a)    Ratification payment in the gross amount of $800.00; this payment will be paid between September 1 and 15, 2003;

(b)    Ratification payment in the gross amount of $600.00; this payment will be paid between September 1 and 15, 2004;

(c)    Ratification payment in the gross amount of $400.00; this payment will be paid between September 1 and 15, 2005; and

(d)    Ratification payment in the gross amount of $200.00; this payment will be paid between September 1 and 15, 2006.

Employees eligible to receive these ratification payments are those who are regular employees on August 31, 2003. In addition, to be eligible for the payments in 2004, 2005, and 2006, employees must continue to be regular employees on the dates the payments are made in those years. Applicable taxes and withholdings will be deducted from the payments.

3.    Employees who are eligible to participate in the Special Voluntary Retirement Enhancement Opportunity ("Special Opportunity") and who choose to participate in the Special Opportunity will not receive all of these ratification payments. Employees who choose to participate in the Special Opportunity during the 2003 window will not receive any of the ratification payments. Employees who choose to participate in the Special Opportunity during the 2004 window will receive only the 2003 ratification payment. Employees who choose not to participate in the Special Opportunity during the 2003 window will receive their 2003 ratification payment within 15 calendar days after they notify the Company they are not going to participate. Employees who choose not to participate in the Special Opportunity during the 2004 window will receive their 2004 ratification payment within 15 calendar days after they notify the Company they are not going to participate, but they will not receive their payment prior to the September 1 through 15 period.

-1-

Answer & Counterclaim Exh. B

## Seniority List

4.    Attached as Exhibit 2 to this Memorandum of Settlement is a seniority list showing the seniority of each employee as of August 31, 2003.

## Classifications

5.    Attached as Exhibit 3 to this Memorandum of Settlement is a list showing the classification, as of August 31, 2003, of each employee who has completed his probation period.

## Special Voluntary Retirement Enhancement Opportunity

6.    The Company will make available to eligible employees a Special Voluntary Retirement Enhancement Opportunity.  The employees eligible for this Special Opportunity are those who as of December 31, 2003 will have attained age 59 and will have at least 30 years of service with the Company.  Attached as Exhibit 4 to this Memorandum of Settlement is a list of the names of those employees who are eligible for this Special Opportunity.

7.    Employees who choose to participate in this Special Opportunity will have two window periods within which to notify the Company of their decision to participate.  Employees may notify the Company of their decision either (i) between October 1, 2003 and November 30, 2003, or (ii) between September 1, 2004 and October 31, 2004.

8.    The following provisions apply to employees who choose to participate in this Special Opportunity between October 1, 2003 and November 30, 2003:

(a)    Each employee who chooses to participate in this Special Opportunity will receive the following benefits:  (i) an annuity purchased by the Company; the purchase price of the annuity will be the total of (a) $30,000.00, (b) an amount equal to the vacation pay an employee earned in 2003 and would otherwise receive in 2004, and (c) $2,000.00 (employees who elect this Special Opportunity will not receive the vacation pay in 2004 they earned in 2003 or the ratification payments); and (ii) retirement financial counseling for the employee and his spouse through a financial advisor selected by the Company.  Employees may elect to receive their annuity as a (i) three-year term annuity, (ii) five-year term annuity, or (iii) life annuity.

(b)    Notwithstanding Article 31 of the Agreement, employees who choose to participate in this Special Opportunity will receive two days of paid vacation for each full calendar month they work in 2004.  Employees will not take more than five days of vacation time during 2004 prior to their last day worked, unless additional vacation time is warranted by compelling circumstances and prior approval is given by the Company.  Following their last day of work, employees will be paid for any vacation they earned but did not take during 2004.

(c)    The Company will establish a retirement date for each participating employee, and that retirement date will be between January 1 and June 30, 2004.  In

-2-

establishing retirement dates, the Company will give careful consideration to the preferences of the employees and the needs of the operation.

9.     The following provisions apply to employees who choose to participate in this Special Opportunity between September 1, 2004 and October 31, 2004:

(a)    Each employee who chooses to participate in this Special Opportunity will receive the following benefits:  (i) an annuity purchased by the Company; the purchase price of the annuity will be the total of (a) $30,000.00, (b) an amount equal to the vacation pay an employee earned in 2004 and would otherwise receive in 2005, and (c) $1,200.00 (employees who elect this Special Opportunity will not receive the vacation pay in 2005 they earned in 2004 or the ratification payments in 2004, 2005, and 2006); and (ii) retirement financial counseling for the employee and his spouse through a financial advisor selected by the Company.  Employees may elect to receive their annuity as a (i) three-year term annuity, (ii) five-year term annuity, or (iii) life annuity.

(b)    Notwithstanding Article 31 of the Agreement, employees who choose to participate in this Special Opportunity will receive two days of paid vacation for each full calendar month they work in 2005.  Employees will not take more than three days of vacation time during 2005 prior to their last day worked, unless additional vacation time is warranted by compelling circumstances and prior approval is given by the Company.  Following their last day of work, employees will be paid for any vacation they earned but did not take during 2005.

(c)    The Company will establish a retirement date for each participating employee, and that retirement date will be between January 1 and March 31, 2005.  In establishing retirement dates, the Company will give careful consideration to the preferences of the employees and the needs of the operation.

10.    In order to be eligible to receive the special benefits provided by this Special Opportunity, employees must (i) continue to work for the Company until released from employment by the Company; (ii) perform their job duties in a safe, diligent, and efficient manner; (iii) continue to comply with the policies and rules of the Company; (iv) participate in any special transition matters that may arise as a result of this Special Opportunity, including, for example, training during scheduled overtime hours, notwithstanding the provisions of the Agreement; and (v) sign a release agreement provided by the Company, and the release agreement must be signed after the employee's last day of employment.

## Medical Benefits

11.    Effective October 1, 2003, employees will receive their medical benefits from either HealthAmerica HMO Plan No. 88115 or HealthAssurance POS Plan No. 35118. Employees will choose the plan by which they will receive their medical benefits.  Effective October 1, 2003, prescription drug benefits will be provided through the 10/20 prescription drug plan with mandatory generic, managed formulary, and mail order provisions.

Answer & Counterclaim Exh. B

12.    The amount of an employee's monthly contribution toward medical benefits and prescription drug benefits will vary depending on which plan the employee chooses. Regardless of which plan the employee chooses, the Company will contribute toward the monthly premium of that plan an amount equal to 88% of the monthly premium of HMO Plan No. 88115. The employee will then contribute monthly an amount equal to the difference between the Company's monthly contribution and the monthly premium of the plan selected by the employee. Thus, from October 1, 2003 through December 31, 2004 the Company will make monthly contributions of $257.92 for employee coverage, $503.84 for employee plus children coverage, $596.88 for employee plus spouse coverage, and $707.21 for family coverage.

13.    The medical and prescription drug plans will be obtained through the Vicary Insurance Agency. However, at any time during the term of the Agreement, at the request of either the Company or the Union, the parties will meet to discuss the discontinuance or replacement of the Vicary Insurance Agency.

14.    So long as 75% of eligible employees have some medical coverage, and 50% of that group are covered by one of the plans referred to in paragraph 11, employees who have some other medical plan coverage can opt out of coverage under the plans referred to in paragraph 11.

## Vision Benefits

15.    Effective October 1, 2003, employees will receive their vision benefits through VSP.

## Dental Benefits

16.    The dental benefits will be revised effective October 1, 2003 to provide that employees' monthly contributions toward dental plan coverage will be 12% of the monthly premium cost.

## Sickness and Accident Insurance

17.    The weekly sickness and accident insurance will be revised to provide that for employees hired on and after September 1, 2003 the benefit will be $225 per week for a maximum of 26 weeks.

## Contributory Life Insurance

18.    The premiums for contributory life insurance are those established by the insurance company that provides the insurance.

## Pension

19.    The pension plan will be amended effective September 1, 2003 as follows:

Answer & Counterclaim Exh. B

(a)    For employees hired on or before August 31, 2003:

    (i)    Increase the pension multiplier $1.00 effective September 1, 2003 for service on and after September 1, 2003

    (ii)    Increase the pension multiplier an additional $1.00 effective September 1, 2004 for service on and after September 1, 2004

    (iii)    Increase the pension multiplier an additional $1.00 effective September 1, 2005 for service on and after September 1, 2005

    (iv)    Increase the pension multiplier an additional $1.00 effective September 1, 2006 for service on and after September 1, 2006

(b)    For all employees:

    (i)    Change the name of the Plan to "Accuride Erie Hourly Employee Pension Plan"

    (ii)    Provide that a Social Security determination of disability is needed for eligibility for a disability pension

    (iii)    Provide that the amended Plan will generally be effective as of September 1, 2003

(c)    For employees hired on or after September 1, 2003:

    (i)    Provide a multiplier of $15

    (ii)    Remove the $400 supplement for disability pensions

    (iii)    Establish a normal retirement age of 65

    (iv)    Remove the unreduced pension for 30 years of service

    (v)    Remove the special retirement pension payment

    (vi)    Remove the pop-up provision

    (vii)    Establish eligibility for deferred vested benefit at age 65

    (viii)    Clarify/Provide that they are not eligible for frozen benefits or plant-closing benefits.

## Savings Plan

20.    The savings plan will be amended effective September 1, 2003 as follows:

-5-

(a)    Change the name of the Plan to "Accuride Erie Hourly Employee Savings Plan"

(b)    Provide for catch-up contributions for employees age 50 and older

(c)    Increase the limit on employee contributions from 15% to 75% and keep the current matching contribution structure, including the $3,600 per month cap on covered earnings

(d)    Disregard rollover contributions for purposes of the $5,000 cash-out provision

(e)    Clarify that the new I.R.C. § 402(g) limits apply

(f)    Disallow future after-tax contributions

(g)    Clarify that "Plan B" refers to the Accuride Employee Savings Plan, into which the AKW L.P. Salaried Savings Plan was merged

(h)    Disallow future transfers between the Plan and Plan B.

## Retiree Medical Benefits and Retiree Life Insurance

21.    The retiree medical and retiree life insurance benefits will be revised effective September 1, 2003 to provide that they only apply to employees hired on or before August 31, 2003.

## Transitional Issues

22.    In 1997, AKW and the Union entered into an Agreement Concerning Transitional Issues to address certain issues pertaining to the commencement of AKW operations. Most of the provisions of that Transition Agreement concerned events that took place at the time of the commencement of the operations. A few provisions may have some continuing effect and, therefore, the following provisions concerning transitional issues are included in this Memorandum of Settlement:

(a)    **Seniority Credit for Various Purposes** The Company is willing to give credit for Kaiser seniority, for purposes of vesting under the Company's pension plan and for purposes of wages and all other benefits (excluding pension/retirement benefit calculations), such as but not limited to promotion, demotion, layoff, recall, vacations, shift preference, SUB benefits, Sickness and Accident benefits, and Savings Plan benefits, to (i) Existing Kaiser Employees who were hired in connection with AKW's commencement of operations and (ii) the Substitute Startup Employees who have been identified as being afforded such seniority credit. The Kaiser plant seniority credit provided to these employees will be counted as part of their seniority reflected in Exhibit 2 to this Memorandum of

Answer & Counterclaim Exh. B

Settlement. The matters referred to in this paragraph may be modified by negotiation between the Company and the Union.

(b) **No Seniority Credit Based on Later Hiring** Apart from employees hired in connection with AKW's commencement of operations, and the Substitute Startup Employees identified as being afforded credit for Kaiser seniority, other Existing Kaiser Employees hired by AKW or the Company will have the opportunity to participate in the Company's benefit plans but without receiving credit for Kaiser seniority.

(c) **Pension Multiplier Increases** Pension issues concerning the Company's employees are the subject of negotiations between the Company and the Union. The Company is unwilling to be bound by the results of the Union's separate negotiations with Kaiser. Kaiser will be responsible for addressing questions concerning the extent and nature of any proposed increases or changes discussed during UAW-Kaiser negotiations.

(d) **Disputes Subject to Grievance Procedure** Disputes concerning the application of this Section 22 will be subject to the grievance procedure set forth in Article 5 of the Agreement.

## Side Agreements and Similar Items

23.    Settlements, side agreements (written or unwritten), memoranda of understanding, letters of understanding, past practices, grievance settlements, and any other like items that existed on or before August 31, 2003 are terminated. To the extent that the parties desire to continue any settlements, side agreements (written or unwritten), memoranda of understanding, letters of understanding, past practices, grievance settlements, and any other like items, they have been reduced to writing and included this Memorandum of Settlement or in the Agreement attached as Exhibit 1.

Executed this 9th day of September 2003.

For the Union

Patrick Tomczak

Ron Celeski

Michael L. Sherbin

Gary G. Morton

For the Company

Answer & Counterclaim Exh. B