# FEDERAL MEDIATION AND CONCILIATION SERVICE
## ROBERT A. CREO
## ARBITRATOR

| | | |
|---|---|---|
| In the Matter of Arbitration | * | |
| between | * | |
| ACCURIDE ERIE, L.P., | * | |
| Employer | * | OPINION AND AWARD |
| | * | |
| and | * | |
| UNITED AUTOMOBILE WORKERS | * | |
| LOCAL 1186, | * | |
| Union | * | |

Arbitrator's Case No.:          04-033

FMCS Case No.:          040921-08284-7

Employer Advocate:          Frederick C. Miner, Esquire

Union Advocate:          Edward J. McGowan

Subject:          Medical Benefits Eligibility

Grievance No.:          04-35-HP6

Date of Hearing:          January 26, 2005

Location of Hearing:          Bayfront Office Park Building
Erie, Pennsylvania

Record Closed:          March 31, 2005

Opinion and Award Issued:          April 26, 2005

Statement of Award:          The Grievance is arbitrable. The Employer is ordered to cease and desist from not providing benefits to all employees as provided by the Agreement. Employees are to be made whole for any losses due to the improper denial of benefits. The Arbitrator retains jurisdiction over the implementation of this Award.

*Accuride Erie L.P. & U.A.W. Local 1186 Medical Benefits Eligibility*
*Robert A. Creo, Arbitrator; Opinion & Award 4/26/2005*

## APPEARANCES

<u>For the Employer:</u>
Frederick C. Miner, Esquire

<u>Also Present:</u>
Michael Pinson, Human Resources Director
Pat Wolfe, Director of Compensation Benefits, Accuride Corporation

<u>For the Union:</u>
Edward McGowan, International Representative

<u>Also Present:</u>
Douglas Ferguson, President UAW Local 1186
Gary Montroy, Vice-President UAW Local 1186
Ron Celeski, Recording Secretary UAW Local 1186

## PRELIMINARY STATEMENT

The parties, Accuride Erie ("Company" or "Employer") and UAW Local 1186 ("Union"), having failed to resolve a dispute involving the eligibility for medical benefits, proceeded to final and binding arbitration pursuant to the terms of their collective bargaining agreement ("Agreement"). Grievance Number 04-35-HP6 was filed on June 8, 2004 and moved to arbitration in a timely manner. Robert A. Creo, Esquire was appointed to serve as impartial arbitrator from a panel of arbitrators established by the Federal Mediation and Conciliation Service. The Arbitrator assigned his own Case Number 04-033 to the Grievance. An oral hearing was held on January 26, 2005 at the Federal Mediation and Conciliation Services office in Erie, Pennsylvania. All witnesses were sworn. Both parties were given full opportunity to present evidence, to cross-examine the witnesses and to argue their respective positions. The parties opted to make a stenographic record of the hearing. The parties stipulated that the Arbitrator has full authority to resolve any arbitral challenges or procedural issues and/or to decide the case on its merits. The parties stipulated to the Issue. Post-hearing briefs were filed by the parties by March 31, 2005. Neither party objected to the publication of the Opinion and Award.

002

*Accuride Erie L.P. & U.A.W. Local 1186 Medical Benefits Eligibility*
*Robert A. Creo, Arbitrator; Opinion & Award 4/26/2005*

## BACKGROUND AND SUMMARY OF TESTIMONY

No material facts are at issue, so the Arbitrator will rely upon the recitations contained in the Briefs filed by the parties. The Briefs will be excerpted verbatim or paraphrased herein.

AKW L.P. ("AKW" or the "Company") was a limited partnership that was jointly owned at the time of its formation by Kaiser and Accuride Corporation. Kaiser owned and operated the Erie Plant prior to May 1997. The Company acquired the Erie Plant in May 1997.

Negotiations between representatives of the Company and the Union occurred in April 1997 for an initial collective bargaining agreement covering the Erie Plant employees. Among the substantive issues addressed was the transition of Kaiser employees who were retirement eligible to employment with the Company. The Company's representatives initially proposed that such individuals receive medical benefits for its active employees and forego, during their employment, Kaiser retiree medical benefits. By contrast, the Union proposed that Kaiser retirees should maintain their eligibility for Kaiser retiree medical benefits, which required no monthly contributions. The Company proposed that those Kaiser retirees who so chose could elect to rely exclusively on Kaiser retiree medical coverage by making an "irrevocable, one-time voluntary election" to "opt out" of the Company's medical coverage for the employees and their dependents. The Company's proposed letter of agreement in this respect provided that "If these individuals elect Kaiser retiree medical…coverage, they will not be covered at any future time by any AKW medical…insurance."

In response to a question from the Union's International Representative concerning the Company's opting out proposal and whether an employee could change his election in the future, the Company's spokesperson explained that:

> Joe [the UAW's International Representative] asked whether Kaiser retirees who work for AKW can elect Kaiser retiree insurance with an additional option of changing their election in the future (i.e., whether individuals electing Kaiser retiree insurance can return to AKW coverage at some future point while they are working at AKW). This additional option would not be available, and the Kaiser retirees who work for AKW would have to elect Kaiser retiree insurance coverage, on the one hand, or elect AKW coverage, on the other hand, as a one-time irrevocable decision. As I explained to Joe, it has been extremely difficult to make arrangements even for a one-time election by Kaiser retirees who desire Kaiser coverage rather than AKW coverage (or visa [sic] versa). The one-time basis of this election has been the only way we have been able to accommodate your desire for an option in this area

003

*Accuride Erie L.P. & U.A.W. Local 1186 Medical Benefits Eligibility*
*Robert A. Creo, Arbitrator; Opinion & Award 4/26/2005*

The bargaining committees reached tentative agreement on the subject of a one-time, irrevocable election by Kaiser retirees. In a ratification meeting summary that was prepared for the Union leadership to present to employees, the opt out election was described as follows:

> Kaiser retirees hired by AKW as startup/substitute startup employees, who retire from Kaiser by September 15, 1997 can make a one-time irrevocable election - at time of retirement from Kaiser - to elect either Kaiser retiree medical/life insurance OR AKW medical/life insurance (election applies to themselves and dependents). Resulting treatment of medical/life insurance by Kaiser or AKW varies: a. Electing Kaiser Retiree Coverage. If the retiree elects Kaiser retiree insurance for themselves and dependents, they will participate in Kaiser insurance and will not have future AKW insurance.

Employees ratified the new agreement, which was reduced to writing and signed. The letter memorializing the agreement concerning the subject of opting out states in pertinent part as follows:

> Startup Kaiser Retirees will be permitted to "opt out" of AKW medical/life insurance by making an irrevocable, one-time voluntary election, at the time they retire from Kaiser on or before September 15, 1997, to elect Kaiser retiree medical and life insurance coverage for themselves and any dependents in lieu of any AKW medical and life insurance coverage. If these individuals elect Kaiser retiree medical...insurance coverage, they will not be covered at any future time by any AKW medical...insurance.

The May 1997 agreement was extended in an agreement dated August 18, 1998. In 1999, Accuride acquired all of the interests in AKW, and the Company's name changed. However, there was no change in the Company's legal status. The 1998 agreement continued in effect through August 2003.

The Company communicated about the election of medical benefits under the "opt out" agreement in a memorandum that was distributed in May 1997, as follows:

> Kaiser Retiree Medical/Life Insurance and One-Time AKW "Opting Out" Election
> If you are an eligible AKW startup (or substitute startup) employee who retires by September 15, 1997 under the Kaiser hourly pension plan, the following provisions govern your health and life insurance options for yourself and your dependents:
>
> Opting Out of AKW Insurance in Favor of Kaiser Retiree Insurance. If you satisfy the above requirements, you will be permitted to "opt out" of AKW

Page 4 of 21

004

*Accuride Erie L.P. & U.A.W. Local 1186 Medical Benefits Eligibility*
*Robert A. Creo, Arbitrator; Opinion & Award 4/26/2005*

medical/life insurance by making an irrevocable, one-time voluntary election at the time you retire from Kaiser on or before September 15, 1997. If you exercise this option, you will be electing Kaiser retiree medical and life insurance coverage for yourself and any dependents instead of any AKW medical and life insurance coverage. You must understand this option will be permanent and irrevocable. If you elect Kaiser retiree medical and life insurance coverage, you and your dependents will not be covered at any future time by any AKW medical and life insurance....

IMPORTANT NOTE: Any election that you make will remain permanent and irrevocable even if the benefit plans change or if different circumstances at some point result in higher or lower coverage....When you decide to make any election, you are responsible for understanding the relevant plans and the permanent irrevocable nature of your election notwithstanding potential future changes or developments.

Subsequently, the employees who had retired from Kaiser before September 15, 1997 elected either Kaiser retiree medical benefits or AKW active employee benefits. Many Kaiser retirees, but not all, elected to receive the Kaiser retiree medical benefits to the exclusion of the Company's benefits. The election form completed by these employees provided in pertinent part as follows:

I Opt Out of AKW Insurance in Favor of Kaiser Retiree Insurance. I am electing Kaiser retiree medical...coverage for myself and my dependents instead of any AKW medical...insurance coverage. I understand this is a one-time election that is permanent and irrevocable. I understand that my dependents and I will NOT be covered at any future time by any AKW medical...insurance.

ACKNOWLEDGMENT: I understand and acknowledge that the above election is being made on a one-time basis and will remain permanent and irrevocable even if the benefit plans change or if different circumstances at some point result in higher or lower coverage. I understand that I am responsible for understanding the relevant plans and the permanent irrevocable nature of my election notwithstanding potential future changes or developments.

The Kaiser retirees who elected Kaiser retiree medical were not covered by the Company's medical benefits at any subsequent time.

The Union submitted a grievance on or about February 16, 2001, contending that employee Joe Matczak and his spouse were improperly denied medical benefits by the Company. The Company denied the grievance because Mr. Matczak and his spouse's lack of

005

*Accuride Erie L.P. & U.A.W. Local 1186 Medical Benefits Eligibility*
*Robert A. Creo, Arbitrator; Opinion & Award 4/26/2005*

coverage was the result of his election to receive Kaiser retiree medical benefits and permanently opt out of the Company's medical benefits.

Arbitrator Paul Gerhart heard the grievance on January 16, 2003, and issued an Award dated September 26, 2003, dismissing it. In the Award, Arbitrator Gerhart reasoned:

> Here, there is no dispute that grievant opted out of the AKW insurance coverage and chose to be covered by Kaiser retiree insurance when he retired from Kaiser and moved to AKW employment. The above Letter unambiguously provides that such individuals "will not be covered at any future time by any AKW medical and life insurance." When [the] grievant subsequently attempted to enroll in AKW insurance, the Company properly denied him that option pursuant to the Letter of Agreement.

Arbitrator Gerhart further pointed out:

> At the conclusion of its brief, after noting that Kaiser is in bankruptcy, the Union asks, "If Kaiser is solely responsible for Kaiser retiree health care coverage for those working at AKW because of the 'opting out/opting down' language and if Kaiser is no longer a party to the Collective Bargaining Agreement, who will provide health care coverage for Kaiser retirees working at AKW?" Such is a reasonable question but not one for the arbitrator to answer. There is nothing in the Agreement that suggests that the parties mutually agreed to put such a question before a grievance arbitrator.

During the negotiations in the summer of 2003 that resulted in the parties' new Agreement, there was no discussion at the bargaining table over the subject of covering employees who had elected to receive Kaiser retiree medical and opted out of the Company's medical coverage.

The parties ultimately agreed that "eligible employees" would receive medical coverage during the term of the Agreement. The Agreement does not provide that Kaiser retirees who formerly opted out of Company coverage are eligible for Company medical benefits. Nor does the Memorandum of Settlement ("MOS") that was achieved at the conclusion of negotiations so provide. The MOS does contain provisions concerning medical benefits for eligible employees, including paragraph 11 providing a choice of medical coverage from a preferred provider plan or health maintenance organization; paragraph 12 requiring employee contributions toward medical benefits based on plan choice; paragraph 13 concerning selection of an insurance agency; and paragraph 14 providing "eligible employees" the opportunity to "opt out of coverage under the plans referred to in paragraph 11" so long as the minimum participation required by the provider is maintained. Importantly, the premium negotiated by the Company excluded the Kaiser

006

retirees who previously opted out of Company medical coverage from the universe of employees on which the required participation rate was based. The Kaiser retirees were excluded from the definition of "eligible employees" for purposes of that section of the MOS.

The Union asserts that the Kaiser retirees became eligible for the Company's medical coverage for active employees on September 1, 2003, when the Agreement came into effect. Neither the employees nor the Union requested coverage at that time. The employees or the Union did not request medical coverage from the Company after the Gerhart Award issued later in September 2003.

Union Vice President Gary Montroy testified that he believed the Union requested coverage for the Kaiser retirees only after the Company raised the subject of Kaiser's termination of its retiree medical plan. He testified that those requests were made in meetings between the Company and the Union that were held to discuss the Company's proposals to provide special medical benefits for affected employees on May 13 and 14, 2004. During those meetings, the Union asserted that the Company was obligated to cover under the Company's medical plan the Kaiser retirees who previously had opted out of such coverage. The Union submitted its grievance roughly 25 days later, on June 8, 2004.

The Company denied the grievance. The Step 3 answer provided that the grievance had no merit because the Kaiser retirees who opted out of Company medical coverage were not eligible to be included in the current plan:

> Employees who signed such "opt out" agreements [in connection with the 1997 startup] have not been eligible for Company provided health and life insurance benefits at any subsequent time. As you know, Arbitrator Gerhart specifically found the "opt out" agreements were enforceable and further determined that employees who signed such agreements, and their dependents, are not eligible for benefits that are offered to other Erie Plant employees. The current Agreement provides no basis for changing the eligibility of those employees who opted out of benefits provided to other active Erie Plant employees many years ago.

The Step 3 answer also denied the grievance because it was untimely:

> The Company has not treated the employees who signed "opt out" agreements as eligible for benefits at any time since the Agreement became effective. Therefore, the date of the occurrence at issue in the grievance is September 1, 2003, at the latest. Article 5 of the Agreement requires the submission of a grievance within 14 calendar days of the occurrence giving rise to it, or September 15, 2003. However, this grievance was not submitted until June 8, 2004, almost nine months later.

*Accuride Erie L.P. & U.A.W. Local 1186 Medical Benefits Eligibility*
*Robert A. Creo, Arbitrator; Opinion & Award 4/26/2005*

The following documents were entered into the Record.

The following Joint Exhibits:

1.  Collective Bargaining Agreement, September 1, 2003 through August 31, 2007
2.  Grievance Packet
3.  Memorandum of Settlement, at the conclusion of the 2003 Anniversary Negotiations
4.  Expired Collective Bargaining Agreement, August 18, 1998

The following Employer Exhibits:

1.  AWK Internal Memorandum Application Form/Potential AKW Employment, April 3, 1997
2.  Revised Attachment B, April 11, 1997
3.  Clarification letter about opting down, April 12, 1997
4.  Ratification Meeting Summary, April 13, 1997
5.  AKW Medical/Life Insurance Options–Important Information, May 9, 1997
6.  Arbitrator Gerhert's Opinion and Award, September 26, 2003
7.  Declaration of bankruptcy, hearing date May 24, 2004
8.  Kaiser Termination of Retirement Benefit Plans letter, dated April 2, 2004
9.  Union letter regarding Company Proposal of May 25, 2004, dated June 4, 2004
10. Company response to the June 4, 2004 letter, dated June 7, 2004

The following Union Exhibits:

1.  Collective Bargaining Agreement, before Company changes, September 1, 2003, dated received August 29, 2003
2.  Accuride employee lists, dated revision received August 29, 2003

## PERTINENT PROVISIONS OF THE AGREEMENT

ARTICLE 5: ADJUSTMENT OF GRIEVANCES

5.1    A grievance is a claim that a term or condition of employment set forth in this Agreement has been violated.

5.2    Step 1.  Before a grievance is submitted, an employee must first discuss the matter with his immediate supervisor and attempt to resolve it.  If the matter is not resolved by that discussion, a grievance may be submitted.  The grievance must be submitted to the aggrieved employee's immediate supervisor within 14 calendar days

*Accuride Erie L.P. & U.A.W. Local 1186 Medical Benefits Eligibility*
*Robert A. Creo, Arbitrator; Opinion & Award 4/26/2005*

of the occurrence giving rise to the grievance....

5.6    An arbitrator shall not add to, subtract from, or modify the terms of this Agreement....

5.8    The time limits in this Article, other than the time for submitting a Step 1 grievance, may be extended by a written, signed agreement. The first day of the time limit will begin with the day after the event that triggers the time limit.

## ARTICLE 32: BENEFITS

During this Agreement, the Company will provide eligible employees with the following benefits:

1.    Medical benefits
2.    Dental benefits
3.    Employee Assistance Program
4.    Sickness and Accident Insurance
5.    Life Insurance
6.    Supplemental Unemployment Benefits
7.    Pension Benefits
8.    Savings Plan
9.    Retiree Medical and Life Insurance benefits

The specific terms of these benefits are set forth in the benefit plans and the insurance contract. The benefit plans and the insurance contract are the controlling documents. Disputes concerning benefit claims will be resolved by the claims procedures of the respective plans or the insurance contract.

## ARTICLE 41: OTHER AGREEMENTS AND MEMORANDA OF UNDERSTANDING

During this Agreement, the Company and the Union may decide to enter into other agreements or memoranda of understanding addressing terms or conditions of employment not covered by this Agreement. The following provisions will apply to such agreements or memoranda of understanding:

(a)    Any agreement or memoranda of understanding that is reached by the Company and the Union will be written and will be signed by authorized representatives of the Company and the Union

*Accuride Erie L.P. & U.A.W. Local 1186 Medical Benefits Eligibility*
*Robert A. Creo, Arbitrator; Opinion & Award 4/26/2005*

(b)    A memoranda of understanding is cancelable by either party upon 24 hours' advance written notice to the other party

(c)    An agreement will run for the term of this Agreement only, unless the parties agree to modify or terminate the agreement prior to the expiration of this Agreement

(d)    An agreement or memorandum of understanding that conflicts with the provisions of this Agreement will be of no effect, unless the agreement or memorandum of understanding expressly amends this Agreement

(e)    An agreement or memorandum of understanding that does not comply with this Article will be of no effect, except that in an emergency the parties may enter into an oral agreement; that oral agreement will not last beyond the emergency unless the parties put it in the form of an agreement or memorandum of understanding that complies with this Article

(f)    When the parties enter into an agreement that amends the provisions of this Agreement, that agreement must be written and must be signed by an authorized representative of the Company and by a majority of the members of the Union committee, and the Local Union President must be one of the Union committee members who signs the agreement

"Opting Out" and Coordination of Kaiser/AKW Retiree Medical Insurance

The following policy has been agreed upon concerning the treatment of "opting out" issues and retiree medical and life insurance for those eligible AKW startup and substitute startup employees who, by September 15, 1997, have retired under the Kaiser hourly pension plan (these individuals are referred to below as "startup Kaiser Retirees"):

(1) Startup Kaiser Retirees will be permitted to "opt out" of AKW medical/life insurance by making an irrevocable, one-time voluntary election, at the time they retire from Kaiser on or before September 15, 1997, to elect Kaiser retiree medical and life insurance coverage for themselves and any dependents in lieu of any AKW medical and life insurance coverage. If these individuals elect Kaiser retiree medical and life insurance coverage, they will not be covered at any future time by any AKW medical and life insurance.

010

*Accuride Erie L.P. & U.A.W. Local 1186 Medical Benefits Eligibility*
*Robert A. Creo, Arbitrator; Opinion & Award 4/26/2005*

"Memorandum of Settlement"
Side Agreements and Similar Items

23. Settlements, side agreements (written or unwritten), memoranda of understanding, letters of understanding, past practices, grievance settlements, and any other like items that existed on or before August 31, 2003 are terminated. To the extent that the parties desire to continue any settlements, side agreements (written or unwritten), memoranda of understanding, letters of understanding, past practices, grievance settlements, and any other like items, they have been reduced to writing and included this Memorandum of Settlement or in the Current Agreement.

**POSITIONS OF THE PARTIES**

**Summary of Employer Brief**

It is fundamental that in cases involving a disputed interpretation of a labor contract, the burden is firmly on the grieving party to prove that its construction of the agreement is correct and that the complained of action taken by management is inconsistent with that agreement. As Arbitrators Updegraff and McCoy wrote in their influential treatise, concepts related to "burden of proof" must mean, at minimum, that "the party holding the affirmative of an issue must produce sufficient evidence to prove the facts essential to his claim." Updegraff & McCoy, Arbitration of Labor Disputes (BNA) (1946). "The general rule followed by labor arbitrators in nondisciplinary proceedings is that the grieving party...bears the initial burdens of proceeding and proof." Fairweather, Practice and Procedure in Labor Arbitration (BNA) (1973).

The Union cannot meet its burden here. The grievance alleges exclusively a violation of Article 32 of the Agreement. Therefore, its grievance must rise or fall based upon the proper construction of Article 32. An examination of Article 32, however, shows that the grievance has no merit.

Article 32 provides in pertinent part that "eligible employees" will receive medical and certain other benefits during the term of the Agreement. Article 32 contains no provision conferring medical benefits on any employee or group of employees who were previously ineligible for the Company's medical benefits. It contains no such provision conferring benefits on the Kaiser retirees who opted out of the Company's medical coverage.

The parties' MOS also contains language pertaining to medical benefits for eligible employees. While the MOS makes certain medical benefit choices available and prescribes employee contributions toward the cost of their coverage, among other items, the MOS is not the

011

*Accuride Erie L.P. & U.A.W. Local 1186 Medical Benefits Eligibility*
*Robert A. Creo, Arbitrator; Opinion & Award 4/26/2005*

source of medical benefits and it does not purport to extend such benefits to any group of employees. However, the parties' use of the term "eligibility" in the MOS clearly excluded Kaiser retirees who opted out of the Company's medical benefits in 1997. That is because the group of employees who were used to negotiate the minimum participation levels for "eligible employees" in paragraph 14 of the MOS excluded those Kaiser retirees. The parties' use of the same term in Article 32 is subject to precisely the same construction.

Since 1997, the Kaiser retirees who opted out of the Company's medical benefits at the startup of the Company's operations have been ineligible for Company sponsored medical benefits. In their election forms, the employees specifically acknowledged that "I understand this is a one-time election that is permanent and irrevocable" and that "I understand that my dependents and I will <u>NOT</u> be covered at any future time by any AKW medical and life insurance" (emphasis original). The employees' elections further acknowledged their understanding that the elections "will remain permanent and irrevocable even if the benefit plans change or if different circumstances at some point result in higher or lower coverage" and that the elections were permanent and irrevocable "notwithstanding potential future changes or developments." These elections effectuated the specific language in the "opt out" letter in the parties' 1997 agreement that Kaiser retirees would have the opportunity to make an "irrevocable, one-time voluntary election" to receive Kaiser retiree medical coverage for themselves and their dependents, provided, they *"will not be covered at any future time"* by any Company medical benefits. There is no dispute that as a result of their elections, the Kaiser retirees who are at issue here have never been covered by a Company medical plan.

The Gerhart Award found that the parties' opt out agreement was unambiguous, the Kaiser retirees' elections were permanent and irrevocable, and therefore Kaiser's failure to furnish coverage to one of the retiree's dependents did not trigger any obligation by the Company to extend coverage under its medical plan. That Award is entitled to deference here. As Arbitrator Smith concluded in an influential opinion, a proper regard for the arbitration process and stability in the parties' bargaining relationship requires acceptance by an arbitrator of a prior interpretation of the parties' agreement rendered by another arbitrator. <u>O & S Bearing Co.</u>, 12 Lab. Arb. (BNA) 132, 135 (1949) (Smith, Arb.).

As a result of the Gerhart Award, there cannot be any question that the Kaiser retirees who opted out of the Company's medical benefits in 1997 cannot revoke or modify their elections. Under the opt out agreement then in effect, and the terms of the elections themselves, the elections were permanent and irrevocable. Therefore, the Union's burden in this case is to show that the Gerhart Award has been modified or superceded by an agreement to treat the Kaiser retirees differently. <u>See Monarch Tile, Inc.</u>, 101 Lab. Arb. (BNA) 585, 587 (1993) (Hooper, Arb.) ("Where a prior decision involves the interpretation of the identical contract provision, between the same company and union, every principle of common sense, policy, and labor relations demands that it stand until the parties annul it by a newly worded contract provision.");

Page 12 of 21

*Accuride Erie L.P. & U.A.W. Local 1186 Medical Benefits Eligibility*
*Robert A. Creo, Arbitrator; Opinion & Award 4/26/2005*

Pacific Southwest Airlines, 76 Lab. Arb. (BNA) 197, 200 (1981) (Ross, Arb.) ("An arbitrator's award becomes part of the terms of the contract when it is rendered binding upon the parties. That must mean binding as soon as it is issued and until such time as the parties mutually vary the effect of the award."); Stone Container Corp., 96 Lab. Arb. (BNA) 483, 485 (1990) (Nolan, Arb.) (an arbitration award "amends the Agreement until the parties jointly change the arbitrator's interpretation.")

However, the Union has offered nothing demonstrating a change in the eligibility of the employees who opted out of Company coverage. Indeed, the Union conceded that the subject was not even discussed at the bargaining table during the anniversary negotiations that resulted in the Agreement.

Instead, the Union points to the parties' failure to include the opt out letter in the parties' new Agreement as evidence that the elections are no longer effective. The Union's argument is fundamentally misguided, because it concedes that the failure to include that letter was not the result of its proposal to provide new benefits for the Kaiser retirees, but rather the Company's request to simplify the agreement and eliminate unnecessary provisions concerning transitional subjects. The MOS specifically states that "most of the provisions of [the parties' 1997 Agreement Concerning Transitional Issues] concerned events that took place at the time of the commencement of the operations." The opt out letter is a perfect example of this: it specifically provided for one-time, voluntary elections to be made by eligible employees no later than September 15, 1997. The decision not to include the opt out letter in the parties' new Agreement simply reflects the fact that all of the employees at issue had long since made their elections, and there were no further elections to be made. The decision not to include the opt out letter does not, and it cannot, have the effect of affirmatively creating rights to medical benefits that were specifically, and unambiguously, waived.

The Union's contention underlying its arguments, both here and before Arbitrator Gerhart, was that it expected in 1997 that the Kaiser retirees would receive medical benefits either from Kaiser or the Company. Now that Kaiser has entered bankruptcy, the Union objects to the perceived fairness of the opt out agreement and the elections that were validly executed while it was in effect. However, claims concerning the expectations of one of the parties or the ability of their agreement to meet the needs of new and changed circumstances are not appropriate for arbitration. They are for the bargaining table. Whether and how the Company will furnish new medical benefits for employees who have never previously received them are questions for the parties to answer together based upon the mutually agreeable results of good faith bargaining, and are not for imposition by an arbitrator.

[The arbitrator's] function is not to rewrite that Agreement and certainly it is not to suggest, imply nor to inform the Parties of what changes should be effected, renegotiated or changed even if his sense of justice and fairness so dictate, or even if

013

*Accuride Erie L.P. & U.A.W. Local 1186 Medical Benefits Eligibility*
*Robert A. Creo, Arbitrator; Opinion & Award 4/26/2005*

he believes the Agreement contains inequities.... The Arbitrator's Award . . . . must derive its essence from the Agreement, and tell the Parties what they can or cannot do inside of that Agreement.

Lorillard, 87 Lab. Arb. (BNA) 507,512 (1986) (Chalfie, Arb.).

For roughly nine months before the submission of the grievance in this case, the parties' Agreement was in effect and the group of Kaiser retirees who opted out of the Company's medical benefits in 1997 were not covered by the Company's medical plan. As a result, they also did not pay the mandatory medical premium contributions that eligible employees pay to participate in the HMO or PPO options. Nevertheless, the Union's claim in the grievance is that the Agreement itself required the Company to provide medical benefits to the Kaiser retirees effective September 1, 2003. The Union has not pointed to any language in the Agreement, and there is none, that would create such an obligation.

In addition to lacking merit, the Union's grievance runs roughshod over the requirements of the contractual grievance procedure. Article 5.2 of the Agreement is mandatory in nature. It provides that a grievance "must" be submitted within 14 calendar days of the occurrence giving rise to the grievance. The Union's grievance was submitted roughly nine months after the occurrence giving rise to it, specifically, the alleged failure to cover employees who previously opted out of Company medical coverage. The Union's grievance, therefore, should be dismissed.

"Promptness is one of the most important aspects of grievance settlement." Wynn Oil Co., 70 Lab. Arb. (BNA) 52, 56 (1978) (Gibson, Arb.). Many arbitrators view timeliness as so crucial to the parties' ability to resolve disputes that they require submission of grievances within a reasonable time even absent an express limitations period. See, e.g., Nickel's Pay-Less Stores, 47 Lab. Arb. (BNA) 1153, 1156 (1966) (Killion, Arb.) ("In recent years...Arbitrators have looked more and more with disfavor upon stale grievances and have held them barred); New York Racing Assoc., 43 Lab. Arb. (BNA) 129, 134 (1964) (Scheiber, Arb.) ("The failure to enforce such time limitations in disregard of the Parties' wishes tends only to keep open the lid of Pandora's box of stale claims, and to keep alive grievances of ancient vintage which were difficult to prove and which tend to acerbate the relationships of the Parties."); Walter Kidde & Co., Inc., 16 Lab. Arb. (BNA) 369 (1951) (Handsaker, Arb.) (grievance submitted seven months after occurrence giving rise to it could not be heard on its merits even though union argued the parties' agreement contained no time limit for submitting grievances).

Timeliness is critical to the resolution of disputes and, accordingly, to industrial peace between the parties. "[I]t must be recognized that observance of provisions for the prompt and orderly handling of grievances may be just as important to satisfactory relations between the parties as the observance of any other provisions of the contract." Truitt Mfg. Co., 27 Lab. Arb. (BNA) 157, 159 (1956) (Warns, Arb.). "The timely and orderly movement of grievances to their ultimate disposition (either by the parties or in arbitration) constitute necessary prerequisites to a

healthy and mutually fruitful bargaining relationship." Fibreboard Paper Prods. Corp., 46 Lab. Arb. (BNA) 59, 61 (1966) (Roberts, Arb.).

Arbitrator Bognanno summarized some of the industrial relations precepts underlying arbitrators' careful adherence to time limitations in collective bargaining agreements in Federal Aviation Administration, 97 Lab. Arb. (BNA) 1185 (1991) (Bognanno, Arb.), as follows:

> First, while the parties call upon arbitrators to resolve contractual disputes, they do so with the expectation that arbitrators will honor all of the provisions making up the Collective Bargaining Agreement.  In other words, the parties do not retain the services of arbitrators in order that they may violate the terms of the very Agreement they are being called upon to enforce.  Second, this tenet of labor arbitration applies to all clauses in the Agreement and, in particular, to carefully drawn language, such as, that found in [the contractual grievance procedure] of the instant Agreement.  Third, employers and employee organizations include time limiting language in their contracts for a number of good reasons.  One reason is to prevent grievances from bunching up, thus frustrating the prospects that each grievance may be adequately discussed during the steps of the grievance process.  Another reason, is to insure that each grievance receives urgent attention, the theory being: "justice delayed is justice denied."...Several other reasons could also be listed.  Lastly, however, it is sufficient to observe that time limiting language in contracts are there for good policy reasons which arbitrators are duty bound to observe in the absence of compelling mitigation to the contrary.

Id., at 1187.  The arbitrator concluded that the grievance, submitted several months late, must be denied.

It is well settled that "where the contract between the parties provides for definite time limits in processing grievances, the Arbitrator is bound to respect these limits which have been imposed by the parties themselves by mutual agreement." Republic Oil Refining Co., 15 Lab. Arb. (BNA) 640, 642-3 (1950) (Ralson, Arb.).  "Arbitrators are bound by the contract that the parties have voluntarily agreed to." Valley Dolomite Corp., 11 Lab. Arb. (BNA) 98, 100 (1948) (McCoy, Arb.).  "[T]he grievance procedure outlined in the parties' collective bargaining agreement must be considered and applied just as carefully as any other provision therein contained." Van Dyne Crotty, Inc., 46 Lab. Arb. (BNA) 338, 345 (1966) (Teple, Arb.).  Indeed, excusing the tardy submission of grievances would constitute an alteration of the parties' negotiated grievance procedure, something expressly prohibited by most agreements and the Agreement here.  "If the periods allowed by the instant contract are not adequate to serve the interests of the parties in the orderly adjustment of grievances, that is something which they should work out through the processes of collective bargaining." Truitt Mfg. Co., 27 Lab. Arb. (BNA) at 160.

*Accuride Erie L.P. & U.A.W. Local 1186 Medical Benefits Eligibility*
*Robert A. Creo, Arbitrator; Opinion & Award 4/26/2005*

"The overwhelming precedents and the custom of sustaining reasonable time limits for presenting grievances... leave no choice but to find that the employee and the Union do not have the right to an award, nor to arbitration, in this case." Walker Country Hosiery Mills, 13 Lab. Arb. (BNA) 387, 390 (1949) (Holden, Arb.). Arbitrators regularly rule that noncompliance with the timely submission requirements in a grievance procedure by the union prevents them from ruling on the alleged noncompliance with another provision of the agreement by the employer. Illustrative cases include the following:

- Mobile Video Services, Ltd., 83 Lab. Arb. (BNA) 1009, 1011 (1984) (Hockenberry, Arb.) (the union's submission of a grievance one day late was "fatal")

- Valley Dolomite Corp., 11 Lab. Arb. (BNA) at 100 (refusing to resolve the merits of the grievance because it was filed one day late)

- Erwin Mills, Inc., 47 Lab. Arb. (BNA) 606, 608 (1966) (Stark, Arb.) (grievance submitted one day late was dismissed because "the Arbitrator, no less than the parties, is bound by the terms of the Agreement")

- Fiberboard Paper Products Corp., 46 Lab. Arb. (BNA) 59, 62 (1966) (Roberts, Arb.) (holding that the grievance was not arbitrable because the filing was one to two days late)

- Bethlehem Steel Corp., 46 Lab. Arb. (BNA) 767 (1966) (Seward, Arb.) (grievance submitted one or two days late was dismissed)

- Republic Oil Refining Co., 15 Lab. Arb. (BNA) at 642 (grievance dismissed because it was submitted two days late)

- Huron Lime Co., 106 Lab. Arb. (BNA) 997 (1996) (Bowers, Arb.) (discharge grievance submitted two days late was dismissed)

- Olin Mathieson Chemical Corp., 37 Lab. Arb. (BNA) 588, 591 (1961) (Loucks, Arb.) (dismissing grievance submitted two days late)

- Bahlsen, Inc., 99 Lab. Arb. (BNA) 515, 520 (1992) (Nolan, Arb.) (grievance not arbitrable because it was submitted three days late)

- Bauer Bros. Co., 15 Lab. Arb. (BNA) 318, 323 (1950) (Klamon, Arb.) (grievance not arbitrable because it was submitted within 48 working hours, not 48 consecutive hours, from the date of the grievant's discharge)

- Wynn Oil Co., 70 Lab. Arb. (BNA) at 57 (discharge grievance submitted five days late was dismissed)

- Walker County Hosiery Mills, 13 Lab. Arb. (BNA) at 390 (grievance dismissed because it was submitted seven days late)

016

*Accuride Erie L.P. & U.A.W. Local 1186 Medical Benefits Eligibility*
*Robert A. Creo, Arbitrator; Opinion & Award 4/26/2005*

- <u>Navel Supply Center</u>, 85 Lab. Arb. (BNA) 655, 656 (1985) (Harkless, Arb.) (grievance was dismissed because it was filed ten days late)

- <u>Dayton Malleable Iron Co.</u>, 27 Lab. Arb. (BNA) 179, 183 (1956) (Warns, Arb.) (grievance dismissed because the submission was eleven days late; "having concluded that [the grievant] did not fulfil [sic] his contractual duty of filing his grievance within the limitations provided in [the agreement], I have no further authority as an arbitrator to bind the parties by reference to the merits of the case.")

- <u>Centel Business Systems</u>, 90 Lab. Arb. (BNA) 172, 176 (1987) (Fish, Arb.) (grievance not arbitrable because the submission was sixteen days late)

- <u>Truitt Mfg. Co.</u>, 27 Lab. Arb. at 160 (grievance was not arbitrable because it was submitted more than ten days after union had notice of the alleged violation, reasoning that "reasonable time limits set by the parties' contract must be observed and sustained.")

The time limit in the parties' Agreement likewise must be enforced. The grievance was not submitted within 14 calendar days "of the occurrence giving rise to the grievance." Instead, it was submitted roughly nine months after the alleged right to medical benefits came into effect. It is uncontested that the employees were not covered under any Company medical plan at any time. If the Union believed that Kaiser retirees were entitled to medical coverage from the Company, the grievance should have been submitted, at the latest, on September 15, 2003. Because it was not, the grievance should be dismissed.

<u>The Company cited the following sources</u>:

1. Updegraff & McCoy, <u>Arbitration of Labor Disputes</u> (BNA) (1946)
2. Fairweather, <u>Practice and Procedure in Labor Arbitration</u> (BNA) (1973)
3. <u>O & S Bearing Co.</u>, 12 Lab. Arb. (BNA) 132 (1949) (Smith, Arb.)
4. <u>Monarch Tile, Inc.</u>, 101 Lab. Arb. (BNA) 585 (1993) (Hooper, Arb.)
5. <u>Pacific Southwest Airlines</u>, 76 Lab. Arb. (BNA) 197 (1981) (Ross, Arb.)
6. <u>Stone Container Corp.</u>, 96 Lab. Arb. (BNA) 483 (1990)
7. <u>Lorillard</u>, 87 Lab. Arb. (BNA) 507 (1986) (Chalfie, Arb.)
8. <u>Wynn Oil Co.</u>, 70 Lab. Arb. (BNA) 52 (1978) (Gibson, Arb.)
9. <u>Nickel's Pay-Less Stores</u>, 47 Lab. Arb. (BNA) 1153, 1156 (1966) (Killion, Arb.)
10. <u>New York Racing Assoc.</u>, 43 Lab. Arb. (BNA) 129 (1964) (Scheiber, Arb.)
11. <u>Walter Kidde & Co., Inc.</u>, 16 Lab. Arb. (BNA) 369 (1951) (Handsaker, Arb.)
12. <u>Truitt Mfg. Co.</u>, 27 Lab. Arb. (BNA) 157 (1956) (Warns, Arb.)
13. <u>Fibreboard Paper Prods. Corp.</u>, 46 Lab. Arb. (BNA) 59 (1966) (Roberts, Arb.)
14. <u>Federal Aviation Administration</u>, 97 Lab. Arb. (BNA) 1185 (1991) (Bognanno, Arb.)
15. <u>Republic Oil Refining Co.</u>, 15 Lab. Arb. (BNA) 640 (1950) (Ralson, Arb.)
16. <u>Valley Dolomite Corp.</u>, 11 Lab. Arb. (BNA) 98 (1948) (McCoy, Arb.)

017

*Accuride Erie L.P. & U.A.W. Local 1186 Medical Benefits Eligibility*
*Robert A. Creo, Arbitrator; Opinion & Award 4/26/2005*

17. <u>Van Dyne Crotty, Inc.</u>, 46 Lab. Arb. (BNA) 338 (1966) (Teple, Arb.)
18. <u>Walker Country Hosiery Mills</u>, 13 Lab. Arb. (BNA) 387 (1949) (Holden, Arb.)
19. <u>Mobile Video Services, Ltd.</u>, 83 Lab. Arb. (BNA) 1009 (1984) (Hockenberry, Arb.)

## <u>Summary of Union Brief</u>

The history of the current dispute requires the review of the written Agreements between the Union and previous Employer and between the Union and current Employer. The previous Collective Bargaining Agreement contains a Letter of Agreement referencing medical insurance benefits for active employees eligible to receive retiree benefits from their former Employer; Kaiser Aluminum and Chemical Corporation. The Corporate entity which engage the Agreement was a Joint Venture Partnership of Kaiser Aluminum and Chemical Corporation and Accuride Corporation. The Letter of Agreement granted an "irrevocable, one-time voluntary election" of benefits. Furthermore, the same referenced paragraph states "they will not be covered at any future time by any <u>AKW medical and life insurance.</u>" (emphasis supplied). AKW is the name of the Joint Venture limited partnership which negotiated the previous Collective Bargaining Agreement.

The Union argues that the instant dispute is controlled by the terms of the current Collective Bargaining Agreement and not the previous Agreement. The previous Collective Bargaining Agreement was negotiated between the Union and AKW L.P., a totally different legal entity from the current Employer and party to the current Collective Bargaining Agreement; Accuride Erie. The previous limited partnership as applicable to the bargaining unit and current Collective Bargaining Agreement is not effective, is not a party to the Agreement and is not referenced in any way in the Agreement. Negotiations and agreement of the current contract occurred solely by and between the Union and Accuride Erie.

The written instruments of the negotiations; Memorandum of Settlement and the Collective Bargaining Agreement were authored and presented by the Company. The exclusionary deletion/termination clause of the Memorandum of Settlement was exclusively authored and proposed by the Company. The parties agreed to the termination of a multitude of previous agreements through this instrument.

Union Exhibit #1 establishes that the "Exhibit 1" referenced of the "Memorandum of Settlement" is the current Collective Bargaining Agreement in toto without change as presented by the Company to the Union on August 29, 2003. The document confirms the fact that the Company did not propose and did not include exclusion from benefits for the aggrieved employees. In point of fact the only reference to exclusion of benefits and other terms applies to Summer Employees and Temporary Employees as referenced in Article 10 of the Agreement. Union Exhibit #2 establishes that the Company generated a listing of bargaining unit employees

*Accuride Erie L.P. & U.A.W. Local 1186 Medical Benefits Eligibility*
*Robert A. Creo, Arbitrator; Opinion & Award 4/26/2005*

employed at the time of negotiation for the current contract. Neither party in this dispute has presented any evidence or testimony that the current Collective Bargaining Agreement contains any distinction or exclusion from receipt of benefits for any aggrieved employee. The Company contends that such exclusion is maintained through the terms of an expired agreement, the same agreement which was supplanted by the current contract. The same expired agreement which was terminated via the Company construction and requirement of paragraph 23 of the "Memorandum of Settlement." The Company contends that the terms of the Letter of Agreement be given full force and effect in the current Collective Bargaining Agreement. The basics of any contract between parties is "consideration". In the previous contract the Union negotiated a benefit with AKW L.P. with the consideration that any employee eligible for retirement health insurance had an option to choose either Kaiser Aluminum and Chemical health supplied benefits or AKW L.P. supplied benefits while remaining actively employed by AKW L.P. This benefit option was negotiated "in consideration" of the employee's service of labor with AKW L.P. This covenant is further reinforced by the reference in the same paragraph that employees who choose Kasier retiree insurance "will not be covered by any <u>AKW</u> medical and life insurance". (emphasis supplied) The Union draws the Arbitrator's attention to the current Collective Bargaining Agreement and the listed parties to the Agreement, namely Accruride Erie. The Union did not negotiate any consideration to or with AKW L.P. in the current Collective Bargaining Agreement.

The Company's argument regarding application of previous terms explicitly deleted from the Agreement, negotiated with a former Employer is absurd and nonsensical. The Company presented no argument or case for a "mistake" or error of omission from the terms of the previous agreement. The Company has not established that the terms of eligibility to receive insurance under the current Collective Bargaining Agreement exclude active bargaining unit employees previously receiving coverage from a third entity not a party to the Agreement.

The Union argues that the Arbitrator uphold the Grievance and grant the affected employees relief either in retroactive application of insurance coverage or in making employees whole for any expenses the employee incurred either as a result of obtaining insurance coverage or as a result of expenses for medical services received which would have been covered.

## ISSUE

1)    Is the Grievance arbitrable?

2)    Did the Company violate the Collective Bargaining Agreement by not extending coverage to employees who previously opted out of Company sponsored medical benefits?

If so, what shall the remedy be?

*Accuride Erie L.P. & U.A.W. Local 1186 Medical Benefits Eligibility*
*Robert A. Creo, Arbitrator; Opinion & Award 4/26/2005*

## DISCUSSION AND FINDINGS

The first issue before this Arbitrator, as raised by the Company, is the timeliness of the Grievance. The Company contends that the Union is arguing that the violation originally occurred when the new Collective Bargaining Agreement took effect, in September of 2003 but that the Union did not file a grievance until June of the following year. According to the Agreement, a grievance must be filed within 14 days of the event that gives rise to the grievance. The Union asserts that the grievance arose when the Kaiser benefits were terminated on May 31, 2004. The Grievance was filed on June 8, 2004. According to testimony at the arbitration hearing, there were discussions during May that pertained to offering health benefits to the Kaiser retirees who would no longer receive benefits. Therefore, the Company was aware that the benefits were of issue and were not included in the bargaining process. It is this Arbitrator's finding that the Grievance was timely filed due to the Kaiser benefit termination date of May 31, 2004. This is the effective date of the action which led to the harm alleged by the Union. The Grievance is timely and arbitrable.

In the current Agreement, there are no sections that pertain to the health benefits or the opting out that was done under AKW which states that should benefits be terminated then these employees are precluded from obtaining benefits under the new Agreement. The parties had the opportunity to include in this Agreement the letter of understanding that would have included the opting out language as irrevocable and the sole source of benefits. They did not do so. As a result, there is no language to control in the current Agreement with regard to the opting out that occurred under the predecessor AKW and the bargaining unit.

The prior grievance that Arbitrator Gerhart ruled upon arose under the previous Agreement, with different circumstances. The cases cited clearly show that when there are changes in the Agreement, then the previous decisions do not control, which is the case here. There are clearly differences between the previous Agreement and the current Agreement, all of which were testified to at the arbitration hearing. Through testimony, the Union highlighted all of the differences between the former Agreement and the Agreement that is now effective and controlling in this case. Therefore, the provision from the prior contract is no longer included in the current Agreement. Without that provision, the election to opt out becomes meaningless and Arbitrator Gerhart's ruling no longer applies. They key change is the fact that the election is now meaningless and that there are no benefits available.

The Company cites Article 32 of the Agreement as precluding them from having to provide benefits to those employees that had opted out under the former opt out agreement. They argue that the term "eligible" employees precludes those that had opted out, citing that the opt out made them "ineligible." However, nowhere in the Agreement is there any backing for this contention. Eligible, therefore, applies to other terms of eligibility and not the opt out agreement that had been signed under AKW and the previous bargaining Agreement.

*Accuride Erie L.P. & U.A.W. Local 1186 Medical Benefits Eligibility*
*Robert A. Creo, Arbitrator; Opinion & Award 4/26/2005*

The underlying assumption is that the employees have some comparable benefits from a collateral source  With the termination of the Kaiser benefits, that is no longer the case.  The current Agreement covers all employees of Accuride.  The current Agreement does not exclude them from receiving benefits.  The Company is relying upon the Agreement that was reached by AKW with the Kaiser employees that became AKW employees in which the employees elected to opt out of coverage under Accuride.  It is against common sense to refuse benefits to these employees now that they are no longer receiving benefits from a third party that was not privy to the bargaining process, especially since other employees that opt out are able to receive benefits in the future if they so choose.  This is especially true now that there are no benefits available to those that had opted out.  There was testimony presented at the arbitration hearing that showed that if another eligible employee were to opt out (e.g. because of benefits available from a spouse's program) and then wished to become an eligible employee for benefits again, they were able to do so.  The Arbitrator finds that under the Agreement, the Company is not able to deny some employees the benefit of health coverage provided to all other employees.  Employees previously obtained benefits from another source due to an  opt out they signed with Accuride's predecessor, AKW, based upon an understanding that benefits would continue. No rational person would have opted out on the assumption that future benefits were at risk or otherwise temporary.

Therefore, the Grievance is upheld and granted in full.  Employees are to be made whole for any losses due to the improper denial of benefits.  The Arbitrator shall retain jurisdiction over the implementation of this Award.

## AWARD

The Grievance is arbitrable.

The Employer is ordered to cease and desist from not providing benefits to all employees as provided by the Agreement.  Employees are to be made whole for any losses due to the improper denial of benefits.  The Arbitrator retains jurisdiction over the implementation of this Award.

It is hereby so Ordered this 26th day of April, 2005.

ROBERT A. CREO, Esquire
Arbitrator, Pittsburgh, Pennsylvania

021