**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ACCURIDE ERIE L.P., a limited partnership, | Case No. 05-CV-169 Erie |
| Plaintiff/Counterclaim Defendant, | Judge Sean J. McLaughlin |
| v. | |
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, LOCAL UNION 1186, a voluntary unincorporated association, | |
| Defendant/Counterclaim Plaintiff | |
| and INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW, a voluntary unincorporated association, | |
| Counterclaim Plaintiff. | |

<u>**PLAINTIFF/COUNTERCLAIM DEFENDANT, ACCURIDE ERIE L.P.'S
BRIEF IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**</u>

AND NOW, comes the Plaintiff/Counterclaim Defendant, Accuride Erie, L.P. ("Accuride" or the "Company"), by and through its attorneys, Quinn Buseck Leemhuis Toohey and Kroto, Inc., and Ryley Carlock and Applewhite, files the within Brief in Support of its Rule 56 Motion for Summary Judgment, of which the following is a statement.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     INTRODUCTION

This is an action to vacate a labor arbitration award.   The underlying arbitration encompassed disputes between Accuride and the International Union, United Automobile, Aerospace & Agricultural Implement Workers Local 1186 (the "Union") with respect to whether their collective bargaining agreement (the "Agreement") mandated medical coverage for certain employees of Accuride who irrevocably elected to opt out of such benefits, and whether the Union satisfied a mandatory procedural prerequisite by submitting the coverage dispute in a timely manner.   Arbitrator Robert A. Creo concluded that, notwithstanding their elections, the employees became entitled to medical benefits from Accuride when their coverage from their former employer ceased due to the employer's bankruptcy.

The Arbitrator's Award completely disregards the irrevocable nature of the elections pursuant to which employees opted out of Accuride's medical benefits.   It further exceeds the Arbitrator's authority by extending benefits that undisputedly were not negotiated by the parties. In addition, by failing to find the grievance untimely, the Arbitrator violated the contractual mandate that "An arbitrator shall not add to, subtract from, or modify the terms of this Agreement."   The Award does not derive its essence from the Agreement.   Accordingly, it must be vacated.

2

## II.    STATEMENT OF FACTS[1]

### A.    Background Concerning Employees' Medical Coverage Elections

Accuride (previously known as "AKW L.P.") acquired the Erie Plant from Kaiser Aluminum Corporation ("Kaiser") in May of 1997.  SOF ¶ 4.  Pursuant to an agreement between Accuride and the Union, Union-represented Kaiser employees who applied for employment with Accuride were hired to fill startup positions in the Erie Plant.  SOF ¶ 5.  The startup employees were eligible for, among other benefits, medical coverage for active Union represented employees of Accuride.  Participants were required to contribute to the cost of their medical coverage.  SOF ¶ 6.

Some of the Kaiser employees who applied for positions with Accuride were then eligible to retire under certain benefit plans maintained by Kaiser, including a plan that provided fully paid retiree medical benefits.  During negotiations with Accuride for the parties' inaugural collective bargaining agreement in April 1997, the Union proposed that all of these individuals and their dependents should receive their medical benefits from the Kaiser retiree medical plan during their future employment with Accuride, instead of from Accuride's plan for Union represented employees.  SOF ¶ 7.

Instead, the parties eventually agreed to the Company's proposal that provided the Kaiser retirees an opportunity to choose to receive, during their employment with Accuride, either Kaiser retiree medical coverage or coverage under the medical plan for Accuride employees.  Although the parties discussed, during their negotiations, the possibility of allowing employees

---

[1] The facts summarized here are set forth in detail in the accompanying Concise Statement of Facts ("SOF"), and Accuride respectfully refers the Court to that document for a fuller discussion of the facts supporting its Motion.

to change their elections in the future, it was ultimately agreed that the elections would be strictly "irrevocable" in nature.  SOF ¶¶ 8-10.

A ratification meeting summary that the Union leadership presented to employees before the parties' agreement went into effect explained that Kaiser retirees hired by Accuride would be permitted to make a "<u>one-time irrevocable</u> election" (emphasis in original) to receive medical benefits "either" from Kaiser's plan for its retirees "<u>OR</u>" (emphasis in original) from the medical plan for Union represented Accuride employees.  Accordingly, the Union's summary continued, if a retiree elected Kaiser retiree medical coverage, he and his dependents would participate in Kaiser insurance and would not, at any future time, receive medical benefits from Accuride.  SOF ¶ 11.

The parties' agreement became effective May 1, 1997.  It provided, in pertinent part, as follows:

> Startup Kaiser Retirees will be permitted to "opt out" of AKW medical/life insurance by making an *irrevocable, one-time voluntary election*, at the time they retire from Kaiser on or before September 15, 1997, to elect Kaiser retiree medical and life insurance coverage for themselves and any dependents in lieu of any AKW medical and life insurance coverage.  *If these individuals elect Kaiser retiree medical…insurance coverage, they will not be covered at any future time by any AKW medical…insurance.*

SOF ¶ 12 (emphasis added).

Accuride informed eligible employees about their opportunity to make a one-time, irrevocable election to receive medical benefits either through Accuride's plan or Kaiser's retiree medical plan. SOF ¶ 13.  Subsequently many, but not all, eligible Kaiser retirees elected to receive Kaiser retiree medical benefits to the exclusion of coverage under Accuride's plan.  These employees completed election forms which provided, in pertinent part, as follows:

In connection with my Kaiser retirement and my employment at AKW, I hereby exercise a one-time irrevocable election concerning medical…coverage for my dependents and myself as follows:

I Opt Out of AKW Insurance in Favor of Kaiser Retiree Insurance.  I am electing Kaiser retiree medical…coverage for myself and my dependents instead of any AKW medical…insurance coverage.  *I understand this is a one-time election that is permanent and irrevocable.  I understand that my dependents and I will NOT be covered at any future time by any AKW medical…insurance….*

ACKNOWLEDGMENT:  I understand and acknowledge that the above election is being made on a one-time basis and *will remain permanent and irrevocable even if the benefit plans change or if different circumstances at some point result in higher or lower coverage.  I understand that I am responsible for understanding the relevant plans and the permanent irrevocable nature of my election notwithstanding potential future changes or developments.*

SOF ¶ 14 (emphasis in original).

The employees who elected Kaiser retiree medical benefits and irrevocably opted out of medical benefits furnished by Accuride were not covered by any Accuride medical benefits for active employees at any subsequent time.  SOF ¶ 15.

### B.    Arbitrator Gerhart's Award Enforcing An Employee's Election

The Union submitted a grievance pursuant to the parties' then-current agreement on or about February 16, 2001,[2] contending that a Kaiser retiree and his spouse were improperly denied coverage under Accuride's medical plan.  The retiree's spouse previously had been denied coverage under Kaiser's retiree medical plan, leaving her without medical coverage.  Accuride denied the grievance because the employee had irrevocably opted out of any medical benefits furnished by Accuride.  SOF ¶ 18.

Arbitrator Paul Gerhart heard the grievance at a hearing held on January 16, 2003.  At the arbitration hearing, the Union argued, among other things, that the parties' collective bargaining

---

[2] In about August 1998, the parties agreed to extend their 1997 collective bargaining agreement until August 2003.  SOF ¶ 16.

agreement required Accuride to provide medical coverage to all Union represented employees, including Kaiser retirees who had elected Kaiser retiree medical benefits.  SOF ¶ 19.

In an Award dated September 26, 2003, Arbitrator Gerhart concluded that, notwithstanding the Union's argument to the contrary, the employee's irrevocable election to opt out of receiving medical benefits from Accuride unequivocally dictated the denial of coverage:

> Here, there is no dispute that grievant opted out of the AKW insurance coverage and chose to be covered by Kaiser retiree insurance when he retired from Kaiser and moved to AKW employment.  The above Letter unambiguously provides that such individuals "will not be covered at any future time by any AKW medical and life insurance."  When [the] grievant subsequently attempted to enroll in AKW insurance, the Company properly denied him that option pursuant to the Letter of Agreement.

SOF ¶ 20.

Arbitrator Gerhart further concluded that nothing in the parties' agreement authorized him to award Accuride medical coverage to an employee who previously irrevocably opted out of such coverage, even if the employee would be left without any medical benefits:

> At the conclusion of its brief, after noting that Kaiser is in bankruptcy, the Union asks, "If Kaiser is solely responsible for Kaiser retiree health care coverage for those working at AKW because of the 'opting out/opting down' language and if Kaiser is no longer a party to the Collective Bargaining Agreement, who will provide health care coverage for Kaiser retirees working at AKW?  Such is a reasonable question but not one for the arbitrator to answer.  There is nothing in the Agreement that suggests that the parties mutually agreed to put such a question before a grievance arbitrator.

SOF ¶ 21.

Arbitrator Gerhart's award was "final and binding" with respect to the proper interpretation of the parties' agreement.  SOF ¶ 17.

**C.    The Union's Request For Medical Coverage Under The New Agreement For Employees Affected By Kaiser's Bankruptcy**

The parties entered into a shortened and simplified Agreement effective September 1, 2003.  SOF ¶ 22.  During the bargaining process leading up to the Agreement, there were no negotiations or discussions concerning the Gerhart arbitration or the underlying grievance; the Gerhart Award did not issue until late September 2003.  Nor were there any discussions regarding the eligibility of Kaiser retirees who had irrevocably elected to receive Kaiser retiree medical benefits in 1997.  SOF ¶ 23.  The only reference to medical benefits in the Agreement is contained in Article 32.  There, the parties agreed that "eligible employees" would receive medical coverage from Accuride's plan during the term of the Agreement.  SOF ¶ 24.  Nothing in the Agreement provided that Kaiser retirees who formerly irrevocably opted out would somehow be eligible to receive medical benefits provided by Accuride.

After September 1, 2003, the Company did not treat the Kaiser retirees who irrevocably opted out of Accuride's medical coverage as eligible for medical benefits at any time.  Neither the employees nor the Union complained about that fact immediately after September 1, when the Agreement became effective, or after September 26, 2003, when Arbitrator Gerhart's award issued ruling their elections were enforceable and unambiguous.  SOF ¶ 28.

In about April 2004, Accuride learned that Kaiser had initiated a process in bankruptcy court to terminate its post-retirement medical insurance program.[3]  Accuride promptly notified the Union of this development and offered to provide those who had previously elected Kaiser retiree medical benefits with special benefits, despite having no contractual or legal obligation to do so.  SOF ¶¶ 30-32.

---

[3]  Kaiser's retirees were not left without any available benefits.  Accuride also was informed that Kaiser retirees would be able to purchase medical coverage under the Kaiser medical plan for active Kaiser employees.  SOF ¶ 29.

Representatives of Accuride and the Union met on May 13 and 14, 2004, to discuss the Company's proposals to provide special benefits for affected Kaiser retirees. During those meetings, the Union claimed, for the first time, that Accuride was obligated to provide coverage under the Company's medical plan to Kaiser retirees who previously irrevocably opted out of such coverage. The parties failed to reach an agreement. SOF ¶ 33.

### D.    The Union's Grievance

On June 8, 2004, 25 days after the last meeting between the Union and the Company, the Union submitted a grievance demanding that Accuride provide medical coverage to employees who previously elected to receive Kaiser retiree medical benefits. SOF ¶ 34. Accuride denied the grievance at each step of the grievance procedure. The Company responded that nothing in the parties' Agreement altered the eligibility of those employees who had completed irrevocable elections opting out of Accuride's medical plan. The Company's final answer to the grievance stated in pertinent part:

> Employees who signed such "opt out" agreements [in connection with the 1997 startup] have not been eligible for Company provided health and life insurance benefits at any subsequent time. As you know, Arbitrator Gerhart specifically found the "opt out" agreements were enforceable and further determined that employees who signed such agreements, and their dependents, are not eligible for benefits that are offered to other Erie Plant employees. The current Agreement provides no basis for changing the eligibility of those employees who opted out of benefits provided to other active Erie Plant employees many years ago.

SOF ¶ 35.

In addition, Accuride denied the grievance because it violated Article 5 of the Agreement. Specifically, the grievance was untimely because it was not submitted within 14 days of the "occurrence" that gave rise to it. SOF ¶ 36. The parties selected Arbitrator Creo to render a "final" decision with respect to the grievance, but to do so without adding to, subtracting from, or modifying the terms of the Agreement. SOF ¶ 25, 38.

### E.     Arbitrator Creo's Award

An arbitration hearing was held before Arbitrator Creo on January 26, 2005.  The Union requested that the Arbitrator find that Accuride was obligated to extend medical coverage to the "active, current active Accuride employees" who had been excluded as a result of their irrevocable elections to opt out of Accuride medical benefits.  SOF ¶ 39.  With respect to timeliness, the Union conceded that it had been "well aware" that the Kaiser retiree medical coverage would be terminated "well before the filing of the grievance."  Further, the Union conceded that its request for coverage on behalf of active employees had been denied at meetings with the Company in May 2004.  Those meetings occurred at least 25 days prior to the submission of the grievance.  SOF ¶ 40.

Arbitrator Creo ruled that the employees' irrevocable elections in 1997 could not prevent them from receiving medical benefits under the Agreement.  Rather, Arbitrator Creo found that the Agreement somehow incorporated an "underlying assumption" that the Kaiser retirees would have "comparable benefits from a collateral source" during their employment with Accuride. With the termination by Kaiser of its retiree benefit plans, he found, "that is no longer the case." The Arbitrator further ruled that "It is against common sense to refuse benefits to these employees now that they are no longer receiving benefits from a third party that was not privy to the bargaining process."  The Arbitrator concluded:

> The Arbitrator finds that under the Agreement, the Company is not able to deny some employees the benefit of health coverage provided to all other employees. Employees previously obtained benefits from another source due to an opt out they signed with Accuride's predecessor, AKW, based upon an understanding that benefits would continue.  No rational person would have opted out on the assumption that future benefits were at risk or otherwise temporary.

SOF ¶¶ 42-44.

The Arbitrator also found that because the employees' elections to opt out of Company-furnished benefits purportedly were contingent upon their continued receipt of Kaiser retiree benefits, the grievance did not arise until those benefits were terminated on May 31, 2004. Although the parties were "aware that the benefits were of issue and were not included in the bargaining process" prior to that time, the grievance was timely:

> It is this Arbitrator's finding that the Grievance was timely filed due to the Kaiser benefit termination date of May 31, 2004. This is the effective date of the action which led to the harm alleged by the Union. The grievance is timely and arbitrable.

SOF ¶¶ 45-46.

## III. ARGUMENT

Judicial review of a labor arbitration award is limited. Parties who include an arbitration provision in their collective bargaining agreement have chosen to have "disputes concerning constructions of the contract resolved by an arbitrator," not a court. *W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Lin. & Plastic Workers of Am.*, 461 U.S. 757, 764 (1983). However, it is well settled that an arbitrator "is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice." *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960). The guiding principle in an action under Section 301 is that an arbitration award "is legitimate only so long as it draws its essence from the collective bargaining agreement." *Id.*; *see also United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987) ("[T]he arbitrator's award settling a dispute with respect to the interpretation or application of a labor agreement must draw its essence from the contract and cannot simply reflect the arbitrator's own notions of industrial justice."). "When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the

award." *Enterprise Wheel*, 363 U.S. at 597; *see also Pennsylvania Power Co. v. IBEW Local 272*, 276 F.3d 174, 181 (3d Cir. 2001).

While the *essence of the agreement* standard does not authorize this Court to sit as an appellate tribunal, it nevertheless "ha[s] not been relegated to the status of merely offering post-hoc sanction for the actions of [the] arbitrator[]," and is "neither entitled nor encouraged simply to 'rubber stamp' the interpretation[] and decision[] of [the] arbitrator[]." *Matteson v. Ryder Systems, Inc.*, 99 F.3d 108, 113 (3d Cir. 1996). Fundamentally, the Court must ask whether the parties "got what they bargained for, namely an arbitrator who would first provide an interpretation of the contract that was rationally based on the language of the agreement, and second would produce a rational award." *Brentwood Medical Associates v. United Mine Workers of America*, 396 F.3d 237, 242 (3d Cir. 2005). The answer to these questions here, unequivocally, is "no."

### A.    The Award Exceeded The Arbitrator's Authority By Granting Medical Benefits That Were Not Negotiated By The Parties

Article 5.6 of the Agreement expressly provides that "an arbitrator *shall not add to, subtract from, or modify* the terms of this Agreement." (Emphasis added.) An award that contradicts the parties' Agreement and adds provisions that have not been negotiated exceeds the arbitrator's authority, and must be vacated. *See Pennsylvania Power Co.*, 276 F.3d at 179 (vacating an arbitration award because the arbitrator exceeded his powers under the agreement by altering it "in direct violation of [the agreement's] provision that he had no power to do so"); *see also* 9 U.S.C. § 10(a)(4) (providing that an arbitration award must be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made").

The Award at issue in this case held that Accuride impermissibly failed to provide medical benefits, mid-term in the Agreement, for certain Kaiser retirees who irrevocably elected not to receive those benefits when they became Accuride employees in May 1997. The inaugural agreement between Accuride and the Union provided unequivocally that eligible employees would be given the opportunity to make an "*irrevocable, one-time voluntary election*," on behalf of themselves and their dependents, to receive medical benefits from either Kaiser or Accuride. The agreement further provided that employees electing to receive their benefits from Kaiser "*will not be covered at any future time*" by medical benefits furnished by Accuride. Similarly, the elections completed by the employees provided that they were "irrevocable," and the employees specifically acknowledged, in writing, that "*this is a one-time election that is permanent and irrevocable*." Employees who elected to receive medical benefits from Kaiser acknowledged that "*my dependents and I will <u>NOT</u> be covered at any future time by any AKW medical…insurance*" and further agreed their elections would "*remain permanent and irrevocable*" even if the benefit plans or circumstances change in the future. Consistent with their elections, these employees were not covered by any Accuride medical benefits at any subsequent time.

The parties entered into a new Agreement effective September 1, 2003. During the bargaining process leading up to the 2003 Agreement, there were no negotiations or discussions concerning the eligibility of Kaiser retirees who had irrevocably elected to receive Kaiser retiree medical benefits. Nothing in the 2003 Agreement provided that Kaiser retirees who formerly irrevocably opted out would now be eligible to receive medical benefits provided by Accuride. As Arbitrator Creo accurately noted in the Award, medical benefits for these individuals simply "were not included in the bargaining process." The only provision in the 2003 Agreement

pertaining to medical benefits for employees is contained in Article 32.  That Article provides, in pertinent part, that "eligible employees" would receive medical coverage from Accuride during the term of the Agreement.

Arbitrator Creo, however, inserted into the 2003 Agreement an "underlying assumption" that the employees who opted out of Accuride's medical benefits would have "comparable benefits from a collateral source," and therefore Accuride became liable for furnishing medical benefits to them, mid-term in the Agreement, when Kaiser terminated its benefit program in bankruptcy.  This "underlying assumption," however, is made of "whole cloth."  The Arbitrator did not cite any language, provision, or article of the Agreement supporting this assumption, and indeed there is none.  Rather, the Arbitrator created an affirmative grant of benefits to employees who had irrevocably opted out of such benefits based solely on his feeling that "It is against common sense to refuse benefits to these employees now that they are no longer receiving benefits from a third party…."  The Arbitrator also found that the Kaiser retirees' opt out elections themselves supported his conclusion:

> Employees previously obtained benefits from another source due to an opt out they signed with Accuride's predecessor, AKW, based upon an understanding that benefits would continue.  No rational person would have opted out on the assumption that future benefits were at risk or otherwise temporary.

The Arbitrator's assumption directly conflicts with the irrevocable nature of the employees' elections.  The word "irrevocable" has a commonly accepted meaning that is plain and unequivocal, "[t]hat which cannot be revoked or recalled."  BLACK'S LAW DICTIONARY 830 (6th ed. 1990); *see also Comm'r of Internal Revenue v. Strong Mfg. Co.*, 124 F.2d 360, 363 (6th Cir. 1941) ("'[I]rrevocable' is defined as incapable of being recalled or revoked.") (internal quotation and citation omitted), *rev'd on other grounds by Helvering v. Ohio Leather Co.*, 317 U.S. 102 (1942).  During their 1997 negotiations the parties discussed and rejected the possibility

of allowing employees to modify their elections in the future, agreeing instead that the Kaiser retirees would have to make "irrevocable" elections to receive medical benefits from Kaiser's plan for retirees or from Accuride.  The Arbitrator's contrary determination does violence to the parties' agreement, and threatens lasting damage to the parties' bargaining relationship.  After all, if the parties cannot rely on their agreement that a benefit or election will be "irrevocable," their willingness and ability to agree on other items whose effectiveness clearly extends beyond the term of a single agreement will be fundamentally undermined.

The Award also utterly lacks any foundation for granting benefits to the Kaiser retirees who irrevocably opted out of Accuride medical benefits.  The record before Arbitrator Creo demonstrated that elections were made by Kaiser retirees; that the elections by their terms, and as a result of the parties' agreement, were irrevocable in nature; and that during negotiations in 2003 for their new Agreement the parties did not even discuss the Kaiser retirees' eligibility for medical benefits, much less agree to an affirmative grant of eligibility to them.  In short, there is simply nothing in the record supporting the Arbitrator's determination to grant medical benefits for these employees.  *Newark Morning Ledger Co. v. Newark Typo. Union*, 797 F.2d 162 (3d Cir. 1986) (when no rational basis exists for the award, it must be vacated); *see also United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 380 (3d Cir. 1995) (arbitration award may be overturned where the record before the arbitrator reveals no support whatsoever for the arbitrator's determination).

In *Pennsylvania Power Co.*, 276 F.3d at 174, the court vacated an arbitration award under somewhat similar circumstances, on the grounds that the arbitrator exceeded the scope of the applicable arbitration provision and his award failed to draw its essence from the parties' collective bargaining agreement.

14

There, the employer offered to provide certain voluntary retirement benefits to its employees on the condition that the employees cooperate with management's efforts to improve efficiency. *See id.* at 176. Although the arbitrator found that such cooperation had not been forthcoming, he nevertheless held that a general nondiscrimination provision in the parties' agreement obligated the company to provide the voluntary benefits on the same terms as the company had offered them to supervisors. *See id.* at 177. While the district court confirmed the arbitrator's award, the Third Circuit found that the arbitrator "exceeded his powers" when he "wrote into the contract that the [bargaining unit employees] shall have the same benefits as the supervisory employees." *Id.* at 179. According to the court:

> What the arbitrator has wrought here not only alters and amends the collective bargaining agreement but far exceeds the permissible powers of the arbitrator. . . . The award amounts to nothing more than the arbitrator's personal brand of justice with which we do not agree.

*Id.* at 181.

Like the arbitrator in *Pennsylvania Power Co.*, Arbitrator Creo impermissibly modified the parties' Agreement by adding "a provision obligating the Company to pay its Union employees…benefits to which indisputably it never agreed and as to which the Union employees…were not entitled." *Id.* at 181. Arbitrator Creo exceeded the scope of his authority in doing so. Accordingly, the Award must be vacated.

**B.    The Arbitrator Exceeded His Authority By Failing To Apply The Timeliness Provisions In The Grievance Procedure To The Parties' Contractual Dispute**

"An arbitrator's power is both derived from, and limited by, the collective bargaining agreement." *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 744 (1981); *see also Major League Umpires Ass'n v. Am. League of Prof'l Baseball Clubs*, 357 F.3d 272, 280 (3d Cir. 2004), *cert. denied*, 125 S.Ct. 861 (2005) ("[A]n arbitrator may not venture beyond the

bounds of his or her authority," which is defined by the agreement) (citation omitted); *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1126 (3d Cir. 1969) (the arbitrator's "zone of action" is limited to the "four corners of the collective bargaining agreement").   Thus, when a collective bargaining agreement requires compliance with specific grievance procedures as a prerequisite to arbitration, an arbitrator must either confirm compliance or find evidence excusing compliance; absent such a finding, a reviewing court must vacate the award.  *See NF&M Corp. v. United Steelworkers of America*, 524 F.2d 756, 760 (3d Cir. 1975) ("If the arbitrator here had no evidence before him to support a determination either of compliance with the contractual grievance procedures or of excuse from compliance, his award on the timeliness issue would have no rational basis in the agreement and must be vacated.").

Article 5 of the parties' Agreement defines a grievance as "a claim that a term or condition of employment set forth in this Agreement has been violated."   Article 5 further requires that a grievance must be submitted within 14 calendar days of the "occurrence" giving rise to it.  The timely submission of contractual disputes is so fundamental to the process of resolving grievances that Article 5, while permitting written extensions of time for the appeal of grievances through other steps of the grievance procedure, does not similarly authorize extensions with respect to the submission of a grievance.  Article 5.8 provides that "the time limits in this Article, other than the time for submitting a Step 1 grievance, may be extended by a written, signed agreement."  SOF ¶ 25.

The grievance in this case alleges that the Company violated the Agreement by failing to provide medical benefits for employees who elected not to receive them.  The only provision in the parties' Agreement pertaining to the grant of medical benefits is Article 32, which confers medical benefits on "eligible" employees.  Just as importantly, the timeliness of the grievance for

purposes of Article 5 necessarily depends on the "occurrence" of the contractual violation.  If, as the Union argued at the arbitration hearing, Article 32 conferred medical benefits on the Kaiser retirees who previously opted out, then their eligibility necessarily began when the Agreement went into effect on September 1, 2003.[4]  Because the employees did not receive medical benefits from the Company, the occurrence giving rise to the grievance (i.e. the Company's alleged failure to furnish benefits to eligible employees) took place on September 1, 2003.  All of the facts necessary to determine the Union's grievance occurred by that time.

The Union did not submit its grievance challenging the Company's failure to extend benefits to the Kaiser retirees within 14 calendar days of the date they allegedly became eligible for such benefits, as required by Article 5.  Significantly, at the hearing before Arbitrator Creo the Union's representative conceded that the Union was "well aware" of the alleged dispute here, "well before" it submitted the grievance.  Indeed, the Union had expressed its concern that a Kaiser bankruptcy would leave employees who elected Kaiser retiree medical benefits without coverage at the Gerhart arbitration hearing in January 2003.  The issue was raised in September 2003 when Arbitrator Gerhart released his award, finding a Kaiser retiree and his spouse ineligible for medical benefits because of his irrevocable election to receive coverage from Kaiser.  Later, in early April 2004, the Company specifically informed the Union that Kaiser retirees who had elected to receive Kaiser retiree medical benefits would be affected by Kaiser's action in bankruptcy, and that the Company had no legal or contractual obligation to provide any medical benefits to them.  The parties later met on May 13 and 14, 2004, to discuss the Company's proposals to provide special benefits for the affected employees.  At the meetings,

---

[4]  Indeed, the Union's Vice President and its sole witness at the arbitration hearing asserted this is precisely when these employees' eligibility for medical benefits began.  SOF ¶ 39.

the Company rejected the Union's request to include the Kaiser retirees in the medical plan for active employees.

Nevertheless, Arbitrator Creo concluded that the grievance was timely submitted on June 8, 2004. Without reciting the specific contractual language at issue,[5] he ruled the grievance was timely submitted within 14 days after Kaiser, with the approval of a federal bankruptcy court, terminated its medical plans for retirees effective May 31, 2004. This, he concluded, was the "effective date of the action which led to the harm alleged by the Union."

The Arbitrator's determination violates Article 5 by purportedly calculating the timeliness of the Union's grievance by reference to the conduct of Kaiser, a non-party to the Agreement. The contractual grievance procedure simply does not encompass claims of "harm alleged by the Union" caused by third parties. Rather, Article 5 covers only those claims "that a term or condition of employment set forth in th[e] Agreement has been violated." The Union and Accuride being the sole parties to the Agreement, the Union's submission of a grievance is limited to claims of a contract violation *by Accuride*. The only cognizable dispute under Article 5 is whether the Agreement required Accuride to furnish Kaiser retirees with medical benefits effective September 1, 2003. September 1, 2003, necessarily is the date of the occurrence giving rise to the grievance.

Perhaps recognizing this, Arbitrator Creo devoted a substantial portion of his reasoning in the Award to discussing his "underlying assumption" that the Kaiser retirees who opted out of Accuride's medical benefits would have "comparable benefits from a collateral source." Because "no rational person" could have executed an election that placed future benefits in jeopardy, the elections could not be considered irrevocable but instead simply conditional in

---

[5]   Arbitrator Creo paraphrased Article 5 by saying that under the Agreement, "a grievance must be filed within 14 days of the event that gives rise to the grievance." SOF ¶ 45.

nature.  As a result, according to Arbitrator Creo, the employees did not become entitled to medical benefits from Accuride until the benefits from Kaiser's retiree plan ended.

The Arbitrator's assumption, based on alleged "common sense" and speculation about what he believed a "rational" Kaiser retiree might have desired, does not derive its essence from the Agreement.  *See Citgo Asphalt Refining Co. v. Paper, Allied-Industrial, Chemical & Energy Workers*, 385 F.3d 809, 817 (3d Cir. 2004) ("[A]n arbitrator's opinion and award based on general considerations of fairness and equity as opposed to the exact terms of the CBA, fails to derive its essence from the CBA.") (internal quotation marks and citation omitted); *Appalachian Reg'l Healthcare v. United Steelworkers of Am.*, 245 F.3d 601, 606 (6th Cir.), *cert denied*, 534 U.S. 952 (2001) (vacating an arbitration award that "imports notions not found in the agreement itself."); *Enterprise Wheel*, 363 U.S. at 597 (cautioning that the *essence of the agreement* standard prohibits a labor arbitrator from "dispens[ing] his own brand of industrial justice").  In fact, his conclusion flies directly in the face of the parties' plainly stated intentions.  The Arbitrator simply is not authorized to manipulate and subvert the timeliness requirement in the grievance procedure by substituting his judgment for the parties' concerning the effectiveness of the employees' irrevocable elections.

The prompt resolution of labor disputes is the hallmark and the overriding purpose of labor arbitration.  In recognition of that, the Agreement requires prompt submission of grievances within 14 calendar days.  The Union failed to comply with that requirement.  Its delay in submitting the grievance should have resulted in its dismissal.  *See, e.g., Wyandot, Inc. v. Local 227, United Food & Commercial Workers Union*, 205 F.3d 922 (6th Cir.), *cert. denied*, 531 U.S. 820 (2000) (vacating arbitration award finding contractual deadline for grievance inapplicable); *El Mundo Broadcasting Corp. v. United Steelworkers of Am.*, 116 F.3d 7 (1st Cir.

19

1997) (vacating arbitration award that erroneously applied continuing violation theory to circumvent contractual timeliness requirements); *Veterans Administration*, 82 Lab. Arb. (BNA) 575, 580 (1984) (Rocha, Jr., Arb.) ("Since the Union did not successfully carry the burden of establishing the fact that the grievance was presented within the…contractually required period…the Arbitrator is without authority to make rulings on the merits of the controversy.").

Arbitrator Creo's Award purports to compel Accuride to undertake obligations that are foreign to the Agreement, namely, to provide a remedy for untimely grievances.  In so doing, Arbitrator Creo effectively disregarded Article 5 of the Agreement.  *See Major League Umpires Ass'n,* 357 F.3d at 280 ("[A]n award may be vacated if the arbitrator demonstrates manifest disregard for the CBA."); *Newark Morning Ledger Co. v. Newark Typographical Union Local 103*, 797 F.2d 162, 165 (3d Cir. 1986) ("[I]n that rarest case of manifest disregard of the [collective bargaining] agreement, the [court] must draw the line.").  The Award does not derive its essence from the Agreement.  Accordingly, it must be vacated. *See Pennsylvania Power Co.*, 276 F.3d at 179 (vacating an arbitration award because the arbitrator exceeded his authority by altering the parties' agreement "in direct violation of [the agreement's] provision that he had no power to do so.").

### C.    Arbitrator Creo's Award Conflicts With The Arbitration Award Issued By Arbitrator Gerhart, Which Was Final And Binding

Whether a prior arbitration award should be given binding effect under a collective bargaining agreement ordinarily is a matter of contract interpretation to be determined by an arbitrator.  *See Metropolitan Edison Co. v. NLRB*, 663 F.2d 478, 483 (3d Cir. 1981), *aff'd*, 460 U.S. 693 (1983); *W.R. Grace & Co.*, 461 U.S. at 764 (second arbitrator was not bound by a prior arbitrator's decision inasmuch as the predecessor exceeded his authority, depriving his award of "precedential force" under the agreement).  Thus, where a collective bargaining agreement

provides that arbitrators' decisions shall be "final and binding," a subsequent arbitrator may be bound by a prior arbitration award. As the Third Circuit has stated, "a clause stating that a decision of an arbitrator is 'final and binding' is no doubt intended to establish a principle similar to that of res judicata, and to bar reconsideration of the disputes fully decided on their merits." *Local 616, Int'l Un. Of Elec., Radio and Mach. Workers v. Byrd Plastics*, 428 F.2d 23, 26 (3d Cir. 1970); *see also Burke v. Latrobe Steel Co.*, 775 F.2d 88, 91 (3d Cir. 1985) (court precluded relitigation of issues in federal action that were decided by arbitrator).

Arbitrator Creo's Award failed to give effect to the prior award by Arbitrator Gerhart, notwithstanding the contractual mandate that Arbitrator Gerhart's award was a "final and binding" determination with respect to the disputed medical elections. Arbitrator Gerhart concluded that the Kaiser retirees' elections were permanent and irrevocable, and therefore Kaiser's failure to furnish coverage to one of the retiree's dependents did not trigger any obligation by the Company to extend medical coverage. Arbitrator Creo, reviewing the same elections that were completed under the same agreement between the same parties, directly contradicted that conclusion, finding that the elections were not irrevocable but only conditional in nature. Because "no rational person" could have executed an irrevocable election, according to Arbitrator Creo, the employees' loss of Kaiser benefits as a result of Kaiser's bankruptcy triggered Accuride's duty to cover them.

Under somewhat similar circumstances, the court in *Trailways v. Trailways, Inc. Joint Council*, 807 F.2d 1416, 1425 (8th Cir. 1986), was asked to vacate the second of two arbitration awards. There, garage employees who worked for different operating companies filed similar but separate grievances stemming from the companies' refusal to allow the employees to wear beards. The first arbitrator found for the company, reasoning that the no-beards policy was

reasonable under the applicable agreement.  The second arbitrator refused to follow this first decision, stating that it reflected only a "minority view" of the contract language, and found for the union.  The court vacated the second award stating it did not draw its essence from the agreement because the second arbitrator merely copied from a prior decision he had issued in an unrelated case.  Although not the basis of the decision, the court also expressed grave concern about the second arbitrator's treatment of the first arbitrator's decision and stated:

> [T]he [first] arbitration involved the same company, the same union, essentially the same issue and interpretation of the same contract.  If an arbitrator does not accord any precedential effect to a prior award in a case like this, or at least explain the reasons for refusing to do so, it is questionable when, if ever, a "final and binding" determination will evolve from the arbitration process.

*Id.* at 1425-26; *see also* Elkouri & Elkouri, How Arbitration Works 426 (BNA 4th ed. 1985) ("[W]here a prior decision involves the interpretation of the identical contract provision, between the same company and union, every principle of common sense, policy, and labor relations demands that it stand until the parties annul it by a new contract provision.").

In this case, Arbitrator Gerhart's conclusion that the Kaiser retirees' irrevocable elections were binding on them has not been supplanted by any negotiations by the parties.  There is simply no provision in the Agreement, and no support in the factual record before Arbitrator Creo, for reaching a different result.  Arbitrator Creo articulated no reason for reaching a different conclusion than the one reached by Arbitrator Gerhart, and there is none.  Arbitrator Creo's belief that a "rational" Kaiser retiree would not have irrevocably opted out of Accuride medical benefits simply, and without justification, displaces Arbitrator Gerhart's application of the plain language of the elections.  In so doing, Arbitrator Creo disregarded the "final and binding" nature of Arbitrator Gerhart's award.  For this additional reason, his Award must be vacated.

## IV.    CONCLUSION

The availability of medical coverage for affected Kaiser retirees certainly is a valid concern, one raised by the Company in April 2004 to be addressed with the Union at the bargaining table.  However, it emphatically is not an issue the parties agreed to submit to a grievance arbitrator to impose by arbitral fiat.  Arbitrator Creo's function simply was to determine the parties' rights and obligations within the confines of their Agreement.  He did not do so.  Worse yet, his effort to undo the unequivocal results of the parties' negotiations has the potential to irreparably damage the parties' bargaining relationship.

In addition, this Court should not countenance the Arbitrator's purported effort to enforce an alleged contractual right to medical benefits by employees who irrevocably opted out of those benefits, while ignoring the unequivocal requirements of the grievance procedure that are part and parcel of the very same Agreement.  The Arbitrator's refusal to dismiss the grievance based on the Union's failure to submit it within 14 days of the time employees allegedly became eligible for medical benefits flies in the face of Article 5.  The Award does not derive its essence from the Agreement for that independent reason.  It must be vacated.

For all of the foregoing reasons, Accuride respectfully requests that summary judgment be entered in its favor and that the Court vacate Arbitrator Creo's Award dated April 26, 2005.

DATED this 10th day of February, 2006.

QUINN, BUSECK, LEEMHUIS, TOOHEY & KROTO, INC.

By_s/ Arthur Martinucci_____
    Arthur Martinucci
    2222 W. Grandview Blvd.
    Erie, PA  16506

RYLEY CARLOCK & APPLEWHITE

By_s/ Frederick C. Miner_____
    Frederick C. Miner
    Andrea G. Lisenbee
    One N. Central Ave., Ste. 1200
    Phoenix, AZ  85004-4417

COUNSEL FOR ACCURIDE ERIE, L.P.