**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ACCURIDE ERIE L.P., a limited partnership, | Case No. 05-CV-169 Erie |
| Plaintiff/Counterclaim Defendant, | Judge Sean J. McLaughlin |
| v. | |
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, LOCAL UNION 1186, a voluntary unincorporated association, | |
| Defendant/Counterclaim Plaintiff | |
| and INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW, a voluntary unincorporated association, | |
| Counterclaim Plaintiff. | |

**PLAINTIFF/COUNTERCLAIM DEFENDANT, ACCURIDE ERIE L.P.'S CONCISE STATEMENT OF FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56.1 of the Local Rules of Court, Plaintiff/Counterclaim Defendant Accuride Erie L.P. ("Accuride" or the "Company") hereby files its Concise Statement of Facts in Support of its Motion for Summary Judgment.

INTRODUCTION

1.      Accuride is a limited partnership authorized to conduct business in the State of Pennsylvania pursuant to Pennsylvania law and is an "employer" in an industry affecting commerce within the meaning of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 152(2). Accuride operates a facility at 1015 E. 12th St., Erie, Pennsylvania (the "Erie Plant"), at

which it is engaged in the manufacture of aluminum wheels.  Complaint ¶ 2; First Amended Answer ("Answer") ¶ 2.

2. The International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, Local Union 1186 (the "Union") is a voluntary unincorporated association commonly known as a labor union, and is a "labor organization" representing employees in an industry affecting commerce within the meaning of the LMRA, 29 U.S.C. § 152(5).  At all material times, the Union has been the exclusive representative for the purpose of collective bargaining with respect to rates of pay, wages, hours and other terms and conditions of employment for a unit of hourly production and maintenance employees of Accuride at the Erie Plant (the "Bargaining Unit").  Complaint ¶ 3; Answer ¶ 3.

3. This is an action to vacate an arbitration award under Section 301 of the LMRA.  Complaint ¶ 1; Answer ¶ 1.  The material facts are drawn from the record before the arbitrator, including the exhibits admitted and the transcript of the arbitration hearing, as well as the Award.  All documents were attached to Accuride Erie, L.P.'s Initial Rule 26(a)(1) Disclosure Statement.  Hereinafter, references to Joint Exhibits admitted at the hearing are referred to as "Jt. Exh."; Company Exhibits admitted at the hearing are referred to as "Co. Exh."; and the transcript of the hearing is referred to as "Tr."

ACCURIDE'S ACQUISITION OF THE ERIE PLANT

4. Accuride acquired the Erie Plant from Kaiser Aluminum Corporation ("Kaiser") in May of 1997.  At the time of the acquisition Accuride was known as "AKW L.P." Tr. 11-13; Accuride Erie, L.P.'s Appendix ("App.") 026-028.  Accuride was a limited partnership owned by Kaiser and Accuride Corporation.  Tr. 12; App. 027.  In 1999, Accuride

2

Corporation acquired all of the interests in the limited partnership, and the name changed to Accuride Erie L.P. There has been no change in the Company's legal status. Tr. 13; App. 028.

   5. Prior to May 1, 1997, the Union represented the hourly employees of Kaiser who were then working at the Erie Plant. Pursuant to an Agreement Concerning Transitional Issues between Accuride and the Union, Union-represented Kaiser employees at the Erie Plant who applied for employment with Accuride were hired to fill startup positions in the Bargaining Unit. Tr. 14-15; Jt. Exh. 4; Co. Exh. 1; App. 029-030, 107-114, 118-120.

BACKGROUND CONCERNING ELECTION OF MEDICAL BENEFITS

   6. As a general rule, at the time of being hired by Accuride, employees and their eligible dependents were enrolled in a group medical plan for active Bargaining Unit employees. The plan required, among other things, that employees make regular contributions to the cost of their coverage. Employees whose dependents were covered by another medical plan were permitted to "opt down" to single coverage. Generally speaking, employees were not permitted to "opt out" of coverage for themselves under the plan. Accuride required active Bargaining Unit employees to be covered by its group medical plan. Jt. Exh. 4; App. 113-115.

   7. Some of the Kaiser employees who applied for Bargaining Unit positions were then eligible to retire under certain benefit plans maintained by Kaiser, including a plan that provided fully paid retiree medical benefits. During negotiations with Accuride for an initial collective bargaining agreement in April 1997, the Union proposed that all of these individuals and their dependents should receive their medical benefits from the Kaiser retiree medical plan during their future employment with Accuride, instead of from Accuride's plan for Bargaining Unit employees. Tr. 18-19; Co. Exh. 2; App. 032-033, 121-124.

8. Accuride responded by proposing that those startup employees who were eligible for retiree medical benefits from Kaiser be given an opportunity to choose to receive, during their employment with Accuride, either Kaiser retiree medical coverage or coverage under the medical plan for Accuride's active Bargaining Unit employees. These employees could choose to make a "one-time voluntary election" to opt out of the medical plan for Bargaining Unit employees on behalf of themselves and their dependents. The election, once made, would be "irrevocable." The Company's proposal provided that "If these individuals elect Kaiser retiree medical…coverage, they will not be covered at any future time by any AKW medical…insurance." Co. Exh. 2; Tr. 17-20; App. 031-034, 121-124.

9. The Union responded that the proposed election should not be irrevocable, but revocable and changeable in the future. Accuride rejected the Union's proposal in this respect, its representative explaining in pertinent part as follows:

> Joe [the UAW's International Representative] asked whether Kaiser retirees who work for AKW can elect Kaiser retiree insurance with an additional option of changing their election in the future (i.e., whether individuals electing Kaiser retiree insurance can return to AKW coverage at some future point while they are working at AKW). <u>This additional option would not be available, and the Kaiser retirees who work for AKW would have to elect Kaiser retiree insurance coverage, on the one hand, or elect AKW coverage, on the other hand, as a one-time irrevocable decision.</u>

Tr. 21; Co. Exh. 3 (emphasis added); App. 035, 125-126.

10. Bargaining committees for Accuride and the Union reached a tentative agreement on the subject of a one-time, irrevocable election by Kaiser retirees. Tr. 22; App. 036.

11. In a ratification meeting summary that the Union leadership presented to employees, the tentative agreement was described in pertinent part as follows:

4

> **Agreement –**
>
> (1) Kaiser retirees hired by AKW as startup/substitute startup employees, who…
> (2) Retire from Kaiser by September 15, 1997…
> (3) Can make a <u>one-time irrevocable</u> election – at time of retirement from Kaiser – to elect either Kaiser retiree medical/life insurance <u>OR</u> AKW medical/life insurance (election applies to themselves and dependents).
> (4) Resulting treatment of medical/life insurance by Kaiser or AKW varies:
>   a. <u>Electing Kaiser Retiree Coverage</u>. If the retiree elects Kaiser retiree insurance for themselves and dependents, they will participate in Kaiser insurance and will not have future AKW insurance.

Tr. 22-23; Co. Exh. 4 (emphasis in original); App. 036-037, 130.

12. The initial collective bargaining agreement between Accuride and the Union became effective May 1, 1997. The agreement included a Letter of Agreement concerning "Opting Out/Opting Down Issues and AKW/Kaiser Insurance" (the "Opt Out Agreement") that provided, in pertinent part, as follows:

> Startup Kaiser Retirees will be permitted to "opt out" of AKW medical/life insurance by making an irrevocable, one-time voluntary election, at the time they retire from Kaiser on or before September 15, 1997, to elect Kaiser retiree medical and life insurance coverage for themselves and any dependents in lieu of any AKW medical and life insurance coverage. <u>If these individuals elect Kaiser retiree medical…insurance coverage, they will not be covered at any future time by any AKW medical…insurance.</u>

Jt. Exh. 4 (emphasis added); App. 115.

13. The Company provided additional information to employees about the election of medical benefits under the Opt Out Agreement in a memorandum that was distributed on about May 9, 1997. In pertinent part, the memorandum informed employees as follows:

5

> <u>Kaiser Retiree Medical/Life Insurance and One-Time AKW "Opting Out" Election</u>
>
> If you are an eligible AKW startup (or substitute startup) employee who retires by September 15, 1997 under the Kaiser hourly pension plan, the following provisions govern your health and life insurance options for yourself and your dependents:
>
> <u>Opting Out of AKW Insurance in Favor of Kaiser Retiree Insurance</u>.  If you satisfy the above requirements, you will be permitted to "opt out" of AKW medical/life insurance by making an <u>irrevocable, one-time</u> voluntary election at the time you retire from Kaiser on or before September 15, 1997.  If you exercise this option, you will be electing Kaiser retiree medical and life insurance coverage for yourself and any dependents instead of any AKW medical and life insurance coverage.  *You must understand this option will be permanent and irrevocable.  If you elect Kaiser retiree medical and life insurance coverage, you and your dependents will not be covered at any future time by any AKW medical and life insurance....*
>
> <u>IMPORTANT NOTE</u>:  Any election that you make *will remain permanent and irrevocable even if the benefit plans change or if different circumstances at some point result in higher or lower coverage....When you decide to make any election, you are responsible for understanding the relevant plans and the permanent irrevocable nature of your election notwithstanding potential future changes or developments.*

Tr. 23-25; Co. Exh. 5 (emphasis in original); App. 037-039, 131-132.

      14.    Subsequently, the Bargaining Unit employees who retired from Kaiser before September 15, 1997, elected either to receive Kaiser retiree medical benefits or medical benefits for active Accuride employees during their employment with Accuride.  Many Kaiser retirees, but not all, elected to receive the Kaiser retiree medical benefits to the exclusion of the Bargaining Unit plan.  Tr. 25-26; App. 039-040.  The election form completed by these employees provided in pertinent part as follows:

> In connection with my Kaiser retirement and my employment at AKW, I hereby exercise a one-time irrevocable election

6

concerning medical…coverage for my dependents and myself as follows:

**I Opt Out of AKW Insurance in Favor of Kaiser Retiree Insurance**. I am electing Kaiser retiree medical…coverage for myself and my dependents instead of any AKW medical…insurance coverage. *I understand this is a one-time election that is permanent and irrevocable. I understand that my dependents and I will NOT be covered at any future time by any AKW medical...insurance….*

**ACKNOWLEDGMENT**: I understand and acknowledge that the above election is being made on a one-time basis and *will remain permanent and irrevocable even if the benefit plans change or if different circumstances at some point result in higher or lower coverage. I understand that I am responsible for understanding the relevant plans and the permanent irrevocable nature of my election notwithstanding potential future changes or developments.*

Co. Exh. 5 (emphasis in original); App. 133.

15. The Kaiser retirees who elected to receive medical coverage through Accuride's plan for Bargaining Unit employees participated in that coverage during their employment with Accuride. Tr. 26; App. 040. The Bargaining Unit employees who elected Kaiser retiree medical benefits and irrevocably opted out of medical benefits furnished by Accuride for its active employees were not covered by any Accuride medical benefits for active employees at any subsequent time. Tr. 27, 56; App. 041, 052.

ARBITRATOR GERHART'S AWARD ENFORCING AN EMPLOYEE'S ELECTION

16. The parties extended their May 1997 collective bargaining agreement in an agreement dated August 18, 1998. Jt. Exh. 4; Tr. 34; App. 045, 096. The agreement subsequently continued in effect by its terms through August 2003. Jt. Exh. 4; App. 105-106.

17. The parties' agreement included a grievance procedure and an arbitration procedure. The agreement provided that the arbitrator's decision with respect to a grievance is "final and binding." Jt. Exh. 4; App. 102.

18.     The Union submitted a grievance pursuant to the parties' agreement on or about February 16, 2001, contending that a Kaiser retiree and his new spouse were improperly denied medical coverage under the medical plan for active Bargaining Unit employees. The retiree's spouse previously had been denied coverage under Kaiser's retiree medical plan, leaving her without coverage. Accuride denied the grievance because the coverage decision was the result of the employee's election to receive Kaiser retiree medical benefits and to irrevocably opt out of any medical benefits furnished by Accuride under the terms of the Opt Out Agreement. Tr. 27-28; Co. Exh. 6; App. 041-042, 135-137.

19.     The parties processed the dispute through the contractual grievance procedure, and appointed Arbitrator Paul Gerhart to issue a final and binding decision. Arbitrator Gerhart heard the grievance at a hearing held on January 16, 2003. At the arbitration hearing, the Union argued, among other things, that the purpose of the Opt Out Agreement was to prevent one of the original owners of the limited partnership, Kaiser, from paying for duplicative medical coverage for Kaiser retirees who went to work in the Bargaining Unit. The Union argued that when Accuride Corporation acquired all of the interests in the limited partnership, the purpose of the Opt Out Agreement disappeared, and therefore the elections that were made under it should not be enforced. Finally, the Union alleged that because Kaiser was then in bankruptcy, enforcing the opt out elections could prevent the Kaiser retirees from having any medical coverage even during their employment with Accuride. Tr. 28-29; Co. Exh. 6; App. 042-043, 141-148.

20.     Arbitrator Gerhart issued an Award dated September 26, 2003, denying the grievance. Arbitrator Gerhart first reasoned that Accuride, initially known as AKW, was an independent legal entity and that the acquisition of interests in it by Accuride Corporation did not

alter the parties' contractual obligations: "[I]t is plain that the Company party to the Agreement has not changed at all since the initial bargaining agreement was reached in 1997." Arbitrator Gerhart then concluded that while the Union's understanding of the purpose for the Opt Out Agreement might have changed, the terms of the agreement clearly and unequivocally dictated the denial of coverage:

> Here, there is no dispute that grievant opted out of the AKW insurance coverage and chose to be covered by Kaiser retiree insurance when he retired from Kaiser and moved to AKW employment. The above Letter unambiguously provides that such individuals "will not be covered at any future time by any AKW medical and life insurance." When [the] grievant subsequently attempted to enroll in AKW insurance, the Company properly denied him that option pursuant to the Letter of Agreement.

Co. Exh. 6; Tr. 28-29; App. 042-043, 156-162.

21.     Arbitrator Gerhart also concluded that nothing in the parties' agreement authorized him to award medical coverage to an employee who previously elected to opt out of such coverage:

> At the conclusion of its brief, after noting that Kaiser is in bankruptcy, the Union asks, "If Kaiser is solely responsible for Kaiser retiree health care coverage for those working at AKW because of the 'opting out/opting down' language and if Kaiser is no longer a party to the Collective Bargaining Agreement, who will provide health care coverage for Kaiser retirees working at AKW? Such is a reasonable question but not one for the arbitrator to answer. There is nothing in the Agreement that suggests that the parties mutually agreed to put such a question before a grievance arbitrator.

Co. Exh. 6; Tr. 29; App. 043, 161.

THE PARTIES' AGREEMENT EFFECTIVE SEPTEMBER 1, 2003

22.     Negotiations for a new agreement to succeed the August 1998 agreement occurred in the summer of 2003, and the new Agreement was achieved effective September 1,

9

2003. The parties agreed to a number of changes in the Agreement. By comparison to the August 1998 agreement, which was roughly 129 pages in length, the 2003 Agreement was only about 27 pages long. A number of provisions in the August 1998 agreement were not included in the 2003 Agreement. Among these were the Agreement Concerning Transitional Issues and the Opt Out Agreement. Jt Exhs. 1, 4; App. 067-080, 096-117.

23. During the bargaining process leading to achievement of the Agreement, there were no discussions of the Gerhart arbitration; Arbitrator Gerhart's Award did not issue until late September 2003. Furthermore, there were no discussions or negotiations concerning the eligibility for medical coverage of any Bargaining Unit employee who had irrevocably elected to receive Kaiser retiree medical benefits in 1997. Tr. 64; App. 056.

24. Article 32, entitled "Benefits," is the only provision in the Agreement that mentions medical benefits. In pertinent part, Article 32 provides that the Company will provide "eligible employees" with medical benefits. Article 32 further provides that "the specific terms" of the benefits are set forth in the "benefit plans and the insurance contract," which are "the controlling documents" with respect to benefits. In addition, Article 32 states that "disputes concerning benefit claims will be resolved by the claim procedures of the respective benefit plans or the insurance contract." Jt. Exh. 1; App. 076.

25. Article 5 of the Agreement contains a comprehensive, three-step grievance procedure for the resolution of disputes. A grievance is defined as "a claim that a term or condition of employment set forth in this Agreement has been violated." Among other requirements, Article 5.2 of the Agreement provides that a grievance must be submitted at Step 1 of the procedure within 14 calendar days of the occurrence giving rise to the grievance. Article 5.8 provides that "the time limits in this Article, other than the time for submitting a Step 1

grievance, may be extended by a written, signed agreement." Article 5 also provides for the arbitration of grievances. Article 5.6 provides that "an arbitrator shall not add to, subtract from, or modify the terms of this Agreement." Article 5.6 also provides that "the decision of the arbitrator shall be final." Jt. Exh. 1; App. 073-075.

26. At the conclusion of the 2003 anniversary negotiations, Accuride and the Union also entered into a Memorandum of Settlement ("MOS"). The MOS included a number of benefits provisions, including provisions concerning medical, pension and savings benefits, among others. Paragraph 14 of the MOS provided that "So long as 75% of eligible employees have some medical coverage, and 50% of that group are covered by one of the plans referred to in paragraph 11 [of the MOS], employees who have some other medical plan coverage can opt out of coverage under the plans referred to in paragraph 11." Jt. Exh. 3; App. 092. Kaiser retirees who elected Kaiser retiree medical coverage were excluded from the group of "eligible employees" for purposes of meeting the minimum participation requirements under paragraph 14 of the MOS. Tr. 36-39; App. 046-049.

27. During the 2003 negotiations, the parties agreed to include in the MOS a provision concerning transitional issues, specifically a provision from the 1997 agreement that credited years of service with Kaiser for purposes of calculating an employee's seniority for certain purposes. Tr. 53-54; App. 050-051. In so doing, the parties also acknowledged that most of the provisions of the Agreement Concerning Transitional Issues were no longer relevant. The MOS provided in pertinent part as follows:

> Transitional Issues
>
> 22. In 1997, AKW and the Union entered into an Agreement Concerning Transitional Issues to address certain issues pertaining to the commencement of AKW operations. Most of the provisions of that Transition Agreement concerned events

11

    that took place at the time of the commencement of the operations. A few provisions may have some continuing effect and, therefore, the following provisions concerning transitional issues are included in this Memorandum of Settlement:….

    (d) <u>Disputes Subject to Grievance Procedure</u>
      Disputes concerning the application of this Section 22 will be subject to the grievance procedure set forth in Article 5 of the Agreement.

Jt. Exh. 3; App. 094-095.

MIDTERM NEGOTIATIONS CONCERNING
KAISER RETIREES' MEDICAL BENEFITS

  28. After September 1, 2003, the Company did not treat the Kaiser retirees who irrevocably opted out of Accuride's medical coverage as eligible for medical benefits at any time. Neither the employees nor the Union complained about that fact immediately after September 1, when the Agreement became effective, or after September 26, 2003, when Arbitrator Gerhart's award was issued. Tr. 56-57; App. 052-053.

  29. In early April 2004, Accuride received information that Kaiser had initiated a process to seek approval from a bankruptcy court to terminate its post-retirement medical insurance programs for salaried and hourly employees. Tr. 30; Co. Exh. 7; App. 044, 163-165. Accuride also was informed that Kaiser retirees would be able to receive medical coverage under the Kaiser medical plan for active Kaiser employees by paying the applicable monthly COBRA premium. In addition, Accuride understood that Kaiser retirees would be eligible to receive a Health Coverage Tax Credit from the federal government equal to 65% of the premium they paid for medical benefits. Tr. 70-71; Co. Exh. 8; App. 062-063, 166-168.

  30. Accuride promptly notified the Union that Kaiser's action was expected to affect those Accuride employees who had irrevocably elected to receive Kaiser retiree medical benefits and opted out of Accuride's medical plan for Bargaining Unit employees. In a letter

12

dated April 2, 2004, Accuride informed the Union that while it was under no contractual or legal obligation to provide medical coverage for these employees, it was concerned about the anticipated impact of Kaiser's bankruptcy on them. Accordingly, Accuride proposed to provide its affected employees special benefits under one of two options, designated Option A and Option B. Because Accuride had been informed Kaiser would terminate its retiree benefit plans effective May 31, 2004, Options A and B were proposed to become effective in June. Co. Exh. 8; App. 166-168.

31. Under Option A, Accuride would provide a Special Monthly Allowance to Kaiser retirees for as long as they continued to work in the Bargaining Unit or until they became Medicare eligible. The Special Monthly Allowance for each employee was based upon the employee's COBRA cost for receiving medical coverage from the Kaiser medical plan for active employees, less the available tax credit. Accordingly, the Special Monthly Allowance for an employee electing employee only coverage would be $130; for an employee plus one dependent, $230; and for an employee plus family, $350. Co. Exh. 8; App. 166-168.

32. Under Option B, a Kaiser retiree would elect to participate in a new medical plan to be established by the Company. The plan would have the same substantive benefit provisions as those available to other bargaining unit employees. Kaiser retirees would be eligible to receive the coverage until their employment in the Bargaining Unit ended, or they became Medicare eligible. Accuride would contribute toward the monthly premium of the plan, on behalf of each employee, the same amount it contributes on behalf of employees covered under the then-existing medical plans applicable to Bargaining Unit employees. Co. Exh. 8; App. 166-168.

33. Representatives for Accuride and the Union met to discuss the Company's proposals to provide the special benefits on May 13 and 14, 2004. Tr. 72; App. 064. During those meetings, the Union for the first time claimed that Accuride was obligated to cover under its medical plan the Kaiser retirees who previously had opted out of such coverage. Tr. 73; App. 065. Neither the employees nor the Union requested such medical coverage between September 1, 2003 and May 2004. Tr. 57, 60-61; App. 053-055. The parties failed to reach agreement. Tr. 74; App. 066.

34. On June 8, 2004, 25 days after their last meeting, the Union submitted a grievance demanding that Accuride enroll those Bargaining Unit employees who previously had elected to receive Kaiser retiree medical benefits in the medical plan for Bargaining Unit employees. Jt. Exh. 2A; App. 081.

35. Accuride denied the grievance at each step of the grievance procedure. Jt. Exhs. 2B, 2D and 2F; App. 082, 084, 086-087. The Company responded that the employees at issue were not "eligible" for medical benefits under Article 32 of the Agreement. Nothing in the Agreement altered the eligibility of those employees who had completed irrevocable elections opting out of Accuride's medical plan for Bargaining Unit employees. The Company's final answer to the grievance stated in pertinent part:

> Employees who signed such "opt out" agreements [in connection with the 1997 startup] have not been eligible for Company provided health and life insurance benefits at any subsequent time. As you know, Arbitrator Gerhart specifically found the "opt out" agreements were enforceable and further determined that employees who signed such agreements, and their dependents, are not eligible for benefits that are offered to other Erie Plant employees. The current Agreement provides no basis for changing the eligibility of those employees who opted out of benefits provided to other active Erie Plant employees many years ago.

Jt. Exh. 2F; App. 086-087.

36. In addition, Accuride denied the grievance on the grounds that it violated Article 5 of the Agreement. Specifically, the grievance was untimely because it was not submitted within 14 days of the "occurrence" that gave rise to it. Jt. Exh. 2F; App. 086-087.

37. Finally, Accuride denied the grievance because it was not arbitrable. The Company's written answer stated:

> Article 5 applies only to disputes concerning "a term or condition of employment set forth in this Agreement." The dispute here is not controlled by any term or condition of employment set forth in the Agreement but by other, unrelated agreements and benefit plans. Accordingly, the grievance is not appropriate for arbitration under the Agreement as a substantive matter.

Jt. Exh. 2F; App. 086-087.

38. The parties selected Arbitrator Creo to render a "final" decision with respect to the grievance, but to do so without adding to, subtracting from, or modifying the terms of the Agreement. Award; App. 002, 009.

## ARBITRATOR CREO'S AWARD

39. An arbitration hearing was held before Arbitrator Creo on January 26, 2005. The Union argued that because the Opt Out Agreement was not included in the new Agreement in September 2003, employees who previously elected to receive Kaiser retiree benefits became eligible for coverage under the plan for Bargaining Unit employees. The Union's sole witness at the hearing, Vice President Gary Montroy, specifically testified that the employees at issue became eligible for medical benefits from Accuride on September 1, 2003. Tr. 56; App. 052. The Union requested that the Arbitrator find that Accuride was obligated to extend the same medical coverage to the "active, current active Accuride employees" who had

been excluded, as was being provided to other active Bargaining Unit employees.  Tr. 4-6; App. 023-025.

40. With respect to timeliness, the Union argued that Kaiser retirees became eligible for medical coverage when the Agreement came into effect.  It claimed that it requested coverage on behalf of affected employees at meetings with the Company only after it claimed it learned of the Kaiser bankruptcy.  Tr. 57, 61; App. 053, 055.  The Union further argued that during its meetings with the Company "the Union was taking the position that the Company pursuant to the contractual terms had to provide the insurance to these affected employees."  Tr. 68; App. 060.  The Union conceded it was "well aware" that the Kaiser retiree medical coverage would be terminated "well before the filing of the grievance."  Tr. 66; App. 058.

41. Arbitrator Creo issued the Award on April 26, 2005.  Accuride received a copy of the Award via U.S. mail on April 30, 2005.  Complaint ¶ 19.

42. Arbitrator Creo ruled that employees' irrevocable elections opting out of medical benefits from Accuride could not prevent them from receiving medical benefits under the Agreement.  The Arbitrator characterized the Opt Out Agreement as between the Union and "Accuride's predecessor, AKW," and reasoned that because the Opt Out Agreement was not included in the Agreement, the elections that were made by Kaiser retirees in 1997 became "meaningless."  In this respect, the Arbitrator found that the grant of medical benefits in Article 32 to "eligible employees" did not refer to eligibility under the Opt Out Agreement, but to "other terms of eligibility," none of which the Arbitrator identified.  Award; App. 20-21.

43. The Arbitrator also found that he was not bound by Arbitrator Gerhart's Award concerning the elections.  He found that there were "key" changes that distinguished the Gerhart Award, including the parties' failure to include the provisions of the Opt Out Agreement

in the parties' new Agreement and the fact that "there are no benefits available" to the Kaiser retirees as a result of the Kaiser bankruptcy.  Award; App. 20-21.

44.     The Arbitrator concluded that the Agreement contained an "underlying assumption" that the Kaiser retirees would have "comparable benefits from a collateral source" during their employment with Accuride.  With the termination by Kaiser of its retiree benefit plans, "that is no longer the case." The Arbitrator further ruled that "It is against common sense to refuse benefits to these employees now that they are no longer receiving benefits from a third party that was not privy to the bargaining process."  The Arbitrator concluded:

> The Arbitrator finds that under the Agreement, the Company is not able to deny some employees the benefit of health coverage provided to all other employees.  Employees previously obtained benefits from another source due to an opt out they signed with Accuride's predecessor, AKW, based upon an understanding that benefits would continue.  No rational person would have opted out on the assumption that future benefits were at risk or otherwise temporary.

Award; App. 20-21.

45.     The Arbitrator also concluded that the grievance was timely.  Arbitrator Creo paraphrased Article 5 of the Agreement by saying that under the Agreement, "a grievance must be filed within 14 days of the event that gives rise to the grievance."  Award; App. 020.

46.     The Arbitrator found that because the employees' elections to opt out of Company-furnished benefits were contingent upon their continued receipt of Kaiser retiree benefits, the grievance did not arise until their benefits were terminated on May 31, 2004.  Therefore, although the parties were "aware that the benefits were of issue and were not included in the bargaining process" at the time of their meetings earlier in May 2004, the grievance was timely:

> It is this Arbitrator's finding that the Grievance was timely filed due to the Kaiser benefit termination date of May 31, 2004. This is the effective date of the action which led to the harm alleged by the Union. The grievance is timely and arbitrable.

Award; App. 20-21.

DATED this 10th day of February, 2006.

QUINN, BUSECK, LEEMHUIS, TOOHEY & KROTO, INC.

By _s/ Arthur Martinucci_____
   Arthur Martinucci
   2222 W. Grandview Blvd.
   Erie, PA 16506

RYLEY CARLOCK & APPLEWHITE

By _s/ Frederick C. Miner_____
   Frederick C. Miner
   Andrea G. Lisenbee
   One N. Central Ave., Ste. 1200
   Phoenix, AZ 85004-4417

COUNSEL FOR ACCURIDE ERIE, L.P.