**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ACCURIDE ERIE L.P., a limited partnership, | Case No. 05-CV-169 Erie |
| Plaintiff/Counterclaim Defendant, | Judge Sean J. McLaughlin |
| v. | **[Electronically Filed]** |
| INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, LOCAL UNION 1186, a voluntary unincorporated association, | |
| Defendant/Counterclaim Plaintiff | |
| and INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW, a voluntary unincorporated association, | |
| Counterclaim Plaintiff. | |

**PLAINTIFF/COUNTERCLAIM DEFENDANT, ACCURIDE ERIE L.P.'S
REPLY TO DEFENDANT/COUNTERCLAIM PLAINTIFF'S
CROSS MOTION FOR SUMMARY JUDGMENT**

AND NOW, comes the Plaintiff/Counterclaim Defendant, Accuride Erie, L.P. ("Accuride" or the "Company"), by and through its attorneys, Quinn Buseck Leemhuis Toohey and Kroto, Inc., and Ryley Carlock and Applewhite, and files the within Reply to Defendant/Counterclaim Plaintiff's (the "Union's") Cross Motion for Summary Judgment, of which the following is a statement.

676539

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.  **The Court Is Not Constrained To Enforce An Award Concerning Eligibility For Medical Benefits That Ignores The Employees' Irrevocable Elections To Opt Out**

The Union contends that Arbitrator Creo legitimately interpreted and applied the parties' Agreement by ruling that Kaiser retirees who irrevocably opted out of medical benefits from Accuride nevertheless became eligible for those benefits when the parties failed to include language in their new Agreement explicitly continuing the effect of the elections. This argument fundamentally mischaracterizes and "cherry-picks" from the reasoning in the Award, and it cannot hold water. As described more fully in Sections II and III, *infra*, the Arbitrator's reliance on the opt-out elections is not only integral to the merits of the Award, but also indispensable to his conclusion that the Union's grievance was submitted in a timely fashion. Despite this, the Union would have the Court ignore these clear and irrevocable elections. The Court's standard of review is not so eviscerated that it must enforce an Award that ignores the unequivocal language of irrevocable opt-out elections completed by the very employees whose eligibility is in dispute based on nothing other than expiration of the agreement that initially provided for those elections to be made.

There is no dispute that the opt-out elections involved the very same medical benefits that are at issue in the Award. Those elections referred to "AKW, L.P.," as Accuride was known at the time it acquired the Erie Plant in May of 1997. Accuride's Concise Statement of Facts ("SOF") ¶ 4; Union's Response to Accuride's Concise Statement of Facts ("Union's Response") ¶ 4. In addition, the Union does not argue that the opt-out elections, which specifically provided that the Kaiser retirees and their dependents "*will NOT be covered at any future time*" (emphasis original) by any Accuride medical benefits (SOF ¶ 14) were ambiguous or otherwise susceptible to multiple interpretations. Nor is there any dispute that if the Arbitrator should have considered

the elections, the only rational conclusion he could have reached is that the Kaiser retirees who completed them were not eligible for medical benefits from Accuride. Rather, the Union claims, the elections are irrelevant. Union's Response ¶ 14. Because the parties authorized the Arbitrator to interpret the Agreement, allegedly it would have been inappropriate for him to consider elections that were made under a predecessor agreement in deciding the grievance. Union's Memorandum of Law in Support of its Cross Motion for Summary Judgment ("Union's Brief") p. 9. This reasoning ignores the fact that, while the prior agreement had an expiration date, the opt-out elections *did not* and, moreover, were scrupulously drafted to *prevent* the conclusion that any such "sunset" was intended by the parties.

There is nothing in the federal common law concerning the enforcement of collective bargaining agreements[1] that would require the Arbitrator to ignore the Kaiser retirees' irrevocable opt-out elections in construing their eligibility for medical benefits. To the contrary, parties to collective bargaining can and frequently do provide legal rights that outlive the agreements creating them. *See, e.g., John Wiley & Sons v. Livingston*, 376 U.S. 543, 555 (1964) ("We see no reason why parties could not if they so chose agree to the accrual of rights during the term of an agreement and their realization after the agreement had expired."); *Inter-Modal Rail Employees Assoc. v. Atchison, Topeka & Santa Fe Ry. Co.*, 520 U.S. 510, 515 (1997) (employer may "contractually cede[] its freedom" not to vest welfare benefits); *UAW v. Skinner Engine Co.*, 188 F.3d 130, 138 (3rd Cir. 1999) ("parties to collective bargaining agreement may provide for rights that survive beyond expiration of [the] agreement"); *McCoy v. Meridian Automotive Systems, Inc.*, 390 F.3d 417, 422 (6th Cir. 2004) ("Basic principles of contract

---

[1] Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, provides a basis for jurisdiction and also "authorizes federal courts to fashion a body of federal law for the enforcement of…collective bargaining agreements." *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451 (1957).

interpretation determine whether benefits survive the expiration of [a collective bargaining agreement]"). Judge Posner summarized the law with respect to the post-expiration continuation of medical benefits in *Rosetto v. Pabst Brewing Co.*, 217 F.3d 539, 547 (7th Cir. 2000), in pertinent part as follows:

> If there is language in the [collective bargaining] agreement to suggest a grant of lifetime benefits, and the suggestion is not negated by the agreement read as a whole, the plaintiff is entitled to a trial. Of course, if the agreement expressly grants such benefits, the plaintiff is entitled, not to a trial, but to a judgment in his favor. We are speaking of a case in which merely suggestive language creates a patent ambiguity.

In this case, the scenario is reversed. Instead of language expressly granting lifetime benefits, the parties entered into an agreement that specifically and unambiguously *limited* the employees' eligibility. The individual Kaiser retirees undertook irrevocable elections that specifically acknowledged they would not be covered <u>*at any future time*</u> by <u>*any Accuride medical benefits*</u>. The fact that the irrevocable elections were completed during the term of an agreement that has expired does not mean they can simply be disregarded. To the contrary, the irrevocable elections are as enforceable as the promises of benefits that clearly extended beyond the term of the agreements containing them in the foregoing cases. As a result, even if the Arbitrator determined that the arbitration provision in the Agreement did not cover the disputed application of the irrevocable elections because it provides only for the resolution of "a claim that a term or condition of employment set forth in this Agreement has been violated" (SOF ¶ 25), he had ample authority to construe the elections under the predecessor arbitration agreements. *See* SOF ¶ 17. The Supreme Court has ruled quite clearly that post-expiration disputes are arbitrable when they turn on the application of rights that arose under the agreement. *Litton Fin. Printing Div. v. NLRB*, 510 U.S. 190, 205 (1991) ("A postexpiration grievance can be said to arise under the contract…where an action taken after expiration infringes a right that

4

accrued or vested under the agreement, or where, under normal principles of contract interpretation, the disputed contractual right survives expiration of the remainder of the agreement"); *Nolde Bros., Inc. v. Bakery Workers*, 430 U.S. 243, 255 (1977) (presumption in favor of arbitration of post-expiration disputes must be "negated expressly or by clear implication").

There is no dispute that Accuride and the Union have never agreed to provide medical benefits to the Kaiser retirees at issue in the Award. During the bargaining process leading up to the Agreement in 2003, the parties did not negotiate over or even discuss the eligibility of Kaiser retirees who irrevocably elected to receive Kaiser retiree medical benefits. SOF ¶ 23; Union's Response ¶ 23. As Arbitrator Creo observed in the Award, medical benefits for these individuals simply "were not included in the bargaining process." Award p. 20. Indeed, there was *no reason* to include them, as they had voluntarily and permanently removed themselves from consideration in that regard. The only rational conclusion based on these circumstances is that, after the expiration of the parties' prior agreement, there were no changes to be made to the Kaiser retirees' elections. Being irrevocable, there also were no new or additional elections to be made by the Kaiser retirees who opted out of Accuride's medical benefits.

The Arbitrator's conclusion that the irrevocable opt-out elections were vacated by the mere expiration of the agreement that contained them, followed by alleged silence in the Agreement, replaces the results of the parties' negotiations with the Arbitrator's own sense of industrial justice. This sort of arbitral interference with collective bargaining has profound implications for the parties' continuing relationship. The parties must be able to rely on the definitive language that they use to express the results of their own negotiations. If irrevocable does not mean irrevocable, there may be no language that is sufficiently clear so as to enable the

parties to negotiate long-term rights with the certainty that is needed for a stable bargaining relationship.

## II. The Arbitrator's Lip Service To The Timeliness Provisions In The Grievance Procedure Does Not Constitute Interpretation and Application of the Agreement

Contrary to the Union's contention, the Arbitrator's mere reference to the contractual mandate that a grievance must be submitted within 14 calendar days of the occurrence giving rise to it does not constitute interpretation and application of the Agreement.

The Union's sole argument in support of the purported timeliness of the grievance is that the contractual "occurrence" arose when the Kaiser retirees lost the medical benefits they elected from Kaiser and "sought coverage under the Accuride/UAW collective bargaining agreement." Union's Brief p. 9. First, the Union's argument directly conflicts with the undisputed evidence in the record. *The Union asserted* at the arbitration hearing that it unsuccessfully sought medical coverage from the Company on behalf of the Kaiser retirees at least no later than the parties' meetings on May 13 and 14, 2004. SOF ¶ 40.[2] As a result, if the Union is correct and the grievance was timely only if submitted within 14 days of the time Kaiser retirees *sought* coverage from Accuride, then the Award must be vacated because the grievance was not submitted until 25 days after the meetings ended without an agreement. SOF ¶ 34; Union's Response ¶ 34. The Arbitrator did not find, and there is no evidence whatsoever that the Union or any Kaiser retiree sought medical coverage from the Company on May 31, 2004.

---

[2] Although the Union generically denied paragraph 40 of the SOF, Union's Response ¶ 40, it offered nothing to rebut it. The Union's sole witness at the arbitration hearing, Vice President Gary Montroy, was asked when the Union requested coverage for the Kaiser retirees, and responded: "[T]he company called a couple meetings. We had a couple meetings with the company. And they denied us coverage for these employees. And then we filed a grievance." Accuride's Appendix ("App.") 55. It is undisputed that the only meetings that were held concerning the Kaiser retirees' coverage before the Union submitted its grievance were conducted on May 13 and 14, 2004. SOF ¶ 33; Union's Response ¶ 33.

Second, the Union's assertion that the grievance could be timely by reference to medical benefits being "sought" would effectively read out of the Agreement the requirement that a grievance be timely submitted with respect to the occurrence giving rise to it.  If the Union can simply seek benefits for employees and then grieve the denial, there would be no deadline for submission of a grievance concerning those employees' eligibility.  *See El Mundo Broadcasting Corp. v. United Steelworkers of Am.*, 116 F.3d 7, 10 (1st Cir. 1997) (Vacating award based on arbitrator's application of a continuing violation theory that effectively read the timeliness requirement out of the parties' collective bargaining agreement).  Here the Union was aware of Kaiser's bankruptcy and its potential impact on medical benefits at the time of the Gerhart arbitration in January 2003, and it argues that the Kaiser retirees finally became eligible for medical benefits from Accuride effective September 1, 2003.  Accuride's denial of medical benefits to the Kaiser retirees in September 2003 is the "occurrence" giving rise to the grievance, not some unsupported effort to seek them.

Third, the Union's argument contradicts the Award.  The Arbitrator stated that he found the grievance timely not because the Union or employees *sought* benefits from the Company at a relevant time, but because *Kaiser terminated* its medical plan for retirees effective May 31, 2004.  Award p. 20 ("This is the effective date of the action which led to the harm alleged by the Union.").  The question before the Arbitrator was not whether the Kaiser retirees properly lost their fully paid medical coverage from Kaiser on May 31, 2004, but rather whether Accuride properly failed to extend medical benefits to them.  That occurrence incontestably arose as of the effective date of the Agreement, September 1, 2003.  As discussed more fully in Section III below, the Arbitrator's speculation that subjective expectations of coverage somehow triggered Accuride's duty to furnish benefits to the Kaiser retirees mid-term in the Agreement relies on

imported notions of equity known only to the Arbitrator.[3]  The Union evidently does not (because it cannot) dispute that Kaiser's plan termination is not a plausible "occurrence" with respect to Accuride's alleged contractual violation.

Fourth, the Union would have this Court believe that it must enforce the Award based on the Arbitrator's say-so.  In particular, the Union misstates the law in suggesting that the Arbitrator's timeliness determination is not reviewable.  The Union cites a district court decision, ruling in an action to compel arbitration that disputes concerning timeliness must first be referred to arbitration.  *Oil, Chem., & Atomic Workers v. Union Oil*, 457 F. Supp. 179 (C.D. Cal.1978).  This is consistent with the Supreme Court's ruling in *Oper. Eng. Local 150 v. Flair Builders*, 406 U.S. 487 (1972), also cited by the Union, that the issue of *laches* must be presented first to an arbitrator.  The Court more recently concluded in an action under the Federal Arbitration Act that timeliness is a matter to be presented first at arbitration in *Howsam v. Dean Witter Reynolds*, 537 U.S. 79 (2002).  These "prearbitration" cases involve the question of whether a federal court initially should decide timeliness even when the merits of the controversy are arbitrable, and they are inapplicable here.  The Company complied with these authorities, and the resulting Award is appropriately before the Court.  *See NF&M Corp. v. United Steelworkers of America*, 524 F.2d 756, 760 (3d Cir. 1975) ("If the arbitrator here had no evidence before him to support a determination either of compliance with the contractual grievance procedures or of excuse from compliance, his award on the timeliness issue…must be vacated.").

---

[3] Arbitrator Creo reasoned that his "underlying assumption" is that the Kaiser retirees who opted out of Accuride's medical benefits would have "comparable benefits from a collateral source." As a result, he found the Kaiser retirees became entitled to medical benefits from Accuride when Kaiser's plan terminated.  *See Citgo Asphalt Refining Co. v. Paper, Allied-Industrial, Chemical & Energy Workers*, 385 F.3d 809, 817 (3d Cir. 2004) ("[A]n arbitrator's opinion and award based on general considerations of fairness and equity as opposed to the exact terms of the CBA, fails to derive its essence from the CBA").

Nor is the Arbitrator's mere reference to the 14 day contractual time limit for the submission of a grievance a sufficient basis for enforcement of the Award. Lip service does not constitute interpretation or application of the parties' Agreement. *See Arch of Illinois v. Dist. 12, United Mineworkers*, 85 F.3d 1289, 1293 (7th Cir. 1996) ("The arbitrator, of course, cannot simply pay lip service to his obligation to follow the collective bargaining agreement."). Here, as in *Wyandot, Inc. v. Local 227, United Food & Commercial Workers Union*, 205 F.3d 922 (6th Cir.), *cert. denied*, 531 U.S. 820 (2000) ("[T]he Arbitrator not only ignored the Agreement's deadlines, he did so while acknowledging that the Company did not waive" them) and *El Mundo Broadcasting*, 116 F.3d at 10 ("By misstating the basic nature of the occurrence the arbitrator read the time provisions out of the contract, ignoring its 'essence'"), the Arbitrator's mere reference is no substitute for his failure to apply the mandatory provisions of the parties' Agreement. Because the grievance was not timely, the Award must be vacated.

### III. Arbitrator Creo's Award Conflicts With The Arbitration Award Issued By Arbitrator Gerhart Concerning the Meaning of the Identical Opt-Out Elections

While the Union's Brief misstates the Arbitrator's decision concerning the occurrence he found gave rise to the grievance, it also selectively parses the reasoning that underlies the Arbitrator's effort to both find merit in the grievance and find it timely. Specifically, the Union argues that because the Award interprets "eligible employees" under the Agreement as including *all* Erie Plant employees, by definition it was rational (and necessary) for the Arbitrator to ignore not just the Kaiser retirees' elections but also the prior award by Arbitrator Gerhart that gave effect to them. Union's Brief p. 12. Inescapably, however, if the question raised by the grievance is whether eligible Kaiser retirees were denied medical benefits for which they were eligible under the Agreement, then the occurrence giving rise to the grievance must have arisen

9

on September 1, 2003. There is no excuse in the Agreement, or the record, for the violation of Article 5 that occurred when the Union submitted its grievance on June 8, 2004.

However, the Arbitrator never limited the Award to determining a strict eligibility issue. Instead, he found that the Kaiser retirees became entitled to medical benefits mid-term in the Agreement *as a result of their opt-out elections*. He stated:

> The underlying assumption is that the employees have some comparable benefits from a collateral source. With the termination of the Kaiser benefits, that is no longer the case….Employees previously obtained benefits from another source due to an opt out they signed with Accuride's predecessor, AKW, based upon an understanding that benefits would continue. No rational person would have opted out on the assumption that future benefits were at risk or otherwise temporary.

Award p. 21.

The Award purports to have it both ways: On the one hand, Arbitrator Creo deliberately disregards the Kaiser retirees' irrevocable elections and the Gerhart Award that enforced them for the sake of finding these employees eligible for benefits from Accuride; on the other hand, the Arbitrator applies the very same elections and not any provision in the Agreement as an indispensable basis for finding that Accuride became liable for those medical benefits some ten months into the Agreement. Not even the Union argues that these radically contradictory conclusions are rational.

Importantly, Arbitrator Creo's determination that the Kaiser retirees' elections were not *irrevocable* but rather *conditional* upon the Kaiser retirees' continued receipt of medical benefits from Kaiser, or as he put it "comparable benefits from a collateral source," irremediably conflicts with the plain meaning of the elections and with the Gerhart Award. Award p. 21. In this respect, the Union offers nothing to distinguish the precedents requiring great deference from

10

arbitrators to the "final and binding" results of their predecessor's awards.[4]  *See Trailways v. Trailways, Inc. Joint Council*, 807 F.2d 1416, 1425 (8th Cir. 1986).  *See also Local 616, Int'l Un. Of Elec., Radio and Mach. Workers v. Byrd Plastics*, 428 F.2d 23, 26 (3d Cir. 1970) ("a clause stating that a decision of an arbitrator is 'final and binding' is no doubt intended to establish a principle similar to that of res judicata, and to bar reconsideration of the disputes fully decided on their merits.").  Arbitrator Creo's belief that a "rational" Kaiser retiree would not have irrevocably opted out of Accuride's medical benefits simply, and without justification, displaces Arbitrator Gerhart's application of the plain language of the elections.  In so doing, Arbitrator Creo disregarded the "final and binding" nature of Arbitrator Gerhart's award.  For this additional reason, his Award must be vacated.

---

[4] The Union incorrectly asserts that Arbitrator Creo's Award had "final and binding" effect under the Agreement while arguing that the Agreement was the sole source of the Arbitrator's authority.  *See* Union's Brief p. 2.  In fact, Article 5 of the Agreement states that the Award is simply the "final" result of the grievance procedure.

**IV.   CONCLUSION**

For all of the foregoing reasons, Accuride respectfully requests that summary judgment be entered in its favor and that the Court vacate Arbitrator Creo's Award dated April 26, 2005.

DATED this 31st day of March, 2006.

>QUINN, BUSECK, LEEMHUIS, TOOHEY
>& KROTO, INC.
>
>By  s/ Arthur Martinucci_____
>   Arthur Martinucci
>   2222 W. Grandview Blvd.
>   Erie, PA  16506
>
>RYLEY CARLOCK & APPLEWHITE
>
>By  s/ Frederick C. Miner_____
>   Frederick C. Miner
>   Andrea G. Lisenbee
>   One N. Central Ave., Ste. 1200
>   Phoenix, AZ  85004-4417
>
>COUNSEL FOR ACCURIDE ERIE, L.P.