**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ACCURIDE ERIE L.P., a limited partnership, <br><br> Plaintiff/Counterclaim Defendant, <br><br> v. <br><br> INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, LOCAL UNION 1186, a voluntary unincorporated association, <br><br> Defendant/Counterclaim Plaintiff. | Civil Action No. 05-169 Erie <br><br> Judge Sean J. McLaughlin |

## MEMORANDUM OPINION

McLAUGHLIN, SEAN J., J.

Presently pending before the Court are cross-motions for summary judgment.

### I. BACKGROUND

Plaintiff, Accuride Erie L.P. ("Accuride"), is a limited partnership authorized to conduct business in the State of Pennsylvania. The International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, Local Union 1186 ("UAW" or "Union") is the exclusive collective bargaining agent for the production and maintenance employees at the Accuride facility in Erie. The current collective bargaining agreement ("CBA") between the UAW and Accuride runs from September 1, 2003 until August 31, 2007. Under that agreement, the parties have agreed to final and binding arbitration of grievances.

In May, 1997, Accuride acquired an aluminum wheel manufacturing plant located in Erie, Pennsylvania, from Kaiser Aluminum Corporation ("Kaiser"). Prior to that date, the Union represented the hourly employees of Kaiser who were then working at the Erie Plant. Pursuant to a document styled "An Agreement Concerning Transitional Issues between Accuride and the Union," Union-represented Kaiser employees at the Erie Plant who applied for employment with Accuride were hired to fill startup positions in the company. (Accuride's Motion for Summary Judgment, Dkt. #20, Exhibit #8).

1

Subsequent to Accuride's acquisition of Kaiser, the Union and Accuride memorialized an initial Collective Bargaining Agreement. With respect to medical coverage for the former Kaiser employees, the CBA, which become effective on May 1, 1997, included a Letter of Agreement that provided in pertinent part:

> Startup Kaiser Retirees will be permitted to "opt out" of AKW[1] medical/life insurance by making an irrevocable, one-time voluntary election, at the time they retire from Kaiser on or before September 15, 1997, to elect Kaiser retiree medical and life insurance coverage for themselves and any dependents in lieu of any AKW medical and life insurance coverage. If these individuals elect Kaiser retiree medical . . . insurance coverage, they will not be covered at any future time by any AKW medical . . . insurance.

(Id.)

Afterwards, many of the former Kaiser employees completed election forms that provided, in pertinent part, that:

> In connection with my Kaiser retirement and my employment at AKW, I hereby exercise a one-time irrevocable election concerning medical . . . coverage for my dependents and myself as follows:
>
> I Opt Out of AKW Insurance in Favor of Kaiser Retiree Insurance. I am electing Kaiser retiree medical . . . coverage for myself and my dependents instead of any AKW medical . . . insurance coverage. *I understand this is a one-time election that is permanent and irrevocable. I understand that my dependents and I will NOT be covered at any future time by any AKW medical . . . insurance . . .*
>
> ACKNOWLEDGEMENT: I understand and acknowledge that the above election is being made on a one-time basis and *will remain permanent and irrevocable even if the benefit plans change or if different circumstances at some point result in higher or lower coverage. I understand that I am responsible for understanding the relevant plans and the permanent irrevocable nature of my election notwithstanding potential future changes or developments.*

The employees who elected Kaiser retiree medical benefits and irrevocably opted out of the medical benefits furnished by Accuride were not covered by any Accuride medical benefits for active employees at any subsequent time. On August 18, 1998, the parties entered into a collective bargaining agreement ("1998 CBA") extending the initial 1997 Agreement through August 2003.

---

[1]   At the time of the agreement, Accuride was known as AKW L.P ("AKW").

On or about February 16, 2001, the Union submitted a grievance under the terms of the 1998 CBA contending that a former Kaiser employee and his spouse had been improperly denied coverage under Accuride's medical plan. Accuride denied the grievance on the basis that the employee had irrevocably opted out of any medical benefits furnished by Accuride. (Accuride's Motion for Summary Judgment, Dkt. #20, Exhibit #10). On January 16, 2003, Arbitrator Gerhart heard the grievance and, in an award dated September 26, 2003, denied the grievance on the basis of the previously described Opt Out Agreements. Arbitrator Gerhart concluded that nothing in the parties' agreement authorized him to award Accuride medical coverage to an employee who had opted out, even if that employee would otherwise be left without any medical benefits.

In September, 2003, following the expiration of the 1998 CBA, the parties entered into a new CBA. This Agreement did not mention or reference the irrevokable opt-outs signed by many of the Kaiser retirees; indeed, the only mention of medical benefits therein is contained in a single provision, Article 32, which provides that the Company will provide "eligible employees" with medical benefits. Article 32 further states that "the specific terms" of the benefits are set forth in the "benefit plans and the insurance contract," which are "the controlling documents" with respect to benefits.

In April 2004, Accuride learned that Kaiser had filed an action in bankruptcy court to terminate its post-retirement medical insurance program. Accuride promptly notified the Union of this development, and the Union responded by demanding that Accuride provide medical coverage to the employees who had previously elected to receive Kaiser retiree medical benefits via the irrevokable opt-out. On June 8, 2004, the Union followed up their demand by filing a grievance, which Accuride denied at each step of the grievance procedure, insisting that the Opt Out Agreements signed by the affected retirees were valid, enforceable, and irrevokable. Accuride also denied the grievance because the company contended that it had not been filed within 14 days of the "occurrence" that gave rise to the grievance, in violation of Article 5 of the Agreement.

Following the denial of the grievance, the parties selected an arbitrator and proceeded to an arbitration hearing before Arbitrator Creo on January 26, 2005. Arbitrator Creo, on April 26, 2005, ruled that the employees' allegedly irrevokable elections in 1997 did not preclude receipt of medical benefits under the 2003 CBA. The Arbitrator characterized the Opt Out Agreement as between the

3

Union and "Accuride's predecessor, AKW," and reasoned that, because the Opt Out Agreements were not incorporated or included in the 2003 CBA, the elections made by the Kaiser retirees in 1997 became "meaningless." In this respect, Arbitrator Creo found that the grant of medical benefits in Article 32 to "eligible employees" did not refer to eligibility under the Opt Out Agreement, but to "other terms of eligibility."[2] Arbitrator Creo also determined over Accuride's objection that the

---

[2]

As an alternative basis for his decision, Arbitrator Creo concluded that the Agreement contained an "underlying assumption" that the Kaiser retirees would have "comparable benefits from a collateral source" during their employment with Accuride. Given Kaiser's termination of its retiree benefit plans, Arbitrator Creo ruled that "[i]t is against common sense to refuse benefits to these employees now that they are no longer receiving benefits from a third party that was not privy to the bargaining process." The Arbitrator concluded:

> The Arbitrator finds that under the Agreement, the Company is not able to deny some employees the benefit of health coverage provided to all other employees. Employees previously obtained benefits from another source due to an opt out they signed with Accuride's predecessor, AKW, based upon an understanding that benefits would continue. No rational person would have opted out on the assumption that future benefits were at risk or otherwise temporary.

(Accuride's Motion for Summary Judgment, Exhibit 3, Creo Award, p. 21). At oral argument, counsel for Accuride conceded that this was not the basis upon which it sought affirmance of the award:

| The Court: | Do you agree with me – and I'm not going to ask you to fall on your own sword on that point, because I'm just not going to do it. But is it fair to say that you are putting most of your–most of your eggs in the arbitrator's basket, where he said, I'm reaching this decision on the basis that I do not find the provision in the new Collective Bargaining Agreement? |
| --- | --- |
| Ms. Trafton: | Yes, Your Honor, I think – |
| The Court: | Is that a stronger position for you, in all candor? |
| Ms. Trafton: | In all candor, it is. I think that's the way for the Court to interpret the arbitrator's interpretation. |

(Oral Argument Transcript, 5/31/06, pp. 19-20). We easily conclude that this portion of Arbitrator Creo's award does not draw its essence from any language in the 2003 CBA. As

4

grievance was timely as it had been filed within the applicable time period set forth in the CBA.

On May 27, 2005, Accuride filed the instant complaint seeking to vacate Arbitrator Creo's award. On July 29, 2005, Defendant filed an answer and counterclaim to confirm the award. Following cross motions for summary judgment, oral argument on the motions was held on April 28, 2006. This issue is thus ripe for resolution.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In order to withstand a motion for summary judgment, the non-moving party must "make a showing sufficient to establish the existence of [each] element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In evaluating whether the non-moving party has established each necessary element, the Court must grant all reasonable inferences from the evidence to the non-moving party. Knabe v. Boury Corp., 114 F.3d 407, 410, n.4 (3d Cir. 1997) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986)). "Where the record taken as a whole could not lead a reasonable trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Id. (quoting Matsushita, 475 U.S. at 587).

## III. DISCUSSION

We begin our analysis by examining the general legal principles governing federal courts' review of arbitration awards. The first step in any such review involves an examination of the sources of the arbitrator's authority. See Matteson v. Ryder System, Inc., 99 F.3d 108, 112 (3rd Cir. 1996) ("Under the Federal Arbitration Act, a district court may vacate an arbitration award if, inter alia, 'the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.' ") (quoting 9 U.S.C. § 10(a)(4)). Simply stated, "an arbitrator may not venture beyond the bounds of his or her authority," which is defined not only by the terms of the CBA, but also by the scope of the issues submitted by the parties. Id. Thus, "[i]t is the responsibility of the arbitrator in the first instance to interpret the scope

---

that requirement will be discussed more fully above.

5

of the parties' submission, but it is within the courts' province to review an arbitrator's interpretation." Id. at 113.

In conducting this review, "'the deference that is accorded to an arbitrator's interpretation of the collective bargaining agreement should also be accorded to an arbitrator's interpretation of the issue submitted '" Id. (quoting Mobil Oil Corp. v. Independent Oil Workers Union, 679 F.2d 299, 302 (3rd Cir. 1982)). This is so because (1) "a more searching judicial review of submissions . . . would undermine the congressional policy of promoting speedy, efficient, and inexpensive resolution of labor grievances"; (2) "interpretation of a submission must often occur in the context of the collective bargaining agreement itself," thereby resulting in an inconsistency if the arbitrator's interpretation of the CBA receives deference but his or her determination of the scope of the submission does not; and (3) "requiring courts to engage in a close examination of the submissions to arbitrators would put a considerable strain on judicial resources." Id. (citing Mobil Oil, 679 F.2d at 302).

Our role in reviewing the outcome of the arbitration proceedings is not to correct factual or legal errors made by an arbitrator. Major League Umpires Ass'n v. American League of Professional Baseball Clubs, 357 F.3d 272, 279 (3rd Cir. 2004). When an arbitrator resolves disputes regarding the application of a contract, and no dishonesty is alleged, the arbitrator's 'improvident, even silly, factfinding' does not provide a basis for a reviewing court to refuse to enforce the award. Major League Baseball Players Ass'n v. Garvey, 532 U.S. 504, 509 (2001) (internal citations and quotations omitted). We should uphold an arbitration award that "draws its essence from the collective bargaining agreement" because "the parties to the collective bargaining agreement 'bargained for' a procedure in which an arbitrator would interpret the agreement." National Ass'n of Letter Carriers, AFL-CIO v. United States Postal Serv., 272 F.3d 182, 185 (3rd Cir.2001) (noting that a court should uphold an arbitration award) (citing Eastern Assoc. Coal Corp. v. United Mine Workers, 531 U.S. 57, 62 (2000)); United Indus. Workers v. Gov't of the V.I., 987 F.2d 162, 170 (3rd Cir.1993) (holding that a court may not "overrule an arbitration decision because it finds an error of law"). An award may fairly be said to 'draw[ ] its essence from the bargaining agreement if the interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention.' " United Transportation Union Local

6

1589, 51 F.3d at 379-80 (internal quotations omitted)).

An award may be vacated if the arbitrator demonstrates manifest disregard for the CBA. See Newark Morning Ledger Co. v. Newark Typographical Union Local, 797 F.2d 162, 165 (3rd Cir.1986). Manifest disregard for the CBA is established when the arbitrator's award is " 'totally unsupported by principles of contract construction.'" Exxon Shipping Co. v. Exxon Seamen's Union, 993 F.2d 357, 360 (3rd Cir.1993) (quoting News Am. Publications v. Newark Typographical Union, Local 103, 918 F.2d 21, 24 (3rd Cir.1990)).

Therefore, a court can only vacate an arbitrator's award "if it is entirely unsupported by the record of if it reflects a manifest disregard of the agreement." Exxon Shipping Co. v. Exxon Seamen's Union, 73 F.3d 1287, 1291 (3rd Cir. 1996) ("Exxon III"). "An arbitrator's decision need be neither wise nor internally consistent." Id. at 1297. The decision is "subject to a standard of only minimal rationality." Id.

Accuride argues that the elections made by the former Kaiser employees in the Opt Out Agreements survived the expiration of the 1998 CBA, despite the fact that they were not specifically referenced or incorporated in the 2003 CBA. It argues that the arbitrator erred in concluding otherwise. Specifically, Accuride asserts that the Arbitrator improperly ignored the Opt Outs, effectively eviscerated the intentions of the parties with regards to their irrevocable nature, and demonstrated "manifest disregard for the CBA." See Umpires Ass'n, 357 F.3d at 280. Accuride cites several cases for the legal proposition that parties to collective bargaining agreements can create legal rights that outlive the agreements creating them. See, e.g., John Wiley & Sons v. Livingston, 376 U.S. 543, 555 (1964) ("We see no reason why parties could not if they so chose agree to the accrual of rights during the term of an agreement and their realization after the agreement had expired."); UAW v. Skinner Engine Co., 188 F.3d 130, 138 (3rd Cir. 1999) ("[P]arties to collective bargaining agreement may provide for rights that survive beyond expiration of [the] agreement...."); McCoy v. Meridian Automotive Systems, Inc., 390 F.3d 417, 422 (6th Cir. 2004) ("Basic principles of contract interpretation determine whether benefits survive the expiration of [a collective bargaining agreement]").

Nonetheless, the Arbitrator reached the opposite conclusion:

7

> In the current Agreement, there are no sections that pertain to the health benefits or the opting out that was done under AKW which states that should benefits be terminated then these employees are precluded from obtaining benefits under the new Agreement. The parties had the opportunity to include in this Agreement the letter of understanding that would have included the opting out language as irrevocable and the sole source of benefits. They did not do so. As a result, there is no language to control in the current Agreement with regard to the opting out that occurred under the predecessor AKW and the bargaining unit.

(Creo Award, p. 20). We are mindful of the fact that we "do not sit to hear claims of factual or legal error by an arbitrator as an appellate court does in reviewing decisions of lower courts." Umpires Ass'n, 357 F.3d at 280 (quoting Tanoma Mining Co. v. Local Union No. 1269, United Mine Workers of Am., 898 F.2d 745, 747 (3rd Cir. 1990)). Rather, we must confirm the award if it can be said to draw its essence from the bargaining agreement "in *any rational way* . . . viewed in light of its language, its context, and any other indicia of the parties' intention." Id. (quoting United Transportation Union Local 1589, 51 F.3d at 379-80) (emphasis in original).

Here, the Arbitrator makes it clear that his decision was based upon the relevant provisions of the 2003 CBA and the absence of any language incorporating the previously described Opt Out Agreements. The Arbitrator states:

> The Company cites Article 32 of the Agreement as precluding them from having to provide benefits to those employees that had opted out under the former opt out agreement. They argue that the term "eligible" employees precludes those that have opted out, citing that the opt out made them "ineligible." However, nowhere in the Agreement is there any backing for this contention. Eligible, therefore, applies to other terms of eligibility and not the opt out agreement that had been signed under AKW and the previous bargaining Agreement.

(Creo Award, p. 20).

"[A]s long as the arbitrator's award draws its essence from the [CBA] and is not merely [the arbitrator's] own brand of industrial justice, the award is legitimate." United Paperworkers Union v. Misco, Inc., 484 U.S. 29, 36 (1987); see also Exxon III, 73 F.3d at 1295 ("[O]nly where there is a manifest disregard of the agreement, totally unsupported by the principles of contract construction and the law of the shop, may a reviewing court disturb the award."); United Indus. Workers v. Gov't

Case 1:05-cv-00169-SJM    Document 39    Filed 08/11/2006    Page 9 of 12

of the V.I., 987 F.2d 162, 170 (3rd Cir. 1993) (holding that a court may not "overrule an arbitration

decision because it finds an error of law"). In this respect, we find that the Arbitrator's award clearly

drew its essence from the 2003 CBA. While we may well have reached a different conclusion as to

the enforceability of the Opt Out Agreements were we to review the matter *de novo*, under the

extremely deferential standard of review mandated here, we affirm the Arbitrator's conclusion in this

regard.

    Accuride also takes issue with the Arbitrator's conclusion that the grievance filed by the

Union was timely. According to the terms of the 2003 CBA, a "grievance must be submitted to the

aggrieved employee's immediate supervisor within 14 calender days of the occurrence giving rise

to the grievance." (Accuride's Motion for Summary Judgment, Dkt. #20, Exhibit #13, Article 5.2).

At the arbitration hearing, the Union contended that the "occurrence" giving rise to the grievance

occurred on May 31, 2004, when the aggrieved employees lost access to their prior health benefits

and sought coverage from Accuride. Accuride argued that the event giving rise to the grievance

occurred on May 13 and 14, 2004, when the Union first unsuccessfully sought coverage for the

Kaiser retirees from Accuride. The Arbitrator concluded, however, that the triggering event occurred

on May 31, 2004, and that the grievance, therefore, was timely.

    We will not disturb this finding, as the Arbitrator clearly reached this conclusion based upon

the language of the 2003 CBA and the timeliness provision therein:

> According to the Agreement, a grievance must be filed within 14 days
> of the event that gives rise to the grievance. . . . According to
> testimony at the arbitration hearing, there were discussions during
> May that pertained to offering health benefits to the Kaiser retirees
> who would no longer receive benefits. Therefore, the Company was
> aware that the benefits were of issue and were not included in the
> bargaining process. It is this Arbitrator's finding that the Grievance
> was timely filed due to the Kaiser benefit termination date of May 31,
> 2004. This is the effective date of the action which led to the harm
> alleged by the Union. The Grievance is timely and arbitrable.

(Creo Award, p. 20). As long as the Arbitrator is "even arguably construing or applying the

contract," it must be enforced. Misco, 484 U.S. at 38. Therefore, we find no basis for overturning

the Arbitrator's conclusion as to timeliness.

Finally, Accuride contends that Arbitrator Creo improperly ignored the "final and binding" nature of the award issued by Arbitrator Gerhart which concluded that the Kaiser retirees' irrevocable elections precluded them for being eligible for Accuride-furnished medical benefits. Accuride cites Trailways v. Trailways, Inc. Joint Council, 807 F.2d 1416, 1425 (8th Cir. 1986), for the proposition that an arbitrator should generally allot great deference to the "final and binding" results of a predecessor's award. However, it is generally within the authority of an arbitrator to determine whether a prior award is to be given preclusive effect. See Connecticut Light & Power Co. v. Local 420, Int'l Brotherhood of Elec. Workers, 718 F.2d 14, 20 (2nd Cir. 1983). Here, Arbitrator Creo determined that Arbitrator Gerhart's award was not binding because it was based upon a different CBA than that before Arbitrator Creo:

> The prior grievance that Arbitrator Gerhart ruled upon arose under the previous Agreement, with different circumstances. The cases cited clearly show that when there are changes in the Agreement, then the previous decisions do not control, which is the case here. There are clearly differences between the previous Agreement and the current Agreement . . . [including that] the [Opt Out] provision from the prior contract is no longer included in the current Agreement. Without that provision, the election to opt out becomes meaningless and Arbitrator Gerhart's ruling no longer applies.

(Award, p. 20).

Arbitrator Creo's finding that he was not bound by Arbitrator Gerhart's previous ruling was based upon his conclusion that the Opt Out Agreements relied upon by Arbitrator Gerhart were not part of the 2003 CBA. As we have previously determined that Arbitrator Creo's conclusion in this regard drew its essence from the CBA, we similarly conclude that Arbitrator Creo's conclusion as to his basis for distinguishing the Gerhart award should not be overturned. An arbitrator is not bound by a prior award where the subsequent arbitration is based upon different contractual language. See, e.g., United Elec., Radio and Mach. Workers of America v. Honeywell, Inc., 522 F.2d 1221, 1228 (7th Cir. 1975) ("[T]o the extent that Res judicata has been used in arbitration, a strict factual identity has been required.").

### IV. CONCLUSION

For the foregoing reasons, Accuride's motion for summary judgment is denied, UAW's motion for summary judgment is granted, and Arbitrator Creo's award is confirmed. Accordingly, this action is dismissed. An appropriate Order follows.

11

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

ACCURIDE ERIE L.P., a limited          )
partnership,                           )
                                       )
    Plaintiff/Counterclaim Defendant,  )
                                       )
              v.          )          Civil Action No. 05-169 Erie
                                       )
INTERNATIONAL UNION, UNITED            )          Judge Sean J. McLaughlin
AUTOMOBILE, AEROSPACE &                )
AGRICULTURAL IMPLEMENT                 )
WORKERS OF AMERICA, LOCAL              )
UNION 1186, a voluntary unincorporated )
association,                           )
                                       )
    Defendant/Counterclaim Plaintiff.  )

## ORDER

    AND NOW, this 11th day of August, 2006, and for the reasons set forth in the accompanying Memorandum Opinion,

    IT IS HEREBY ORDERED that the Motion for Summary Judgment of Defendant UAW is GRANTED and the Motion for Summary Judgment of Plaintiff Accuride is DENIED. Accordingly, this action is DISMISSED

                                        /s/ Sean J. McLaughlin
                                        United States District Judge

cm: All parties of record. ___

12