**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ACCURIDE ERIE, L.P. )<br>)<br>Plaintiff/Counterclaim Defendant, )<br>)<br>v. )<br>)<br>INTERNATIONAL UNION, UNITED )<br>AUTOMOBILE, AEROSPACE, AND )<br>AGRICULTURAL IMPLEMENT )<br>WORKERS OF AMERICA, LOCAL 1186 )<br>)<br>Defendant/Counterclaim Plaintiff. )<br>) | Civil Action No. 05-CV-00169<br><br>Judge Sean J. McLaughlin |

**ACCURIDE'S BRIEF IN OPPOSITION TO UNION'S MOTION TO SHOW CAUSE**

Plaintiff Accuride Erie, L.P. ("Accuride"), by its undersigned counsel, hereby submits the following brief in opposition to the Motion to Show Cause filed by Defendant International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Local 1186 (the "Union").

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This case involves enforcement of a labor arbitration award by Robert Creo dated April 26, 2005 (the "Award"). In summary, the Award found that employees who elected to receive post-retirement medical benefits from their former employer, Kaiser Aluminum ("Kaiser"), to the exclusion of employee medical benefits from Accuride, were not bound by those elections after Kaiser declared bankruptcy and discontinued funding for its medical plan.[1]

**A.  Background Concerning the Scope of the Award**

The arbitration hearing was held on January 26, 2005. The Union's representative gave an opening statement in which he claimed that the case arose out of a dispute over medical benefits for certain Accuride employees. He said that there were "specific and special"

---

[1] A copy of the Award is attached to the Union's Motion to Show Cause as Exhibit B.

provisions in a prior collective bargaining agreement that excluded a "select group of employee [sic] – active Accuride employees" from "health insurance coverage provided by Accuride." Affidavit of Michael Pinson ("Pinson Aff."), Exhibit ("Exh.") 1, p. 4.[2]  He argued that because those provisions were not included in a new agreement that was effective in September 2003, the employees became eligible for medical benefits at that time.  *Id.*

The Union's representative contended that Accuride violated the September 2003 agreement when it "refused to honor the current terms of the collective bargaining agreement by supplying health insurance, when it was needed, to *current Accuride active employees.*"  *Id.* at 5 (emphasis added).  He announced the Union's intention to argue that the agreement "provide[s] for a [C]ompany obligation to provide medical insurance to *active, current active Accuride employees.*"  *Id.* (emphasis added).  He said that the grievants in the pending case were "employee[s] with the same rights and obligations from the company pursuant to [sic] provision of health insurance *as any other employee.*"  *Id.* at 5-6 (emphasis added).  The Arbitrator asked what remedy the Union sought, and the Union's representative responded:  "Basically, the union seeks the reactivation of the health insurance from the – back from the date when the employees became eligible."  *Id.* at 6.  He also requested the Arbitrator to "award any costs, which the employees have undergone, such as medical services, which the insurance would have paid for, had they been covered."  *Id.*  Based on the Union's limitation of the issues and relief requested, the evidence offered at the hearing concerned employee medical benefits and none other.

The Arbitrator granted the Union's request in the Award, as follows:

> The Employer is ordered to cease and desist from not providing benefits to all employees as provided by the Agreement.  Employees are to be made whole for any losses due to the improper denial of benefits.

Award, p. 21.

---

[2] Michael Pinson's affidavit is attached to this Opposition as Exhibit A.

Subsequently, Accuride filed an action under Section 301 of the Labor Management Relations Act to vacate the Award, and the Union counterclaimed for enforcement. On cross motions for summary judgment, the Court denied Accuride's motion and granted the Union's motion. In an Opinion dated December 11, 2007, the U.S. Court of Appeals for the Third Circuit affirmed, confirming the Award.[3] The court characterized the dispositive issue in the Award as the effect of "a one-time irrevocable election to receive either the Kaiser retiree medical benefits or coverage under a medical plan for active Accuride employees." Opinion, p. 2.

**B.   Accuride's Compliance With The Mandate To Offer Enrollment In Its Medical Plan To Employees Who Previously Opted Out**

In compliance with the Award, Accuride offered to enroll all of the employees who formerly opted out of its medical plan. Those individuals were identified by Accuride's Human Resources Director, Michael Pinson, in a letter to the Union dated January 29, 2008.[4] In the letter, Pinson requested that they notify the Company of their intention to enroll by February 29.

Subsequently, Human Resources Administrator Bonita Little contacted the eligible employees to assure they were aware of the opportunity to receive medical benefits and to assist them, if necessary, with the enrollment process. Pinson Aff. ¶ 5; Affidavit of Bonita Little ("Little Aff.") ¶ 3.[5] Only two of the six employees initially elected to enroll. Little Aff. ¶ 4. The others told Little that that they were participating in a medical plan sponsored by Kaiser that they preferred. Typical was one conversation in which an employee told Little that the Kaiser plan provided benefits that were superior to Accuride's plan. The employee said that although he had to make payments to participate in Kaiser's plan, a federal program was reimbursing him

---

[3] The court's Opinion is attached to this Opposition as Exhibit B.

[4] A copy of Pinson's letter is attached to the Union's Motion to Show Cause as Exhibit D.

[5] Bonita Little's affidavit is attached to this Opposition as Exhibit C.

3

for the cost. Therefore, he elected not to enroll in Accuride's medical plan. Little Aff. ¶ 5.

Another employee initially told Little that he preferred to continue his Kaiser coverage rather than enroll in Accuride's medical plan. However, in May he changed his mind when his Kaiser coverage terminated. He enrolled in Accuride's plan at that time. Little Affidavit ¶ 7.

### C.   Accuride Offers To Reimburse Employees And Former Employees

Pinson's January 29 letter also informed the Union of Accuride's intention to reimburse employees and former employees who experienced out-of-pocket costs during times they were eligible for medical benefits under the Award.

During settlement discussions that were directed by the Court in May 2006, the Union provided Accuride with information concerning costs incurred by Kaiser retirees since June 2004, when the Award ruled they became eligible for employee medical benefits.[6] The Kaiser retirees were making contributions to continue participating in Kaiser's medical plan, but available federal tax credits covered approximately two-thirds of the cost. Therefore, Accuride calculated the costs incurred by eligible employees and former employees by (i) adding the documented out-of-pocket medical expenses during relevant times, (ii) adding the cost of contributions required to participate in the Kaiser plan (net after tax credits) and (iii) subtracting the cost that would have been required to participate in Accuride's plan. Pinson Aff. ¶ 6.

---

[6] Previously, the Company requested this same information from the Union during discovery. The Company served interrogatories seeking, in pertinent part, information concerning the medical costs incurred by employees who were eligible for medical benefits under the Award. The Union responded to each of the interrogatories, in pertinent part:

> The UAW objects to this interrogatory on the basis that it seeks information that is not relevant to the subject matter of this lawsuit, nor which is reasonably calculated to lead to the discovery of admissible evidence. The sole issue before the district court is whether the Creo award should be enforced or vacated. Damages in the underlying arbitration are not before the district court.

*See* Exhibit D to this Opposition.

In his January 29 letter, Pinson listed the payments that the Company calculated in May 2006. Pinson also requested information to enable the Company to recalculate the payments.

Although the Union initially indicated its willingness to furnish the information requested in Pinson's letter,[7] subsequently its President informed Pinson that the Union was having difficulty collecting it. The Union President also suggested that it would be more efficient for the Company to collect the information directly from employees and former employees. Pinson agreed to do so, and informed the Union of that fact in his letter dated March 10, 2008. Pinson Aff. ¶ 7, Exh. 2. Pinson's correspondence to the eligible employees and former employees was mailed to them on April 11 and 18, and copies were furnished to the Union. Pinson Aff. Exh. 3. Among other things, the correspondence informed each of the employees and former employees of the amount of the payment that was calculated for him in May 2006; requested updated information needed to recalculate the payment, within 90 days; and committed to paying reasonable documented costs within 30 days of receiving a response. The Union did not object to Pinson's methodology or the correspondence. Pinson Aff. ¶ 8.

### D. History Of The Purported Dispute Concerning Kaiser Retirees' Eligibility For Retiree Medical Benefits From Accuride

In its Motion, the Union for the second time asks the Court to remand this case to Arbitrator Creo, this time for an award of retiree benefits. Once again, it should be denied.

On May 26, 2006, the Company responded to the Court's request to be notified concerning the status of the parties' efforts to settle their claims to vacate or enforce the Award. The Company reported that the negotiations failed after some promising initial discussions and optimism that an agreement could be reached. Among other things, the Company proposed a

---

[7] *See* the letter from Louis Stagner to Pinson dated February 18, 2008, a copy of which is attached to the Union's Motion to Show Cause as Exhibit E.

Settlement Agreement that would extend employee medical coverage to all employees who arguably were covered by the Award. In addition, the Company proposed to make payments to the employees and former employees who experienced out-of-pocket costs during times they would have been enrolled in its employee medical plan. Nevertheless, after lengthy discussions concerning these proposals, the Union took the position that it would not enter into an agreement that does not include, in addition to and beyond the relief sought at the arbitration hearing, an award of retiree medical benefits. The Company informed the Court that it estimated the cost of the Union's proposal, in current dollars, at roughly $3.2 million.[8]

The Company's May 26 correspondence pointed out that retiree medical benefits were not included or even mentioned in the Award, and the issue was not presented to the Arbitrator:

> In short, the Union prevented agreement on the Company's proposed Settlement Agreement in order to bootstrap a claim for retiree medical benefits that it chose not to present to Arbitrator Creo. It must be pointed out that the Union did so even after the Company proposed to allow the Union to enter a settlement agreement without prejudice to its right to pursue a future grievance on the subject of retiree medical benefits for the individuals at issue in the Award.

The same day, the Union filed a motion requesting that the Court remand the issue of retiree medical benefits to Arbitrator Creo. The Court denied the motion. Since that time, the Union has not submitted a grievance concerning retiree medical benefits. As a result, the unique issues raised by an alleged dispute over Kaiser retirees' eligibility for retiree medical benefits from Accuride has never been submitted to an arbitrator for a determination. Nevertheless, the Union now seeks sanctions, or to renew its Motion for Remand, over that issue.

## II.  ARGUMENT

The Union's Motion has no merit because (1) Accuride has complied with the Award; (2) the Union waived the issue of retiree medical benefits; (3) the Union is judicially estopped from

---

[8] A copy of the Company's May 26, 2006 report to the Court is attached as Exhibit E.

6

seeking remand of that issue now; (4) the doctrine of *functus officio* bars remand to Arbitrator Creo; and (5) the *complete arbitration rule*, cited by the Union as the sole basis for its request for remand, is wholly inapplicable. Accordingly, the Union's Motion should be denied.

### A. Accuride Has Complied With The Award

The Union's Motion contains a number of claims concerning Accuride's compliance with the Award, several of which are false outright. All are groundless. They include claims that:

* Accuride allegedly has failed to enroll employees in its medical plan as required by the Award. *To the contrary, the Company offered enrollment to all of the employees covered by the Award, and three employees declined enrollment.*

* Accuride allegedly denied enrollment to employees who did not elect to participate in its medical plan in a timely fashion. *To the contrary, Accuride enrolled an eligible employee who initially declined benefits, but in late May 2008 changed his mind when Kaiser terminated his coverage.*

* Accuride allegedly has failed to reimburse expenses incurred by Kaiser retirees for out-of-pocket costs incurred during times when they were eligible for medical benefits under the Award. *To the contrary, now for the third time Accuride is seeking information necessary to calculate payments to eligible employees and former employees. When the Union claimed it was unable to assist in collecting that information, Accuride undertook to collect it. Accuride has provided eligible individuals 90 days to submit their out-of-pocket expenses, and has committed to making payments within 30 days of receiving responses.*

The remaining claims in the Motion pertain to benefits, particularly retiree medical benefits that were not submitted to Arbitrator Creo, that were excluded from the arbitration hearing, and were not even mentioned in the Award. The Award is complete and is not ambiguous with respect to these benefits. Accordingly, the Union's Motion should be denied.

### B. The Union Waived The Issue Of Eligibility For Retiree Medical Benefits

The Third Circuit "has recognized the principle that a party may waive its right to raise on appeal an objection to the decision of an arbitrator when the party failed to address the objection before the arbitrator in the first instance." *Teamsters Local 764 v. J. H. Merritt & Co.*,

7

770 F.2d 40, 42-43 (3d Cir. 1985). Thus, even jurisdictional objections that are not presented at arbitration can result in a waiver in later enforcement proceedings. *Id.* at 42; *Meat Cutters Local 195 v. Cross Bros. Meat Packers, Inc.*, 372 F. Supp. 1274, 1276 n. 2 (E.D. Pa. 1974), *aff'd* 518 F.2d 1113, 1121 (3d Cir. 1975); *Bower v. Eastern Airlines, Inc.*, 214 F.2d 623, 627 (3d Cir.), *cert. denied*, 348 U.S. 871 (1954) (party could not challenge the qualifications of an arbitrator after submitting the dispute to a board of arbitrators whose composition was known to him before the board rendered an unfavorable decision).

Frequently, parties raise disputes in enforcement proceedings over alleged ambiguities in arbitration awards that provide "make whole" or "back pay" relief, claiming that the precise amount of pay or benefits has not been specified, and therefore remand to the arbitrator is necessary to consider defenses such as a mitigation efforts, offsets for interim earnings or benefits received during absence from work. Nevertheless, courts reject such claims where the party asserting the ambiguity failed to assert the issues at the arbitration. *See, e.g., American Postal Workers Union, Philadelphia Area Local v. U.S. Postal Service*, 222 F. Supp. 2d 675 (E.D. Pa. 2002); *UFCW Local 100A v. John Hofmeister and Son, Inc.*, 950 F.2d 1340 (7th Cir. 1991) (employer waived defense to arbitrator's back pay award by failing to raise it to the arbitrator; court denounced the practice of "sandbagging" an adversary with issues not presented at the arbitration hearing); *Intern. Chem. Workers Union v. Columbian Chem. Co.*, 331 F.3d 491 (5th Cir. 2003) (failure to raise offsets to make-whole award resulted in waiver); *Coppage v. USPS*, 129 F. Supp. 2d 1378 (M.D. Ga. 2001) (employer's failure to raise issue of mitigation at arbitration hearing prevented employer from raising the issue in enforcement proceedings).

Similarly, courts have not hesitated to find a waiver of claims as a result of a party's failure to present them in arbitration. Thus, a union waived the right to claim that the arbitrator

exceeded his authority by allowing an employer to pay more than amounts set forth in the collective bargaining agreement, where the union failed to argue that point to the arbitrator. *Teamsters Local 42 v. Supervalu*, 212 F.3d 59 (1st Cir. 2000). Similarly, a union's failure to make an argument to the arbitrator that discharges violated employees' First Amendment rights to freedom of assembly precluded the court from considering the argument as a basis to vacate the arbitrator's award. *District 17 UMW v. Island Creek Coal Co.*, 179 F.3d 133 (4th Cir. 1999).

In this case, the Union's waiver is apparent. The Union's failure to present any evidence or argument concerning retiree medical benefits was a direct result of its stipulation to the issue before the Arbitrator. The Union's representative made it clear at the hearing that the issue solely involved medical benefits for employees. The Union's stipulation was an important strategic one, and is not now subject to reconsideration based on the outcome of the Award. The Union waived the issue of retiree medical benefits for purposes of this case.

### C. Judicial Estoppel Prevents The Union From Seeking Remand To Argue A New Issue That It Previously Excluded From The Arbitration Hearing

Judicial estoppel prevents litigants from "playing fast and loose with the courts" by arguing a position inconsistent with one previously asserted. *New Hampshire v. Maine*, 532 U.S. 742 (2001). "To permit a party to assume a position inconsistent with a position that it had successfully relied upon in a past proceeding would most flagrantly exemplify . . . playing 'fast and loose with the courts' which has been emphasized as an evil the courts should not tolerate." *Delgrosso v. Spang and Co.*, 903 F.2d 234, 241 (3d Cir.), *cert. denied*, 498 U.S. 967 (1990) (internal quotation marks and citations omitted).

Although judicial estoppel most often applies in cases in which a party asserts a position in conflict with a prior position in another "judicial" proceeding, the doctrine is applied widely to prior positions taken before an arbitrator. *See, e.g., Power-Agent, Inc. v. Electronic Data Sys.*

9

*Corp.*, 358 F.3d 1187 (9th Cir. 2004); *Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6 (1st Cir. 1999).  It has also been considered applicable to arbitration proceedings in the Third Circuit, *see Rite Aid Corp. v. Liberty Mut. Fire Ins. Co.*, 414 F. Supp. 2d 508 (M.D. Pa. 2005), including in actions alleging breach of a collective bargaining agreement.  *Farmland Dairies, Inc. v. Milk Drivers & Dairy Employees Union Local 680*, 956 F. Supp. 1190 (D.N.J. 1997).

The Union plays fast and loose in this case by claiming that the Award covers a dispute that was specifically excluded from the scope of its submission at the arbitration hearing.  The Union's decision to focus the issue before the Arbitrator, specifically on eligibility for active employee medical benefits, apparently was a strategic one.  The Union highlighted the issue in its opening statement and in its presentation of the issues and request for a remedy at the hearing. In so doing, it successfully argued that the inequity of denying a small group of employees medical benefits that otherwise were uniformly offered to others was fundamentally unfair. Importantly, by framing the issue in this manner the Union also avoided the necessity of debating the merits of potentially complex eligibility requirements under a separate and independent retiree medical benefit plan.  As the Union was well aware, those eligibility requirements specifically referred to eligibility for Kaiser retiree medical benefits in a way that the active employee plan did not. Pinson Aff. ¶ 10, Exh. 5.  As the Union successfully argued to Arbitrator Creo, it considered the parties' September 2003 CBA simply silent with respect to employees' eligibility for medical benefits.  Given the specific reference in the retiree medical plan SPD, that argument necessarily would fail with respect to the separate and different eligibility requirements that must be satisfied by those seeking retiree medical benefits.

The Union had the opportunity at the arbitration hearing to submit any issues it desired arising out of its grievance.  The Union chose one, active employee medical benefits, to the

10

exclusion of the others. There was not one iota of evidence or argument to Arbitrator Creo concerning retiree medical benefits. The Union now seeks to further benefit from a successful outcome with respect to active employee medical benefits by asking the Court to turn back the clock and reopen the arbitration before Arbitrator Creo. Its request is totally inappropriate.

### D. Remand of the Award is Barred Under the *Functus Officio* Doctrine

In addition to being barred by the Union's waiver and by the doctrine of judicial estoppel, an "arbitrator's award is not, as a rule, open to remand." *Teamsters Union Local 115 v. DeSoto, Inc.*, 725 F.2d 931, 940 (3d Cir. 1984). Once an issue is submitted to an arbitrator and his decision is rendered, "his authority is exhausted and he is *functus officio* and can do nothing more in regard to the subject matter of the arbitration." *Id.* (internal quotations omitted).

"The doctrine of *functus officio,* Latin for a task performed, was applied strictly at common law to prevent an arbitrator from in any way revising, re-examining, or supplementing his award." *Teamsters Local 312 v. Matlack*, 118 F.3d 985, 991 (3d Cir. 1997) (emphasis in original) (footnote and citations omitted). "The rule provided simply that when arbitrators have executed their award and declared their decision they are *functus officio* and have no power or authority to proceed further." *Id.* (internal quotations and citations omitted).

> The doctrine is motivated by a perception that arbitrators, lacking the institutional protection of judges, may be more susceptible to outside influences pressuring for a different outcome and also by the practical concern that the ad hoc nature of arbitral tribunals makes them less amenable to reconvening than a court.

*Office & Professional Employees Intern. Union, Local 471 v. Brownsville Gen. Hosp.*, 186 F.3d 326, 331 (3d Cir. 1999).

However, the Third Circuit has recognized limited exceptions to the doctrine, as follows:

(1) an arbitrator can correct a mistake which is apparent on the face of his award; (2) where the award does not adjudicate an issue which has been submitted, then as to such issue the arbitrator has not exhausted his function and it remains open to him for

11

subsequent determination; and (3) where the award, although seemingly complete, leaves doubt whether the submission has been fully executed, an ambiguity arises which the arbitrator is entitled to clarify.

*Teamsters Local 312 v. Matlack, Inc.*, 118 F.3d 985, 991-92 (3d Cir. 1997) (internal quotations and citations omitted). These exceptions are "narrowly drawn to prevent arbitrators from engaging in practices that might encourage them to change their reasoning about a decision, to redirect a distribution of an award, or to change a party's expectations about its rights and liabilities contained in an award." *Id.* at 992. Courts have cautioned against extending them to avoid opening "a Pandora's box which could subvert the policies on which the application of *functus officio* to arbitral decisions are predicated." *Colonial Penn Ins. Co. v. Omaha Indemn. Co.*, 943 F.2d 327, 332 (3d Cir. 1991).

None of the exceptions applies here. As discussed more fully below, the Award finally and completely adjudicated the issue that was submitted. In view of the prior enforcement proceedings, it does not appear the Union believes there is any mistake on the face of the Award.

The Award also is not ambiguous as to whether the issue submitted has been "fully executed" because employee benefits were the only benefits presented to the Arbitrator, and the Award specifically refers only to employee benefits. Courts quite rightly are cautious to prevent claims of ambiguity that seek reconsideration or expansion of the arbitrator's final rulings. Thus, in *United Steelworkers of America v. Adbill Management Corp.*, 754 F.2d 138 (3d Cir. 1985), the arbitrator ordered "reinstatement" of a group of former housekeepers. The employer informed the housekeepers that it was reinstating them to the payroll, but because of reduced customer requirements they were placed on indefinite layoff. The district court dismissed the employer's action to vacate, but remanded the award to the arbitrator for clarification of whether the reinstatement remedy required the housekeepers to return to active duty. On appeal, the Third

Circuit reversed and found that remand was improper because the award was unambiguous. The employer failed to comply with the award by failing to return the housekeepers to work within the time prescribed in the award.

The Award in this case is clear that it applies to employee benefits. Employee medical benefits were the only issue presented to the Arbitrator. It is well established that retirees are not employees. *See Allied Chem. & Alkali Workers of America v. Pittsburgh Plate Glass Co.*, 404 U.S. 157 n. 20 (1971). The Award does not even mention benefits for retirees. Accordingly, the Award is not ambiguous with respect to an alleged claim for retiree benefits that was not submitted to, and was not before, the Arbitrator.

Retiree benefits raise issues that are entirely different and separate from those that were before the Arbitrator. The Award found that the individual employees at issue were denied employee medical benefits in June 2004. The issue of eligibility for retiree benefits would not have been raised until years later, when the Union claims the employees began to retire from Accuride. As a result, the claims for retiree benefits necessarily arise out of entirely different factual circumstances. Additionally, because retiree benefits are contained in plan documents that are independent, separate, and different from employee medical benefits, the eligibility issues with respect to retiree benefits also are entirely different. Whereas employee medical benefits universally are offered to active employees, retiree benefits are limited to those who retire and meet all of the eligibility requirements stated in the plan. Among those eligibility requirements are those limiting benefits to individuals who are receiving either a 62/10 or 30 year retirement benefit as defined in the Accuride Erie Hourly Employee Pension Plan. Pinson Aff. Exh. 5. Additionally, to be eligible for retiree benefits an individual must not be "eligible for the Kaiser Retired Employees' Group Insurance Program." *Id.* Whether any particular

13

retiree meets these requirements must be determined individually, on a case-by-case basis. It is quite clear from the Award that these determinations have not been made. *See United Paperworkers Intern. Union Local 425 v. Champion Intern. Corp.*, 990 F. Supp. 423 (E.D.N.C. 1998) (issues of whether employee was entitled to future medical or disability benefits were outside the scope of the arbitrator's award ordering her reinstated and "made whole").

Remand to Arbitrator Creo is absolutely inappropriate for completely new interpretations of the retiree medical plan, and for the completely new applications of eligibility requirements with respect to each individual who at one time became eligible for employee medical benefits under the Award. These are separate and independent issues that are appropriate to be submitted to the grievance and arbitration procedure to which the Union agreed in collective bargaining. In retrospect, the Union might prefer that the issue of retirement benefits was presented to the Arbitrator. It was not. There is no ambiguity in the Award warranting an end-run around the grievance procedure to preserve a continuing, and inappropriate, role for Arbitrator Creo. The Arbitrator's task is complete.

### E.     The *Complete Arbitration Rule* Is Inapplicable To This Case

The sole authority asserted by the Union in support of its Motion seeking remand is *Union Switch & Signal Div. Am. Standard Inc. v. United Elec. Radio and Mach. Workers of Am., Local 610,* 900 F.2d 608 (3d Cir. 1990). The Union mistakes the significance of the case and, as a result, urges the Court to misapply it. In *Union Switch*, the court applied the *complete arbitration* rule, which prohibits judicial enforcement of an arbitration award that is not final.

The Third Circuit earlier applied the rule in *Public Service Elec. and Gas Co. v. System Council U-2 Intern. Broth. of Electrical Workers*, 703 F.2d 68 (3d Cir. 1983). There, an arbitration panel determined that the employer violated the collective bargaining agreement, but

14

directed the parties "to the bargaining table and attempt to agree upon an amiable solution and adjustment of the dispute." *Id.* at 70.  The panel further ordered the parties to return for further arbitration if they were unable to reach an agreement.  However, instead of continuing with the arbitration, the employer obtained an order vacating the award.  On appeal, the Third Circuit held that the court should not have entertained the suit:

> The present arbitration decision partakes of all the attributes of an interim order. Review of the decision at this stage would disrupt and delay the arbitration process and could result in piecemeal litigation.  If this court should reverse the district court's determination and uphold the panel's liability determination and the parties did not thereafter agree upon a remedy, the panel would be required to impose one.  The company could then re-petition the district court to review that remedy.  We see no legitimate reason for allowing such piecemeal litigation.

*Id.*  The court therefore reversed with directions to dismiss the petition to vacate.

Similarly, in *Union Switch*, an arbitrator rendered a liability determination against the employer but deferred to the parties to determine an appropriate remedy, and also retained jurisdiction in the event that the parties could not reach agreement.  The employer immediately filed an action to vacate the award, and the union counterclaimed for enforcement.  The district court entered an order enforcing the award, and no appeal was taken.  The employer and the union engaged in unsuccessful negotiations regarding relief under the award, and subsequently the union filed a second action seeking to remand the dispute to the original arbitrator.  The district court denied the motion without explanation, and an appeal followed.

The Third Circuit determined that the *complete arbitration* rule applied.  "[I]f this were a direct appeal from the judgment in the original action, the appropriate disposition would be clear: a remand with instructions to vacate the judgment and dismiss the case." *Id.* at 614.  The court also ruled that while the complete arbitration rule did not necessarily deprive the district court of jurisdiction, the case had enormous instructive value.  The court explained:

15

> There can be no doubt that the district court committed serious error when it entertained the original cross-applications to vacate or enforce, error that would have required reversal of the court's judgment had there been an appeal. In entertaining the original action, the district court acted contrary to the consistent teachings of this court and, so far as we are aware, every other Court of Appeals that has considered a similar issue.

*Id.* at 610. "[T]his case should alert the bench and bar to the necessity for an arbitration to be complete before a section 301 action is entertained so that a premature action will be discouraged or, if brought, will be met with a motion to dismiss." *Id.* at 614.

Under *Union Switch,* an arbitration award can only be enforced if it is complete; if it is not complete, it must not be enforced but instead must be remanded to the arbitrator. Unlike the award in *Union Switch*, the Award in this case is complete. It finally resolves the sole issue that was submitted to the Arbitrator at the hearing: Kaiser retirees' eligibility for employee medical benefits from Accuride. The Award also in no way is interim or unfinished. It orders a specific remedy for the contract violation that the Arbitrator concluded occurred: Accuride is directed to enroll affected employees in its benefit plan and to reimburse costs that would have been covered by the plan if the violation did not occur. As a result, the Award in no way requires, or even permits, the parties to negotiate other or alternative relief.

The parties, this Court, and the Third Circuit have not viewed the Award as interim in nature or incomplete. During discovery, the Union refused to furnish information that would have enabled Accuride to calculate payments to its employees and former employees, on the basis that the Award in no way required that information to be enforced. Implicit in the Union's contention was that the Award was not only complete, but unambiguous. Later, the Court enforced the Award and the Third Circuit affirmed. The Third Circuit did not view the Award as interim or incomplete, or remand with instructions to dismiss the action under the holding of *Union Switch*. Enforcement necessarily included the determination that the Award is complete.

Indeed, remand would fundamentally undermine the finality that is necessary for enforcement of the Award. Remand here also creates a considerable risk of further judicial enforcement proceedings over whether the Arbitrator's future rulings derive their essence from the parties' agreements, just the sort of protracted, piecemeal litigation that the *complete arbitration* rule was intended to prevent. No arbitration award could ever be considered final if a party could continually remand new issues to an arbitrator. The Arbitrator has completed his function with respect to the issue submitted and the Award is final.

### III.   CONCLUSION

Having succeeded with the Arbitrator in what must be described, at best, as an improbable victory, the Union now seeks to bootstrap the previously excluded issue of retiree medical benefits to the Award, as if the issues and evidence decided in that Award are precisely the same. They are not. The plan documents and eligibility requirements for Accuride's retiree medical plan have never been reviewed by an arbitrator. They are not appropriate to direct to Arbitrator Creo, whose task was completed upon issuance of the Award.

Accuride has fully complied with the Award. The Union's Motion should be denied.

Respectfully submitted,

*/s/ Shannon H. Paliotta*
Frederick C. Miner
Shannon H. Paliotta (PA #91000)
**LITTLER MENDELSON, P.C.**
625 Liberty Avenue – 26th Floor
Pittsburgh, PA  15222
(412) 201-7600

June 9, 2008

*Attorneys for Accuride Erie, L.P.*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of June, 2008, a copy of the foregoing **Brief in Opposition to Union's Motion to Show Cause** was filed using the Western District of Pennsylvania's ECF system, through which this document is available for viewing and downloading, causing a notice of electronic filing to be served upon the following counsel of record:

Joyce Goldstein
Joyce Goldstein & Associates
jgoldstein@unionlaw.cc

Gina Fraternali
Joyce Goldstein & Associates
gfraternali@unionlaw.cc

Catherine J. Trafton
International Union, UAW
ctrafton@uaw.net

*/s/ Shannon H. Paliotta*