# EXHIBIT B

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 06-4007

ACCURIDE ERIE, L.P.,
a limited partnership,
Appellant

v.

INTERNATIONAL UNION, AUTOMOBILE,
AEROSPACE & AGRICULTURAL IMPLEMENT WORKERS
OF AMERICA, LOCAL UNION 1186,
a voluntary unicorporated association

Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil No. 05-cv-00169E)
District Judge: Honorable Sean J. McLaughlin

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 31, 2007

BEFORE: RENDELL and NYGAARD, Circuit Judges,
and McCLURE,* District Judge

(Filed: December 11, 2007)

OPINION OF THE COURT

---

*The Hon. James F. McClure, Jr., Senior Judge, United States District Court for the Middle District of Pennsylvania, sitting by designation.

McCLURE, *District Judge*.

Appellant Accuride Erie, L.P. ("Accuride") filed a complaint against appellee, the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America, Local Union 1186 ("Union') seeking to vacate a labor arbitration award. After cross motions for summary judgment were filed, the district court denied Accuride's motion and granted the Union's motion, thus confirming the arbitration award. Accuride argues that the district court erred in granting summary judgment in favor of the Union because the arbitrator's award did not derive its essence from the parties' collective bargaining agreement. For the reasons provided below, we will affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1997, Accuride acquired a manufacturing plant from Kaiser Aluminum Corporation ("Kaiser") whose hourly employees were represented by the Union. Pursuant to a transitional agreement, Union members were hired to fill positions at Accuride. Some of these union members were eligible to retire under a benefits plan by Kaiser that included retiree medical benefits. The parties entered into a collective bargaining agreement on May 1, 1997 which gave members of the Union a one-time irrevocable election to receive either the Kaiser retiree medical benefits or coverage under a medical plan for active Accuride employees ("1997 CBA"). In 1998, the parties entered into another CBA extending the 1997 agreement through August of 2003 ("1998 CBA").

On February 16, 2001, the Union submitted a grievance on behalf of an employee and his spouse who had previously elected Kaiser retiree medical benefits. The spouse had been denied coverage under Kaiser's retiree medical plan and then had sought coverage under the Accuride

2

medical plan. Accuride denied coverage based on the irrevocable election that had been made by the employee. On September 26, 2003, arbitrator Paul Gerhart ruled that the employee had irrevocably opted out of the Accuride medical plan and that Accuride's decision to deny coverage was correct ("Gerhart Award").

In September of 2003, a new CBA was reached which did not mention anything about the former Kaiser employees who had previously elected the Kaiser retiree medical benefits (2003 CBA). The only mention of medical benefits in the entire CBA is in Article 32 and states that Accuride will provide "eligible employees" with medical benefits. Article 32 also states that "[t]he specific terms of these benefits are set forth in the benefits plan and the insurance contract" and that "[t]he benefits plan and the insurance contract are the controlling documents." Article 5 pertains to grievances and requires a grievance to be submitted "within 14 calendar days of the occurrence giving rise to the grievance." Finally, the Memorandum of Settlement associated with the 2003 CBA contains a zipper clause that states that:

> Settlements, side agreements (written or unwritten), memoranda of understanding, letters of understanding, past practices, grievances settlements, and any other like items that existed on or before August 31, 2003 are terminated. To the extent the parties desire to continue any settlements, side agreements (written or unwritten), memoranda of understanding, letters of understanding, past practices, grievances settlements, and any other like items, they have been reduced to writing and included in this Memorandum of Settlement or the [Collective Bargaining Agreement].

In April of 2004, Accuride learned that Kaiser had filed an action in bankruptcy court to terminate its retiree medical benefits program. Accuride notified the Union, who responded by demanding that Accuride provide medical coverage for the former Kaiser employees who had elected to receive Kaiser retiree medical benefits. The parties met on May 13 and 14, 2004 to

3

discuss proposals to provide benefits to the affected employees. At these meetings, Accuride rejected the Union's request to include the affected employees in the Accuride medical plan.

On May 31, 2004, Kaiser terminated its retiree medical benefits with the approval of the bankruptcy court. On June 8, 2004, the Union submitted a grievance demanding that Accuride provide medical coverage for the affected employees. Accuride denied the grievance at every stage of the grievance process, reasoning that the elections made by the Kaiser retirees were irrevocable. Accuride also determined that the grievance was untimely because it was not filed within fourteen days of the occurrence giving rise to the grievance as required by the 2003 CBA.

The grievance was then heard by arbitrator Robert Creo. Arbitrator Creo ruled that the affected employees' elections in 1997 did not preclude the receipt of benefits under the 2003 CBA. He reasoned that the 2003 CBA required Accuride to provide benefits to all "eligible employees" and that the irrevocable election was terminated by the 2003 CBA. He also ruled that the grievance was timely because the occurrence giving rise to the grievance was the termination of benefits that occurred on May 31, 2004. Finally, he ruled that the Gerhart award was not binding on the current arbitration because it arose under a previous agreement and under different circumstances.

The district court found that the arbitrator's award drew its essence from the 2003 CBA and upheld the award. Specifically, the district court found that the arbitrator relied on the language in the 2003 CBA that Accuride would provide benefits to all "eligible employees" and the absence of any language incorporating the elections from the previous CBA in determining that the elections did not survive the 2003 CBA. Similarly, the district court found that the arbitrator relied on the 2003 CBA in determining that the grievance was timely because the

4

arbitrator determined that the date of the occurrence under the 2003 CBA was the date Kaiser actually terminated the benefits. Finally, the district court found that the arbitrator correctly found that he was not bound by the Gerhart award based on his finding that the elections did not survive the 2003 CBA. Therefore, the district court granted the Union's motion for summary judgment and dismissed the case. This appeal followed.

## II. JURISDICTION AND STANDARD OF REVIEW

The district court had jurisdiction pursuant to section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185. Because the district court entered final judgment against Accuride, we have jurisdiction pursuant to 28 U.S.C. § 1291. Our review is plenary, and we apply the same standard as the district court in reviewing the arbitration award. Exxon Shipping Co. v. Exxon Seamen's Union, 73 F.3d 1287, 1291 (3d Cir.1996).

The United States Supreme Court has consistently held that courts exercise a narrow and deferential role in reviewing arbitration awards arising from labor disputes. Pennsylvania Power Co. v. Local Union No. 272, Intern. Broth. of Elec. Workers, AFL-CIO, 276 F.3d 174, 178 (3d Cir. 2001) (citing United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 36, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987) and W.R. Grace & Co. v. Local Union 759, Int'l Union of the United Rubber, Cork, Linoleum and Plastic Workers of Am., 461 U.S. 757, 764, 103 S.Ct. 2177, 76 L.Ed.2d 298 (1983)). The rationale for this limited role is to encourage the arbitration of labor disputes and not undermine them by excessive court intervention on the merits of an award. Id. (quoting United Steelworkers of Am. v. Enterprise Wheel and Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)).

In light of this policy of encouraging arbitration awards, there is a strong presumption in

5

their favor. Id. (citing Newark Morning Ledger Co. v. Newark Typographical Union Local 103, 797 F.2d 162, 165 (3d Cir.1986)). The court must uphold an award that "draws its essence from the collective bargaining agreement." United Steelworkers, 363 U.S. at 597. An award draws its essence from a collective bargaining agreement if "its interpretation can in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." Brentwood Medical Associates v. United Mine Workers of America, 396 F.3d 237, 240 (3d Cir. 2005) (citing United Transp. Union Local 1589 v. Suburban Transit Corp., 51 F.3d 376, 379-80 (3d Cir. 1995)) (emphasis in original). Thus, we should not vacate an award simply because we would have reached the opposite conclusion had we been the original arbitrator. See Citgo Asphalt Refining Co. v. Paper, Allied-Indus., Chem. & Energy Workers Int'l Union Local No. 2-991, 385 F.3d 809, 816 (3d Cir.2004) (citation omitted). Rather, an award should only be vacated if there is no support in the record for the arbitrator's determination or if the arbitrator demonstrates a manifest disregard for the agreement entirely unsupported by principles of contract construction. Exxon Shipping Co. v. Exxon Seamen's Union, 993 F.2d 357, 360 (3d Cir.1993) (quoting News America Publications v. Newark Typographical Union, Local 103, 918 F.2d 21, 24 (3d Cir. 1990)).

### III. DISCUSSION

Accuride presents three arguments why the arbitrator's award should be vacated. First, it argues that the award exceeded the arbitrator's authority because the irrevocable elections survived the expiration of the 1998 CBA and therefore the award did not draw its essence from the CBA. Second, it takes issue with the arbitrator's conclusion that the grievance was timely. Finally, it argues that the arbitrator ignored the final and binding nature of the Gerhart award

from 2003.

### A. Effect of the Irrevocable Elections

The arbitrator determined that the 2003 CBA did not mention the previous irrevocable elections and that the agreement specifically stated that Accuride would provide "eligible employees" with medical benefits. He reasoned that the parties could have easily incorporated the elections from the previous agreement into the 2003 CBA but did not do so. Furthermore, he found that there was no language in the 2003 CBA to support an argument that the prior elections made the Kaiser retiree's "ineligible."

We reiterate that our review of the arbitrator's decision is very narrow and deferential. The critical question is whether the decision drew its essence from the CBA, not whether we would have reached the same conclusion if we reviewed the case in the first instance. We believe that the arbitrator's conclusion that the previous elections did not survive the 2003 CBA was a rational interpretation of the agreement. The absence of any mention of the previous elections in the 2003 CBA, the ease with which such a mention could have been placed, and the zipper clause in the Memorandum of Settlement which explicitly negates all past agreements, all weigh in favor of concluding that the elections did not survive the 2003 CBA. Therefore, we will affirm the district court's decision on this issue.

### B. Timeliness

The 2003 CBA contains a provision which requires a grievance to be submitted "within 14 calendar days of the occurrence giving rise to the grievance." The arbitrator concluded that the grievance was timely because the date of the occurrence was May 31, 2004, the date that Kaiser terminated its medical plans with the approval of the bankruptcy court, and the grievance

7

was filed on June 8, 2004. Accuride argues that the appropriate date is May 13 or 14, 2004, the dates the Union unsuccessfully sought coverage from the Kaiser retirees from Accuride. Again, we believe the arbitrator's decision drew its essence from the CBA. The arbitrator determined that the date the medical plans were terminated was the "occurrence giving rise to the grievance." It makes sense to us that this date be used as the "occurrence" because if the medical plans were ultimately not terminated, there would be no harm to the Kaiser retirees and we doubt the grievance would have even been filed. It is not as though the arbitrator selected an entirely arbitrary date or completely ignored the fourteen day time limitation. Therefore, we agree with the district court and will not disturb the arbitrator's ruling that the grievance was timely.

### C. Effect of the Previous Arbitration

Accuride's final argument is that the arbitrator ignored the final and binding nature of the Gerhart award. The arbitrator concluded that the Gerhart award occurred under a different CBA and under a different set of circumstances. We agree. The Gerhart award interpreted the 1998 CBA, which extended the 1997 CBA containing the irrevocable elections. The controlling document in the instant case is the 2003 CBA. Furthermore, we note that the arbitrator's ruling that the Gerhart award was not binding was clearly based on his conclusion that elections from the previous CBA were not incorporated into the 2003 CBA, and we have already held that this conclusion drew its essence from the 2003 CBA. It would make no sense to require an arbitrator to be bound by a previous arbitration which applied a clause from a previous contract which the arbitrator has validly found is no longer part of the current contract. Therefore, we affirm the decision of the district court on this issue as well.

8

## IV. CONCLUSION

Because the arbitrator's conclusions that the elections from the previous CBA were no longer part of the 2003 CBA, that the grievance was timely filed, and that the Gerhart award was not binding all drew their essence from the 2003 CBA, we will affirm the district court's ruling and uphold the award.